No. 26-10431

In the

# United States Court of Appeals For the Fifth Circuit

---

IN RE ADMINISTRATIVE SUBPOENA NO. 25-1431-032

---

UNITED STATES OF AMERICA,

*Petitioner-Appellee,*

*v.*

RHODE ISLAND HOSPITAL,

*Respondent-Appellant.*

---

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
Honorable Reed O'Connor, Chief District Judge
Case No. 4:26-mc-00006-O

---

## EMERGENCY MOTION FOR STAY PENDING APPEAL

---

Kathryn M. Barber
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Eric G. Olshan
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

*(additional counsel listed on inside cover)*

Erin L. Brown
MCGUIREWOODS LLP
Bank of America Tower
50 North Laura Street
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

May 9, 2026

# CERTIFICATE OF INTERESTED PERSONS

No. 26-10431

*In re Administrative Subpoena No. 25-1431-032:*
*United States of America v. Rhode Island Hospital*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- O'Connor, Reed, Chief U.S. District Court Judge, Northern District of Texas

## Appellant

- Rhode Island Hospital is a Rhode Island not for profit corporation whose sole member is Lifespan Corporation d/b/a Brown University Health, a Rhode Island non for profit corporation. No publicly held company owns 10% or more of the stock of Rhode Island Hospital.

## Appellee

- United States of America

## Counsel for Appellant

- Barber, Kathryn M. (Counsel for Rhode Island Hospital)

- Brown, Erin L. (Counsel for Rhode Island Hospital)

- Olshan, Eric G. (Counsel for Rhode Island Hospital)

- Sauter, Mindy M. (Counsel for Rhode Island Hospital)

**<u>Counsel for Appellee</u>**

- Runkle, Patrick Raymond (Counsel for United States of America)

- Womble, Ethan (Counsel for United States of America)


Dated: May 9, 2026        */s/ Eric G. Olshan*
                Eric G. Olshan

                *Counsel for Appellant Rhode Island Hospital*

# TABLE OF CONTENTS

**Page**

NATURE OF EMERGENCY ...................................................................... 1

INTRODUCTION ..................................................................................... 3

BACKGROUND......................................................................................... 4

    A.    Factual Background................................................................. 4

    B.    Procedural History .................................................................. 7

JURISDICTIONAL STATEMENT........................................................... 8

STANDARD OF REVIEW......................................................................... 9

ARGUMENT ............................................................................................. 9

I.    RIH has a strong likelihood of success........................................... 10

    A.    The District Court wrongly denied RIH an opportunity
to respond to the petition.................................................... 10

    B.    Venue is improper ............................................................... 13

    C.    The subpoena is unlawful.................................................... 16

II.    RIH will suffer irreparable harm without a stay ........................ 22

III.    The public interest and balance of equities favor a stay.............. 24

CONCLUSION ....................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apter v. Dep't of Health & Hum. Servs.*,
  80 F.4th 579 (5th Cir. 2023) ...................................................................... 18

*Ass'n of Am. Physicians & Surgeons v. FDA*,
  13 F.4th 531 (6th Cir. 2021) ...................................................................... 19

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*,
  97 F.3d 822 (5th Cir. 1996) ........................................................................ 16

*Book People, Inc. v. Wong*,
  91 F.4th 318 (5th Cir. 2024) ...................................................................... 22

*Buckman Co. v. Plaintiffs' Legal Comm.*,
  531 U.S. 341 (2001) ...................................................................................... 5

*Castille v. Port Arthur ISD*,
  168 F.4th 240 (5th Cir. 2026) .................................................................... 10

*Cleveland Bd. of Educ. v. Loudermill*,
  470 U.S. 532 (1985) .................................................................................... 10

*FEC v. Comm. to Elect Lyndon La Rouche*,
  613 F.2d 849 (D.C. Cir. 1979) .................................................................... 15

*First Choice Women's Res. Ctrs., Inc. v. Davenport*,
  No. 24-781 (U.S. Apr. 29, 2026) ..................................... 12, 23, 24, 25

*FTC v. Jim Walter Corp.*,
  651 F.2d 251 (5th Cir. 1981) ................................................................ 14, 15

*Harbor Healthcare Sys., L.P. v. United States*,
  5 F.4th 593 (5th Cir. 2021) ........................................................................ 24

*In re 2025 UPMC Subpoena*,
  2026 WL 570419 (W.D. Pa. Mar. 2, 2026) .......................................... 21, 23

*In re 2025 UPMC Subpoena,*
  No. 25-mc-1069, 2025 WL 3724705 (W.D. Pa. Dec. 24, 2025) .......................................................................... 20

*In re Admin. Subpoena 25-1431-032 to Rhode Island Hospital,*
  No. 26-mc-7 (D.R.I. May 7, 2026) ...................... 17

*In re Admin. Subpoena,*
  No. 25-1431-019, 800 F. Supp. 3d 229 (D. Mass. Sept. 9, 2025), *appeal pending*, No. 26-1093 (1st Cir.) .................................. 20

*In re Anthony Marano Co.,*
  51 F.4th 722 (7th Cir. 2022) ............................ 11

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.,*
  915 F.3d 1 (1st Cir. 2019) ............................... 18

*In re Child.'s Nat'l Hosp.,*
  No. 25-cv-3780, 2026 WL 160792 (D. Md. Jan. 21, 2026) .................. 20

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030,*
  No. 25-mc-63, 2026 WL 33398 (D. Colo. Jan. 5, 2026) ...................... 20

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action,*
  678 F.3d 235 (3d Cir. 2012) ............................ 18

*In re Subpoena Duces Tecum No. 25-1431-016,*
  No. 25-mc-41, 2025 WL 3562151 (W.D. Wash. Sept. 3, 2025) ............................................................... 20

*In re Subpoena No. 25-1431-014,*
  810 F. Supp. 3d 555 (E.D. Pa. 2025) ........................... 19, 21

*Moler v. Wells,*
  18 F.4th 162 (5th Cir. 2021) ............................ 15

*Nken v. Holder,*
  556 U.S. 418 (2009) ...................................... 24

*NLRB v. Cooper Tire & Robber Co.*,
438 F.3d 1198 (D.C. Cir. 2006) ........................................................ 14

*Okla. Press Publ'g Co. v. Walling*,
327 U.S. 186 (1946) ........................................................................ 11

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
807 F. Supp. 3d 1295 (W.D. Wash. Oct. 27, 2025) ............................ 20

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) ..................................................... 10, 13

*Shotkin v. Nelson*,
146 F.2d 402 (10th Cir. 1944) .......................................................... 11

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) ............................................... 10, 11, 13

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
411 F.3d 245 (D.C. Cir. 2005) .......................................................... 13

*United States v. Rand*,
924 F.3d 140 (5th Cir. 2019) ............................................................ 13

*United States v. Sturm, Ruger & Co., Inc.*,
84 F.3d 1 (1st Cir. 1996) ................................................................. 11

*United States v. Transocean Deepwater Drilling, Inc.*,
767 F.3d 485 (5th Cir. 2014) ..................................................... 12, 16

*Veasy v. Perry*,
769 F.3d 890 (5th Cir. 2014) ............................................................. 9

*Vodicka v. Ermatinger*,
No. 19-CV-56, 2022 WL 992600 (N.D. Tex. Apr. 1, 2022) ................. 12

*Wash. Legal Found. v. Henney*,
202 F.3d 331 (D.C. Cir. 2000) .......................................................... 18

*X Corp. v. Media Matters for Am.*,
120 F.4th 190 (5th Cir. 2024) .......................................................... 25

**Statutes**

18 U.S.C. § 3486(a)(1)(A)(i)(I) ....................................................... 13, 14, 16

21 U.S.C. § 331............................................................................... 19

21 U.S.C. § 333(a)(1)....................................................................... 19

21 U.S.C. § 352(f) ........................................................................... 19

21 U.S.C. § 396............................................................................... 18

28 U.S.C. § 1291............................................................................... 9

18 U.S.C. § 3486............................................................................... 5

**Regulations**

21 C.F.R. § 201.128.......................................................................... 17

**Rules**

Fed. R. App. P. 4(a)(1)(B) ................................................................. 9

**Other Authorities**

FOOD & DRUG ADMIN., *Understanding Unapproved Use of
   Approved Drugs "Off Label"* (Feb. 5, 2018),
   https://www.fda.gov/patients/learn-about-expanded-
   access-and-other-treatment-options/understanding-
   unapproved-use-approved-drugs-label............................................... 18

## NATURE OF EMERGENCY

By Thursday, May 14, 2026, Rhode Island Hospital (RIH) must comply with the District Court's Order enforcing a subpoena that demands swaths of highly sensitive patient information. The Government waited nearly 10 months to petition to enforce the subpoena, filed without warning to RIH and despite ongoing discussions about compliance, and did not seek emergency or *ex parte* relief. Yet the District Court gave RIH no opportunity to respond and instead granted the petition on the same day it was filed. The resulting Order is legally and procedurally unsound. RIH thus promptly appealed.

In the interim, the District Court's Order requires RIH to fully comply with the subpoena by May 14 or face contempt. RIH cannot fully comply by that date, nor should it have to, when the subpoena is faulty and the Order likely to be overturned on appeal. Moreover, any compliance while awaiting a decision on appeal will come at great expense to RIH and its patients.

On May 6, 2026, RIH filed an Emergency Motion for Stay Pending Appeal with the District Court. The District Court ordered the Government to respond by May 8 and stated that it would decide the

1

motion "as soon as practicable," while noting that it is in trial until May 13. The Government filed its response on May 8.

As of this filing, the District Court has not decided the motion. RIH faces potential sanctions and contempt if it does not meet the District Court's May 14 deadline and thus moves this Court for a stay to ensure it is adequately protected should the District Court not act on its motion or wrongly deny its stay request.

Good cause therefore exists for the filing of this emergency motion. A ruling is requested by **Tuesday, May 12, 2026**.

I hereby certify that the above facts supporting emergency consideration of this motion are true and complete.


Dated: May 9, 2026                          */s/ Eric G. Olshan*
                                            Eric G. Olshan

## INTRODUCTION

Last Thursday, without any notice to RIH, the Federal Government petitioned the District Court to enforce a 10-month-old administrative subpoena it had been negotiating with RIH. That subpoena demands troves of personal and highly sensitive medical information about RIH's patients, along with identifying information of hospital personnel and materials relating to medical treatment and diagnoses. *See* Pet., ECF No. 1.[1] Courts across the country have quashed the same subpoena issued to other hospitals and clinics as overbroad and improper.

The same day that the Government filed its petition, the District Court granted it. *See* Order, ECF No. 2. The District Court gave RIH no chance to respond to the petition. Instead, within hours, the District Court summarily entered the Government's proposed order verbatim. *See id.*; ECF No. 1-4. The Order gives RIH only 14 days to comply with the subpoena in full. Order 1-2.

That Order is likely to be reversed on appeal. While the appeal is decided, the Order should be stayed.

---

[1] The cited record and page numbers correspond with the numbering in the District Court's ECF system.

Every relevant factor weighs strongly in favor of a stay. Most importantly, RIH is highly likely to prevail on the merits. The District Court blatantly denied RIH due process, which alone provides a clear basis for reversal, even before examining the subpoena's many other deficiencies. And RIH will suffer irreparable constitutional and monetary harms if it must comply before the Order is reversed. The equities and public interest also favor a stay, as the Government will not face harm from further delay after waiting 10 months to pursue the petition, while RIH's patients will suffer immensely if RIH must comply with the illegal subpoena.

RIH thus requests that this Court grant its emergency motion for a stay pending appeal as soon as possible, but no later than **Tuesday, May 12, 2026.**

## BACKGROUND

**A. Factual Background**

On July 9, 2025, the Department of Justice served an administrative subpoena on RIH at its principal place of business in Providence, Rhode Island. *See* Pet. Ex. B at 2, 4, ECF No. 1-2; Pet. Ex. C at 2, ECF No. 1-3. The Government set a return date of August 7 and

requested production at its Consumer Protection Branch office (now the Enforcement and Affirmative Litigation Branch) in Washington, D.C. Pet. Ex. B at 2. The Government issued the subpoena under the Health Insurance Portability and Accountability Act (HIPAA), 18 U.S.C. § 3486, to "investigate Federal health care offenses." Pet. Ex. B at 2.

The subpoena lists fifteen expansive categories of information for RIH to produce. *See id.* at 8-10. Three requests explicitly call for sensitive patient information:

11. Documents sufficient to identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy.

12. For each such patient identified in Subpoena specification 11, *supra,* documents relating to the clinical indications, diagnoses, or assessments that formed the basis for prescribing puberty blockers or hormone therapy.

13. All documents relating to informed consent, patient intake, and parent or guardian authorization for minor patients identified in Subpoena specification 11, *supra,* including any disclosures about off-label use (*i.e.,* uses not approved by the United States Food and Drug Administration) and potential risks.[2]

---

[2] "Off-label use" refers to use "for some other purpose than that for which it has been approved" by the Food and Drug Administration. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 350 (2001).

*Id.* at 9.

Following service of the subpoena, counsel for RIH and the Government began to discuss RIH's compliance efforts. Resp. Ex. 1 at 6, ¶ 8, ECF No. 8; *see* Declaration of Lisa K. Hsiao ("Hsiao Decl.") at 20, ¶ 46, ECF No. 1-1. Counsel for the Government informed Glenn Friedemann, Associate General Counsel for Brown Health (RIH's parent organization), that the Government did not believe that RIH had engaged in any criminal wrongdoing. Resp. Ex. 1 at 6, ¶ 8. The Government also "communicated that it would be willing to receive documents responsive to the subpoena past the return date." Hsiao Decl. at 20, ¶ 46.

In late January 2026, RIH, through counsel, notified the Government that it was prepared to produce additional responsive documents in the weeks to come, and that it would first send the Government proposed search terms for review. Resp. Ex. 2 at 10. RIH sent the Government the proposed search terms in early February. *Id.* RIH anticipated making a production upon the Government's confirmation of the search terms. But the Government did not respond, even to acknowledge receipt.

RIH did not hear back from the Government for nearly 12 weeks. Then, on April 28, the Government contacted RIH's counsel, stating that it "does not appear we have received any productions . . . in light of [the] search terms" proposed. *Id.* The Government asked whether counsel could "conference this week regarding status." *Id.* Although counsel for RIH responded the next day and proposed a date to conference, the Government went dark again. *Id.* at 9.

## B. Procedural History

The next communication RIH received from the Government was an email sent after the close of business at 6:10 p.m. Eastern Time on Thursday, April 30, informing RIH that the Government had filed a petition to enforce its administrative subpoena in the U.S. District Court for the Northern District of Texas. *Id.* The Government did not confer with RIH before filing or give RIH any notice of its intent to file.

The same day that the Government filed its petition, the District Court granted it. *See* Order, ECF No. 2. The court executed the Government's proposed order exactly as drafted. *See* ECF No. 1-4 at 1. The Order summarily states:

> The Court finds that the subpoena was issued within the Department of Justice's statutory authority, the subpoena

seeks documents reasonably relevant to the investigation, and the subpoena's demands are reasonable. The Court further finds that the witness, Rhode Island Hospital, was served with the subpoena on July 3, 2025,[3] and has failed to fully comply with the subpoena by providing records to the government on or before the original due date of August 7, 2025, or the date of the Government's filing of its petition to enforce of April 30, 2026. The Court further finds that the witness has neither filed a motion to quash nor shown just cause for noncompliance.

Order 1. The Order requires RIH to "provide all records responsive to each request in the subpoena within 14 days" and states that "failure to fully comply with the subpoena or show just cause for continued noncompliance may result in sanctions up to and including this Court holding [RIH] in contempt." *Id.* at 1-2.

On Wednesday, May 6, RIH appealed to this Court. ECF No. 6. RIH filed an emergency motion for a stay pending appeal in the District Court. ECF No. 7. The District Court has not ruled on that motion.

## JURISDICTIONAL STATEMENT

The District Court granted the Government's petition to enforce the administrative subpoena on April 30, 2026. RIH filed a timely notice of

---

[3] This date is incorrect. RIH was served on July 9, 2025. Pet. Ex. C at 2.

appeal on May 6, 2026.  *See* Fed. R. App. P. 4(a)(1)(B).  This Court has jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

In entering a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he or she is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Veasy v. Perrey*, 769 F.3d 890, 892 (5th Cir. 2014) (cleaned up).  "The first two factors . . . are the most critical."  *Id.* (cleaned up).

## ARGUMENT

A stay of the District Court's improper and incorrect Order enforcing the subpoena is necessary.  Most critically, a stay will protect RIH and its patients from irreparable harm while RIH seeks to reverse the Order on appeal, especially the harm of complying with an unenforceable subpoena entered with no notice or opportunity to be heard.  All four stay factors warrant this result.

9

## I.  RIH has a strong likelihood of success.

Reversal on appeal is highly likely.  The District Court refused to allow adversarial testing of the Government's petition, in clear violation of binding precedent.  That error also meant that RIH had no chance to raise its other arguments against enforcement, each of which independently provides a basis for reversal.

### A.  The District Court wrongly denied RIH an opportunity to respond to the petition.

Procedural due process requires that a recipient of an administrative subpoena have both "notice and an opportunity to respond" before enforcement.  *Castille v. Port Arthur ISD*, 168 F.4th 240, 252 (5th Cir. 2026) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  This Court has repeatedly confirmed this requirement.  In *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, this Court held that, by ruling on a motion to quash an administrative subpoena before receiving a response, the district court "robb[ed]" the subpoena's issuer of "its right to be heard."  878 F.2d 875, 881 (5th Cir. 1989).  And again, in *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, this Court held that the district court violated procedural due process by granting a motion to quash the day after it was filed,

without giving the issuer "an opportunity to respond in opposition." 694 F.3d 548, 549, 552, 556 n.5 (5th Cir. 2012).

The right to respond applies in proceedings to quash administrative subpoenas and to enforce them alike. "An administrative subpoena is not self-executing"; enforcing one thus requires "judicial review and enforcement." *United States v. Sturm, Ruger & Co., Inc.*, 84 F.3d 1, 3 (1st Cir. 1996). Indeed, the "enforcement process for administrative subpoenas" is designed to give the "subpoenaed party . . . an opportunity to be heard during the enforcement proceeding itself." *In re Anthony Marano Co.*, 51 F.4th 722, 734 (7th Cir. 2022). And that opportunity to be heard must come *before* enforcement. *See Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 195 (1946) (describing administrative subpoenas enforced "pursuant to orders of court authorized by law and made *after* adequate opportunity to present objections" (emphasis added)).[4]

This right to respond is critical, not just to a participant's due process rights, but also to ensure adversarial "testing [of] the subpoena

---

[4] *See also Sturm*, 84 F.3d at 3 ("[T]he subject of an administrative subpoena has an opportunity to challenge the subpoena before yielding the information."); *Shotkin v. Nelson*, 146 F.2d 402, 405 (10th Cir. 1944) ("[T]he trial court should have given . . . notice and an opportunity to be heard before the enforcement order was issued.").

in federal court." *First Choice Women's Res. Ctrs., Inc. v. Davenport*, No. 24-781, slip. op. at 18 (U.S. Apr. 29, 2026) (internal quotation marks omitted). The standards for enforcing administrative subpoenas confirm the need for an adversarial process and meaningful judicial review. Again, these subpoenas are not self-enforcing—a court must first decide whether "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014). "The Government bears the initial burden to show that these criteria have been met," and "[o]nce the Government has made a prima facie case, the burden of going forward shifts to the party *opposing* the subpoenas." *Id.* at 489 (emphasis added). That burden-shifting cannot happen if the opposing party has no chance to respond. Nor can a court adequately assess the controlling factors without hearing from both sides.[5]

---

[5] Opposing RIH's stay motion in the District Court, the Government argued that courts have "discretion" to decide enforcement petitions after hearing from only one side. *See* Opp. to Emergency Mot. for Stay Pending Appeal ("Opp.") at 3, ECF No. 11. The cases the Government cites provide no support for that idea. *See Vodicka v. Ermatinger*, No. 19-CV-56, 2022 WL 992600, at \*10 (N.D. Tex. Apr. 1, 2022) (*pro se* attorney had "a meaningful opportunity to be heard" at a hearing at which he "cogently

The District Court did not follow these rules. Its refusal to give RIH an opportunity to respond in opposition to the Government's petition is reversible error. *See Tex. Keystone*, 694 F.3d at 555; *Sandsend*, 878 F.2d at 881 (explaining that this "procedural error[] . . . would be dispositive").[6]

## B. Venue is improper.

The District Court also erred by allowing the enforcement proceeding to occur in its District. The Northern District of Texas is not the proper venue to adjudicate the Government's petition. Title 18 U.S.C. § 3486(c) permits enforcement of an administrative subpoena in "any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpoenaed person is an inhabitant, or in which he carries on business or may be found." The Government asserts that it has "carried on" its investigation in the

---

advanced his theory"); *United States v. Rand*, 924 F.3d 140, 145 (5th Cir. 2019) (outside of subpoena-enforcement context, where party had three days to respond and the response "would [not] have affected the outcome").

[6] In *Sandsend*, despite this procedural error, this Court ultimately reached the merits and ruled in favor of the party that lacked the opportunity to respond. 878 F.2d at 881. The Court may also do so in this appeal.

Northern District of Texas and thus satisfies 18 U.S.C. § 3486(c). Pet. at 2. The record does not support that assertion.

Neither the Government's petition nor its accompanying exhibits identify any nexus between its investigation and this District. The Government has not identified any target of the investigation based in the Northern District of Texas. RIH itself has no ties there. And the Government's only declarant, the Acting Director of EALB, makes no mention of any investigative activities there as opposed to in Washington, D.C., where EALB's office is located. *See generally* Hsiao Decl.; *see also* Pet. at 13; Resp. Ex. 3 at 12. The record thus contains no support for the Government's claim that its investigation is being carried on in the Northern District of Texas, let alone that it is being carried out there "to any substantial degree." *FTC v. Jim Walter Corp.*, 651 F.2d 251, 254 (5th Cir. 1981), *abrogated on other grounds by Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 943 (11th Cir. 1997).

Because this investigation is nationwide, venue under the "investigation carried on" provision only lies in the "*command center*" or "hub" of the investigation. *NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d

1198, 1200, 1202 (D.C. Cir. 2006); *see FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 857 (D.C. Cir. 1979); *see also Jim Walter*, 651 F.2d at 254 (considering where the agency "managed [its] investigation"). What little is in the record shows that the Government's investigative hub is the District of Columbia, not the Northern District of Texas.[7] The subpoena issued to RIH demanded production at the Consumer Protection Branch (now EALB) office in Washington, D.C., Pet. Ex. B at 1, and the DOJ officials who have communicated with RIH about the subpoena have done so from that office in Washington, D.C. *See* Pet. Ex.

---

[7] The Government has attempted to supplement the record through an *ex parte* and sealed declaration about its investigative activities in the Northern District of Texas. What the Government has proffered publicly about its declaration does not suffice to establish venue. "[S]ubstantial operational and decision-making control" does not make the Northern District of Texas the center point of the investigation, and the Government does not contend that these investigative activities predated the filing of its petition. Opp. at 5; *see Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021) ("[V]enue is determined at the outset of litigation and is not affected by subsequent events.").

C at 3; *see also* Pet. at 13; Resp. Ex. 5 at 9-10. The clear "command center" is D.C.[8]

The Northern District of Texas lacked statutory authority to enforce the subpoena. The improper venue adds to the likelihood of reversal.

### C.  The subpoena is unlawful.

In any venue, the subpoena is not enforceable. To start, the subpoena lacks a congressionally authorized and legitimate investigatory purpose. *See Transocean*, 767 F.3d at 488-89. Through HIPAA, Congress delegated the authority to issue subpoenas in connection with an investigation of a "Federal health care offense." 18 U.S.C. § 3486(a)(1)(A)(i)(I). The Government bases the subpoena here on its authority to investigate violations of the Food, Drug, and Cosmetic Act ("FDCA"). *See* Pet. at 2. The Government's proffered theory of criminal

---

[8] The lack of connection between RIH and Texas further counsels against making RIH defend against the subpoena there. *Cf. Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 826 (5th Cir. 1996) (expressing "grave misgivings" about asserting personal jurisdiction under nationwide service of process statute over a party that lacks minimum contacts with the forum).

liability is that "off-label use of puberty blockers and cross-sex hormones" is "a violation of the FDCA." *Id.* at 4. That theory is wrong.

The Government asserts that a drug is "misbranded" in violation of the FDCA if "its labeling does not bear adequate directions for its intended use." *Id.* at 2. The term "intended use" comes from a regulation stating that "intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer." 21 C.F.R. § 201.128. The Government's apparent theory is that if a drug's "intended use" changes as it makes its way from manufacturer to patient—including when a physician prescribes it for "off-label use"— then the drug becomes "misbranded," because its labeling will no longer match the physician's "intended use" in prescribing it. *See* Pet. at 2, 4. In this way, the Government contends, a physician's "off-label use" violates the FDCA. *Id.* at 4. The Government would also impose criminal liability on physicians for *participating* in "misbranding" through the act of "off-label" prescribing.[9]

_____

[9] It is on this faulty basis that the Government says RIH itself may have violated the FDCA. *See* Pet. at 6; *see also* Resp. in Opp., *In re Admin. Subpoena 25-1431-032 to Rhode Island Hospital*, No. 26-mc-7 (D.R.I. May 7, 2026) (stating that it is investigating "whether [RIH] itself has violated the FDCA by causing distribution of misbranded drugs").

The Government's theory is contrary to the statute.  The FDCA makes clear that the Federal Government lacks authority to regulate physicians' practice of medicine.  *See* 21 U.S.C. § 396 ("Nothing in this chapter shall be construed to limit or interfere with the authority of a health care practitioner to prescribe or administer any legally marketed device to a patient for any condition or disease within a legitimate health care practitioner-patient relationship."); *see Apter v. Dep't of Health & Hum. Servs.*, 80 F.4th 579, 592 (5th Cir. 2023) (the FDCA "expressly shields" physicians from "certain kinds of FDA meddling").  The FDCA regulates drug manufacturing and distribution, not the provision of medical treatment.  And physicians may lawfully prescribe drugs for "off-label use."[10]

The idea of "intended use" (and "misbranding" predicated on "intended use") therefore does not apply to physicians' treatment

---

[10] *See In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 915 F.3d 1, 5 (1st Cir. 2019); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 240 (3d Cir. 2012); *Wash. Legal Found. v. Henney*, 202 F.3d 331, 332-33 (D.C. Cir. 2000); *see also* FOOD & DRUG ADMIN., *Understanding Unapproved Use of Approved Drugs "Off Label"* (Feb. 5, 2018), https://www.fda.gov/patients/learn-about-expanded-access-and-other-treatment-options/understanding-unapproved-use-approved-drugs-label.

decisions. FDCA misbranding liability attaches only to those who manufacture and distribute a drug. 21 U.S.C. § 352(f); *see In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 568 (E.D. Pa. 2025). It does not attach to physicians for off-label prescribing. *See Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 544 (6th Cir. 2021) ("The Act regulates drug distribution; it does not bar doctors from prescribing an approved drug (like hydroxychloroquine) for an off-label use (like COVID-19)").

Nonetheless, the Government's investigation is focused on hospitals. And because the FDCA is a strict-liability statute that imposes criminal liability for misbranding "without any proof of criminal intent" or "direct participation," the Government's theory means that anyone in the supply chain or on its periphery could be held criminally liable for a doctor's lawful off-label prescribing. Pet. at 3 (citing 21 U.S.C. §§ 331, 333(a)(1)); *id.* at 7. That theory misreads the FDCA and cannot support the Government's investigation into RIH.[11]

Given the faulty statutory basis on which the Government rests its investigation, district courts around the country have held that the

_____

[11] The Government also erroneously treats medical care providers as "distributors" and says that they participate in "misbranding" through off-label prescribing.

19

Government lacks authority to enforce identical subpoenas, and that it issued those subpoenas for an improper purpose.[12] RIH is likely to succeed in demonstrating the same.

The subpoena also fails because it is overly broad and burdensome. Even if the Government were properly investigating potential FDCA violations, the subpoena overreaches with its intrusive request for patient records that include personally identifiable information (names, dates of birth, Social Security numbers, and home addresses), medical diagnoses, and other sensitive medical documents. *See* Pet. Ex. B at 9-10 (requests 11-13). These requests for full records of an entire class of minor patients are not relevant to any inquiry into potential FDCA violations.[13] Concluding otherwise would again stretch the FDCA's text beyond recognition.

---

[12] *See* Report & Recommendation*, In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-mc-63, 2026 WL 33398, at *1, 11 (D. Colo. Jan. 5, 2026); *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. Oct. 27, 2025), *appeal pending*, No. 25-7384 (9th Cir.); *In re Admin. Subpoena*, No. 25-1431-019, 800 F. Supp. 3d 229, 239 (D. Mass. Sept. 9, 2025), *appeal pending*, No. 26-1093 (1st Cir.); *In re Subpoena Duces Tecum No. 25-1431-016*, No. 25-mc-41, 2025 WL 3562151, at *12-13 (W.D. Wash. Sept. 3, 2025).

[13] Multiple district courts have therefore barred enforcement of Requests 11 through 13. *See In re Child.'s Nat'l Hosp.*, No. 25-cv-3780, 2026 WL 160792, at *9 (D. Md. Jan. 21, 2026); *In re 2025 UPMC Subpoena*, No.

In addition, and contrary to the Government's assertion below, producing these records "threatens to unduly disrupt or seriously hinder" RIH's operations. *Contra* Pet. at 11 (citation omitted). The Government faulted RIH for not "present[ing] to the Department any evidence demonstrating that compliance with the subpoena would cause such a disruption or hindrance." *Id.* But RIH does not have to present that evidence "to the Department"—the time and place to present such evidence would have been in opposition to the Government's petition in *the District Court.* Nonetheless, as detailed below, the record now explains the burden on RIH and its employees, including the threats that the ordered full production would pose to RIH patient relationships at the core of the hospital's operations.[14]

In sum, RIH's appeal will raise multiple challenges to the subpoena's enforcement and is likely to succeed on the merits of those challenges. This factor weighs strongly in favor of a stay.

---

25-mc-1069, 2025 WL 3724705, at *13 (W.D. Pa. Dec. 24, 2025), *judgment entered,* 2026 WL 570419 (W.D. Pa. Mar. 2, 2026); *In re Subpoena No. 25-1431-014,* 810 F. Supp. 3d 555, 607 (E.D. Pa. Nov. 21, 2025).

[14] Resp. Ex. 1 at 6-7, ¶¶ 10-13; Resp. Ex. 4 at 15-16, ¶¶ 4-11; Resp. Ex. 5 at 20, ¶¶ 12-14.

**II.   RIH will suffer irreparable harm without a stay.**

The irreparable constitutional and monetary injuries RIH will suffer without a stay also support the requested relief.  If RIH must comply with the subpoena with no opportunity to respond, this litigation will likely become moot without RIH ever receiving an opportunity to be heard.  The resulting deprivation of RIH's due process right would constitute irreparable harm.  *See Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024).

Moreover, compliance with a subpoena later held unlawful produces irreparable monetary harm.  *See id.* at 341.  Any production efforts will involve collecting information from disparate platforms and then processing, de-duplicating, anonymizing, and reviewing these documents for privilege and confidentiality.  This process takes time and costs money—the whole production in total will cost millions, and partial production a significant fraction of that (even if it were permitted under the Order, which it is not).  *See* Pet. Ex. 1 at 6-7, ¶¶ 10-13.  Compliance will thus impose expenses that RIH can never recoup.  *Id.* at 7, ¶ 13.

RIH will also suffer irreparable harm to its patient relationships without a stay.  Among other things, RIH will have to turn over highly

sensitive medical records that contain comprehensive psychosocial evaluations and deeply personal disclosures by children about their bodies, trauma, family dynamics, self-harm, mental-health history, and cognitive and emotional functioning. Resp. Ex. 2 at 19, ¶¶ 6-8. Patients rely on RIH to maintain the confidentiality of exactly this information.[15] *Id.* at 20, ¶ 11; Resp. Ex. 4 at 14-15, ¶¶ 5-6.

But the Supreme Court has recently recognized that disclosure pursuant to a subpoena produces real risks of that "information becoming public," even when the Government promises confidentiality (and even if a court enters a protective order). *First Choice*, slip op. at 21. The information "might wind up in the public domain due to a hack or leak," creating a "risk of harassment and reprisals" of RIH employees and patients. *Id.* Forced compliance thus threatens irreparable harm to those patients and, in turn, their relationships with their providers at RIH and RIH's overall operations.[16]

---

[15] RIH is considering ways in which it could anonymize its patient records before production to the Government, but it is likely that "true and effective anonymization cannot be achieved." *In re 2025 UPMC Subpoena*, 2026 WL 570419, at *1 (W.D. Pa. Mar. 2, 2026); *see* Resp. Ex. 1 at 7, ¶ 12.

[16] The Government's argument below that RIH is not irreparably harmed because its privacy notice contemplates disclosure is misplaced; that

Indeed, just as a subpoena "is enough to discourage reasonable individuals from associating," it can also discourage patients from consulting their medical providers and seeking the medical care they need. *Id.*; *see* Resp. Ex. 4 at 15, ¶¶ 8-9; Resp. Ex. 5 at 20, ¶ 12. By intruding upon RIH's private records, this subpoena risks irreparable harm to RIH's ability to provide sound medical treatment. *See Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 600 (5th Cir. 2021) ("The government's ongoing intrusion on . . . privacy constitutes an irreparable injury."). This factor also warrants a stay.

## III. The public interest and balance of equities favor a stay.

Finally, the last two factors—the harm to the opposing party and the public interest—weigh heavily in favor of a stay.[17] Any potential harm to the Government from a stay would be minimal. The Government allowed 10 months to pass before seeking to enforce its subpoena without warning. Before filing, the Government communicated no objection to

policy only allows release for a legitimate law enforcement purpose, which this investigation is not.
[17] These two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

delayed production. The Government did not seek immediate or emergency relief in its petition and has identified no basis for urgency.

Meanwhile, RIH will retain and protect responsive documents. Resp. Ex. 1 at 7, ¶ 14. The Government can proceed with its investigation through other means, while RIH "would bear a heavy burden if [it] had to release this information." *X Corp. v. Media Matters for Am.*, 120 F.4th 190, 199 (5th Cir. 2024) (staying discovery order pending appeal). The balance of equities between the parties therefore supports a stay.

The privacy interests at stake further tip the balance of the equities away from the Government. *See First Choice*, slip op. at 21. The Government seeks vast swaths of private patient information untethered to its investigative authority, creating serious risks of harassment and intimidation for RIH's patients and personnel. *See X Corp.*, 120 F.4th at 199. The Government's purported investigatory interest pales in comparison to the potential harm to RIH and its patients.

## CONCLUSION

For these reasons, the Court should stay the District Court's Order pending resolution of this appeal.

Dated:  May 9, 2026

Respectfully submitted,

*/s/ Eric G. Olshan*

Eric G. Olshan
PA Bar No. 336966
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

Kathryn M. Barber
VA Bar No. 88992
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Erin L. Brown
FL Bar No. 1073605
McGuireWoods LLP
50 North Laura Street
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

# CERTIFICATE OF CONFERENCE

I hereby certify on May 9th, 2026, before filing the foregoing emergency motion, I attempted to contact counsel for Appellee United States of America to advise them of the filing of this motion and left a voicemail message.  As of the time of this filing, Appellee United States has not informed me of their position or their intent to file a response.

*/s/Eric G. Olshan*
Eric G. Olshan

# CERTIFICATE OF SERVICE

I hereby certify that on May 9th, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit using the CM/ECF system. On the same day, a copy of the foregoing was served upon all counsel of record listed below via CM/ECF and email:

Patrick Raymond Runkle
U.S. Department of Justice
Consumer Protection Branch
PO Box 386
Washington, DC 20044-0386
T: (202) 616-0219
F: (202) 514-8742
patrick.r.runkle@usdoj.gov

Ethan Womble
U.S. Department of Justice
801 Cherry Street
Suite 1700
Fort Worth, TX 76102
T: (214) 287-0162
ethan.womble@usdoj.gov

*/s/ Eric G. Olshan*
Eric G. Olshan

## CERTIFICATE OF COMPLIANCE

This emergency motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 5,094 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This emergency motion complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook style.

I certify the following in compliance with Fifth Circuit Rule 27.3:

- Before filing this motion, counsel for Appellant contacted the clerk's office and attempted to contact opposing counsel over telephone to advise them of Appellant's intent to file this motion;

- The facts stated herein supporting emergency consideration of this motion are accurate and complete;

- The Court's review of this motion is requested **no later than Tuesday, May 12, 2026**;

- True and correct copies of the relevant order and other documents are attached to the Appendix of this motion, filed separately; and

- This motion is being served at the same time it is being filed.

*/s/ Eric G. Olshan*
Eric G. Olshan