**No. 26-10431**

In the

# United States Court of Appeals For the Fifth Circuit

IN RE ADMINISTRATIVE SUBPOENA NO. 25-1431-032

UNITED STATES OF AMERICA,

*Petitioner-Appellee,*

*v.*

RHODE ISLAND HOSPITAL,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
Honorable Reed O'Connor, Chief District Judge
Case No. 4:26-mc-00006-O

## OPENING BRIEF OF APPELLANT RHODE ISLAND HOSPITAL

Kathryn M. Barber
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Eric G. Olshan
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

*(additional counsel listed on inside cover)*

Erin L. Brown
McGuireWoods LLP
Bank of America Tower
50 North Laura Street,
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

James R. Hornsby
McGuireWoods LLP
888 16th Street N.W.,
Suite 500
Washington, DC 20006
T: (202) 857-2440
F: (202) 828-2960
jhornsby@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

August 27, 2026

## CERTIFICATE OF INTERESTED PERSONS

No. 26-10431

*In re Administrative Subpoena No. 25-1431-032:*
*United States of America v. Rhode Island Hospital*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

- O'Connor, Reed, Chief U.S. District Court Judge, Northern District of Texas

**Appellant**

- Rhode Island Hospital is a Rhode Island not-for-profit corporation whose sole member is Lifespan Corporation d/b/a Brown University Health, a Rhode Island not-for-profit corporation. No publicly held company owns 10% or more of the stock of Rhode Island Hospital.

**Appellee**

- United States of America

**Counsel for Appellant**

- Barber, Kathryn M. (Counsel for Rhode Island Hospital)

- Brown, Erin L. (Counsel for Rhode Island Hospital)
- Hornsby, James R. (Counsel for Rhode Island Hospital)
- Olshan, Eric G. (Lead Counsel for Rhode Island Hospital)
- Sauter, Mindy M. (Counsel for Rhode Island Hospital)

**Counsel for Appellee**

- Bailey, John (Counsel for United States of America)
- Hinshelwood, Bradley (Counsel for United States of America)
- Runkle, Patrick Raymond (Counsel for United States of America)
- Womble, Ethan (Counsel for United States of America)

Dated: August 27, 2026

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully submits that oral argument would assist the Court in resolving this appeal. This action presents unique and important issues, as it involves two orders entered without prior notice and an opportunity to oppose, parallel proceedings in multiple districts, and a conflict between an enforcement order and an order quashing the same subpoena. It would thus benefit from oral argument.

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 3

STATEMENT OF ISSUES ..... 4

STATEMENT OF THE CASE ..... 5

A. Rhode Island Hospital lawfully provides gender-affirming care. ..... 5

B. The Department of Justice subpoenas hospitals under the President's directive to end gender-affirming care. ..... 6

C. RIH and the Department negotiate compliance. ..... 11

D. The Department seeks enforcement in the Northern District of Texas. ..... 13

E. Without giving RIH any opportunity to respond, the District Court enforces the subpoena. ..... 15

F. The Rhode Island district court quashes the subpoena. ..... 19

G. The District Court enjoins RIH from seeking relief in other courts or encouraging others to do so. ..... 22

STANDARD OF REVIEW ..... 23

SUMMARY OF ARGUMENT ..... 24

ARGUMENT ..... 25

I. The District Court's enforcement order denied RIH due process. ..... 25

A. Due process requires notice and an opportunity to be heard in subpoena enforcement proceedings. ..... 26

B. The District Court abused its discretion by failing to permit RIH to respond to the Department's petition. ..... 31

C. No basis for affirming the enforcement order exists. .......... 33

1. No futility exception exists in subpoena-enforcement proceedings. .......... 34

2. RIH's response would not have been futile. .......... 37

3. The ability to seek reconsideration does not cure the due process violation. .......... 40

II. The District Court unlawfully enjoined RIH from seeking relief in other courts. .......... 41

A. RIH did not engage in conduct justifying the injunction. .......... 42

B. The injunction is unduly overbroad. .......... 50

C. The injunction is impermissibly vague. .......... 52

D. The injunction violates the First Amendment rights of speech and association. .......... 54

E. The District Court breached procedural requirements. .......... 56

CONCLUSION .......... 57

CERTIFICATE OF SERVICE .......... 60

CERTIFICATE OF COMPLIANCE .......... 61

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ams. for Prosperity Found. v. Bonta*,
594 U.S. 595 (2021) .......... 55

*Armstrong v. Manzo*,
380 U.S. 545 (1965) .......... 27, 41

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
55 F.4th 469 (5th Cir. 2022) .......... 40

*Baum v. Blue Moon Ventures, LLC*,
513 F.3d 181 (5th Cir. 2008) .......... 42, 43, 49, 51, 56

*Bechuck v. Home Depot U.S.A., Inc.*,
814 F.3d 287 (5th Cir. 2016) .......... 44

*Castille v. Port Arthur ISD*,
168 F.4th 240 (5th Cir. 2026) .......... 26

*CFPB v. Source for Pub. Data, L.P.*,
903 F.3d 456 (5th Cir. 2018) .......... 24

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985) .......... 26

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) .......... 48, 49

*Council of Federated Orgs. v. Mize*,
339 F.2d 898 (5th Cir. 1964) .......... 35

*Doe v. United States*,
253 F.3d 256 (6th Cir. 2001) .......... 30, 31

*Donaldson v. United States*,
400 U.S. 517 (1971) .......... 28, 35

*Donovan v. Lone Steer, Inc.*,
464 U.S. 408 (1984) .......... 29

*Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*,
168 F.4th 271 (5th Cir. 2026) .......... 41

*FEC v. Comm. to Elect Lyndon La Rouche*,
613 F.2d 849 (D.C. Cir. 1979) .......... 39

*FTC v. Jim Walter Corp.*,
651 F.2d 251 (5th Cir. Unit A July 1981) .......... 39

*Harrelson v. United States*,
613 F.2d 114 (5th Cir. 1980) (per curiam) .......... 51, 52

*In re 2025 UPMC Subpoena*,
No. 25-mc-1069, 2025 WL 3724705
(W.D. Pa. Dec. 24, 2025) .......... 10

*In re Admin. Subpoena No. 25-1431-019*,
800 F. Supp. 3d 229 (D. Mass. 2025) .......... 10

*In re Admin. Subpoenas to Children's Hosps.*,
No. 26-cv-1834, 2026 WL 1660098 (D. Md. June 9, 2026) .......... 10

*In re Anthony Marano Co.*,
51 F.4th 722 (7th Cir. 2022) .......... 30, 31

*In re Children's Nat'l Hosp.*,
No. 25-cv-3780, 2026 WL 160792 (D. Md. Jan. 21, 2026) .......... 10

*In re Dep't of Just. Admin. Subpoena No. 25-1431-030*,
No. 25-mc-63, 2026 WL 33398 (D. Colo. Jan. 5, 2026) .......... 10

*Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*,
389 U.S. 64 (1967) .......... 53

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) .......... 30, 31

*In re Subpoena Duces Tecum No. 25-1431-016*,
No. 25-mc-41, 2025 WL 3562151
(W.D. Wash. Sep. 3, 2025) .......... 10

*In re Subpoena No. 25-1431-014*,
810 F. Supp. 3d 555 (E.D. Pa. 2025) .......... 10

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) .......... 39

*IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, LLC*,
945 F.3d 232 (5th Cir. 2019) .......... 56, 57

*Klayman v. Porter*,
104 F.4th 298 (D.C. Cir. 2024) .......... 42

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) (en banc) .......... 56

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......... 27, 36, 41

*Mazurek v. United States*,
271 F.3d 226 (5th Cir. 2001) .......... 29

*Moler v. Wells*,
18 F.4th 162 (5th Cir. 2021) .......... 39

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950) .......... 26

*NAACP v. Button*,
371 U.S. 415 (1963) .......... 55

*Newby v. Enron Corp.*,
302 F.3d 295 (5th Cir. 2002) .......... 43, 47, 51

*Nix v. Major League Baseball*,
62 F.4th 920 (5th Cir. 2023) .......... 43, 48

*NLRB v. Cooper Tire & Rubber Co.*,
438 F.3d 1198 (D.C. Cir. 2006) .......... 39

*Okla. Press Publ'g Co. v. Walling*,
327 U.S. 186 (1946) .......... 29, 33, 35, 36

*Peralta v. Heights Med. Ctr., Inc.*,
485 U.S. 80 (1988) .......... 34

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
No. 25-7384, 2026 WL 2359440 (9th Cir. Aug. 14, 2026) .......... 10

*Qureshi v. United States*,
600 F.3d 523 (5th Cir. 2010) .......... 24, 56, 57

*Republic Nat'l Bank of Dallas v. Crippen*,
224 F.2d 565 (5th Cir. 1955) .......... 35

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) .......... 26, 27, 32, 35

*Schmidt v. Lessard*,
414 U.S. 473 (1974) (per curiam) .......... 52, 54

*Scott v. Schedler*,
826 F.3d 207 (5th Cir. 2016) (per curiam) .......... 53

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) (per curiam) .......... 26, 27, 32, 34

*United States v. Clarke*,
573 U.S. 248 (2014) .......... 29, 35

*United States v. Rand*,
924 F.3d 140 (5th Cir. 2019) (per curiam) .......... 35, 36

*United States v. Skrmetti*,
605 U.S. 495 (2025) .......... 5, 6

*United States v. Smith*,
30 F.4th 1334 (11th Cir. 2022) .......... 35

*United States v. Zadeh*,
820 F.3d 746 (5th Cir. 2016) .......... 29, 30

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010) .......... 47

*W. Gulf Maritime Ass'n v. ILA Deep Sea Loc. 24*,
751 F.2d 721 (5th Cir. 1985) .......... 48, 49

*W. Water Mgmt., Inc. v. Brown*,
40 F.3d 105 (5th Cir. 1994) .......... 57

*Williams v. McKeithen*,
939 F.2d 1100 (5th Cir. 1991) .......... 57

**Statutes**

18 U.S.C. § 24 .......... 8, 9

18 U.S.C. § 3486 .......... 8, 14, 17, 28, 46

21 U.S.C. § 331 .......... 9

28 U.S.C. § 1291 .......... 4

28 U.S.C. § 1782 .......... 18, 40

R.I. Gen. Laws §§ 23-101-1 to -9 .......... 5

**Rules**

Fed. R. App. P. 4(a)(1)(B) .......... 3

Fed. R. Civ. P. 59(e) .......... 41

Fed. R. Civ. P. 60 .......... 47

Fed. R. Civ. P. 65(d) .......... 4, 52

**Court Documents**

Declaration of Glenn Friedemann *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 11, 2026), Dkt. 28-8 .......... 12

Emergency Mot. to Intervene, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 9, 2026), Dkt. 17 ........................ 19

Emergency Mot. to Quash Subpoena Duces Tecum, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 9, 2026), Dkt. 17-1 ........................ 19

Emergency Mot. to Quash Subpoena Duces Tecum, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 11, 2026), Dkt. 28........................ 13

Mot. to Expedite, *In re: Mot. to Quash Admin. Subpoena to R.I. Hosp.*, No. 26-1568 (1st Cir. May 22, 2026) ........................ 21, 22

Mot. to Set Aside or Modify Subpoena, *In re Subpoena Duces Tecum No. 25-1431-016*, No. 25-mc-41 (W.D. Wash. July 8, 2025), Dkt. 1 ........................ 9

Mot. to Quash, *In re Admin. Subpoena No. 25-1431-019*, No. 25-cv-91324 (D. Mass. July 8, 2025), Dkt. 3 ........................ 9

**Other Authorities**

Ben Penn et al., *Justice Department Expands Gender Care Probe as Hospital Fights*, Bloomberg Law (Aug. 20, 2025), https://tinyurl.com/3umj9xcw ........................ 8

Exec. Order No. 14187, 90 Fed. Reg. 8771 (Feb. 3, 2025) ........................ 6, 7

Memorandum from Brett A. Shumate, Assistant Att'y Gen., *Civil Division Enforcement Priorities* (June 11, 2025), https://perma.cc/B3SV-TY9E ........................ 7

Memorandum from Pamela Bondi, Att'y Gen., *Preventing the Mutilation of American Children* (Apr. 22, 2025), https://perma.cc/9KSZ-834B ........................ 7

News Release, The White House, *President Trump Is Delivering on His Commitment to Protect Our Kids* (Feb. 3, 2025), https://perma.cc/EN3W-R932........................ 7

Press Release, U.S. Dep't of Just., *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children* (July 9, 2025), https://perma.cc/BS54-RSQA ................................ 9, 15

UCLA Sch. of Law Ctr. on Reproductive Health, Law, & Policy, *Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide* (last updated July 2026), https://perma.cc/J43T-7464 ............................................... 5

18 MOORE'S FEDERAL PRACTICE § 130.04 (3d ed. 1997) .......................... 47

## INTRODUCTION

This appeal concerns central due process and First Amendment rights. The District Court denied Rhode Island Hospital those rights, first by enforcing an administrative subpoena without giving RIH notice or an opportunity to respond, and then by issuing a sweeping injunction purporting to cut off RIH's access to the courts and its speech and associational rights. Neither order should stand. This Court should confirm that administrative subpoena recipients must have a meaningful opportunity to oppose enforcement and, when denied that opportunity, may vindicate their rights in any appropriate forum.

Last year, the Department of Justice issued an administrative subpoena to RIH demanding expansive categories of documents, including highly sensitive medical records of minor patients. After courts across the country unanimously invalidated identical subpoenas issued to other hospitals and clinics—finding them pretextual, overbroad, and issued in bad faith—the Department decided to short-circuit ongoing negotiations over the subpoena issued to RIH. With no notice to RIH, and notwithstanding communications between the parties the day before, the Department abruptly filed a petition to enforce the subpoena

in the Northern District of Texas—a forum 1,500 miles from RIH and the D.C.-based DOJ attorneys with whom RIH had negotiated, with no apparent connection to the Department's investigation.

The District Court granted the Department's petition the very same day it was filed—before RIH had time to enter an appearance, much less file a response—rubberstamping the Department's proposed (and inaccurate) order. The District Court did not give RIH notice or an opportunity to be heard before it ordered that RIH produce all responsive records within two weeks, under threat of sanctions and contempt.

With that compliance deadline quickly approaching, the U.S. District Court for the District of Rhode Island was evaluating the same subpoena on the Rhode Island Child Advocate's emergency motion to quash. Rather than stand by while another proceeding about its records and obligations went forward without it, RIH intervened and filed its own motion to quash. After holding oral argument, the Rhode Island district court granted both motions and quashed the subpoena in full.

Back in the Northern District of Texas, the District Court responded with a second extraordinary order. Acting *sua sponte*, and again without giving RIH notice or an opportunity to oppose, the District

Court issued an expansive injunction barring RIH from seeking relief related to these proceedings in any court except the Northern District of Texas, this Court, and the Supreme Court. The injunction also prohibits RIH from encouraging or cooperating with other entities seeking relief related to these proceedings in other courts.

Both the enforcement order and the injunction are legally unsound. Both were issued without the notice and opportunity to be heard that due process requires. And the injunction independently violates RIH's First Amendment rights of petition, speech, and association. RIH's appeal asks this Court to vindicate a foundational principle that the proceedings below disregarded: a litigant is entitled to its day in court and should not be sanctioned for insisting on one.

## JURISDICTIONAL STATEMENT

On April 30, 2026, the District Court entered a final order granting the Department's petition to enforce the administrative subpoena. ROA.72. RIH filed a timely notice of appeal on May 6, 2026. ROA.88; *see* Fed. R. App. P. 4(a)(1)(B). On May 18, 2026, the District Court entered a final, post-judgment injunction. ROA.338. RIH timely appealed that

order on July 14, 2026. ROA.619. This Court has jurisdiction over this consolidated appeal under 28 U.S.C. § 1291.

**STATEMENT OF ISSUES**

1. Whether the District Court abused its discretion by granting the Department's petition to enforce the administrative subpoena the same day it was filed, without giving RIH notice and an opportunity to be heard, thereby depriving RIH of its due process rights.

2. Whether the District Court abused its discretion by enjoining RIH from pursuing judicial relief in any court except the Northern District of Texas, this Court, and the Supreme Court.

3. Whether the District Court's injunction is impermissibly vague under Federal Rule of Civil Procedure 65(d).

4. Whether the injunction unlawfully restricts RIH from encouraging others to seek relief or cooperating with others in seeking relief, in violation of RIH's First Amendment rights to free speech and association.

5. Whether the District Court abused its discretion by entering the injunction *sua sponte* without first giving RIH notice and an opportunity to oppose.

## STATEMENT OF THE CASE

### A. Rhode Island Hospital lawfully provides gender-affirming care.

This case arises against the backdrop of an ongoing national debate over gender-affirming medical care for minors. In exercising their traditional authority over medical practice, States have taken varying positions on the issue. *See United States v. Skrmetti*, 605 U.S. 495, 524 (2025). Some States have chosen to prohibit certain forms of gender-affirming care for minors. *See id.* at 504. Others, including Rhode Island, have enacted laws expressly protecting gender-affirming care. *See* R.I. Gen. Laws §§ 23-101-1 to -9; UCLA Sch. of Law Ctr. on Reproductive Health, Law, & Policy, *Shield Laws for Reproductive and Gender-Affirming Health Care: A State Law Guide* (last updated July 2026), https://perma.cc/J43T-7464.

Consistent with Rhode Island law, RIH provides gender-affirming care to minors through its pediatric division. ROA.119. Where clinically appropriate, this care may include prescribing puberty blockers and cross-sex hormones on an "off-label" basis—that is, for uses the FDA has not specifically approved, though the drugs themselves are FDA-

approved for other indications.[1] ROA.131, 133. "[I]t is neither unusual nor unlawful for drugs to be used off-label," whether for gender-affirming care or across many other areas of medicine. *Skrmetti*, 605 U.S. at 533 (Thomas, J., concurring). RIH provides this care with the knowledge and consent of patients and their parents or legal guardians. ROA.132.

Minor patients receiving gender-affirming care at RIH disclose highly sensitive information about their mental health, sexual health, family medical history, and many other topics. *Id.* Providers use this information to develop individualized care plans. *Id.* Patients share this information with the understanding that RIH will maintain confidentiality, a cornerstone of medical care at RIH. ROA.128-29, 133.

### B. The Department of Justice subpoenas hospitals under the President's directive to end gender-affirming care.

Near the beginning of his second term, President Trump directed the Attorney General to "prioritize investigations and take appropriate action to end deception of consumers, fraud, and violations of the Food, Drug, and Cosmetic Act [(FDCA)] by any entity that may be misleading the public about long-term side effects" of gender-affirming care. Exec.

---

[1] RIH does not perform gender-transition surgeries for minors.

Order No. 14187, § 8(c), 90 Fed. Reg. 8771, 8772 (Feb. 3, 2025). This order's explicit "intended effect" was to "prevent[]" gender-affirming care by hospitals like RIH. News Release, The White House, *President Trump Is Delivering on His Commitment to Protect Our Kids* (Feb. 3, 2025), https://perma.cc/EN3W-R932.

The Department of Justice soon began implementing the President's directive. In April 2025, then-Attorney General Pam Bondi instructed the Department "to undertake appropriate investigations of any violations of the [FDCA] by manufacturers and distributors engaged in misbranding by making false claims about the on- or off-label use of puberty blockers, sex hormones, or any other drug." Memorandum from Pamela Bondi, Att'y Gen., *Preventing the Mutilation of American Children* 4 (Apr. 22, 2025), https://perma.cc/9KSZ-834B. And on June 11, 2025, Assistant Attorney General Brett Shumate declared that the Civil Division would devote "all available resources to prioritize investigations of doctors, hospitals, [and] pharmaceutical companies." Memorandum from Brett A. Shumate, Assistant Att'y Gen., *Civil Division Enforcement Priorities* 2 (June 11, 2025), https://perma.cc/B3SV-TY9E.

That same day, Shumate signed a batch of criminal administrative subpoenas directed to hospitals and clinics that provide gender-affirming care. *See* Ben Penn et al., *Justice Department Expands Gender Care Probe as Hospital Fights*, Bloomberg Law (Aug. 20, 2025), https://tinyurl.com/3umj9xcw.

Ordinarily, the head of the investigating branch (then the Consumer Protection Branch) would have signed the subpoenas. *See id.* But the director reportedly declined after "rais[ing] serious concerns about collecting children's health data" and determining that "investigating providers and doctors for prescribing gender services like puberty blockers would be unlikely to lead to a successful criminal prosecution." *Id.* The director and her deputy then resigned, and Shumate signed the subpoena within hours of his being sworn in as head of the Civil Division. *Id.*

To support the subpoenas, the Department invoked the Health Insurance Portability and Accountability Act of 1996 (HIPAA), 18 U.S.C. § 3486, asserting that the subpoenas would further an investigation of "[f]ederal health care offenses as defined in 18 U.S.C. § 24(a)." ROA.40.

The list of underlying offenses includes violations of the FDCA. 18 U.S.C. § 24(a)(2); *see* 21 U.S.C. § 331.

Within weeks, multiple recipients challenged the subpoenas, moving for full or partial quashal. The earliest challenges were filed on July 8, 2025.[2] The next day, the Department announced that it had "sent more than 20 subpoenas to doctors and clinics involved in performing transgender medical procedures on children." Press Release, U.S. Dep't of Just., *Department of Justice Subpoenas Doctors and Clinics Involved in Performing Transgender Medical Procedures on Children* (July 9, 2025), https://perma.cc/BS54-RSQA ("July 9 Press Release"). The Department stated that its "investigations include healthcare fraud, false statements, and more." *Id.*

Challenges brought by providers, patients, and families continued. In addressing these challenges, courts across the country acted in near unanimity, finding that the Department had issued the subpoenas to suppress gender-affirming care, not to further a legitimate investigation,

[2] *See, e.g.*, Mot. to Set Aside or Modify Subpoena, *In re Subpoena Duces Tecum No. 25-1431-016*, No. 25-mc-41 (W.D. Wash. July 8, 2025), Dkt. 1; Mot. to Quash, *In re Admin. Subpoena No. 25-1431-019*, No. 25-cv-91324 (D. Mass. July 8, 2025), Dkt. 3.

and quashing them.[3] Multiple courts also found the subpoenas unduly overbroad, particularly in seeking minor patients' private medical records.[4]

---

[3] Recipients pursued relief that varied in scope, meaning some quashals were partial. *See In re Subpoena Duces Tecum No. 25-1431-016*, No. 25-mc-41, 2025 WL 3562151, at *10-12, 17 (W.D. Wash. Sep. 3, 2025), *appeal pending*, No. 26-4009 (9th Cir.); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 239 (D. Mass. 2025), *appeal pending*, No. 25-2092 (1st Cir.); *In re Subpoena No. 25-1431-014*, 810 F. Supp. 3d 555, 583, 607 (E.D. Pa. 2025), *appeal withdrawn*, No. 26-1134 (3d Cir.); *In re 2025 UPMC Subpoena*, No. 25-mc-1069, 2025 WL 3724705, at *2-3 (W.D. Pa. Dec. 24, 2025), *judgment entered*, 2026 WL 570419 (W.D. Pa. Mar. 2, 2026), *appeal withdrawn*, No. 26-1401 (3d Cir.); *In re Children's Nat'l Hosp.*, No. 25-cv-3780, 2026 WL 160792, at *8-9 (D. Md. Jan. 21, 2026), *appeal pending*, No. 26-1104 (4th Cir.); *see also In re Admin. Subpoenas to Children's Hosps.*, No. 26-cv-1834, 2026 WL 1660098, at *14 (D. Md. June 9, 2026), *appeal pending*, No. 26-2095 (4th Cir.); *In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, No. 25-mc-63, 2026 WL 33398, at *7 (D. Colo. Jan. 5, 2026) (report and recommendation). The Western District of Washington was part of this group but was recently reversed by a divided Ninth Circuit panel, which disagreed with the finding of improper purpose and remanded for further proceedings on whether the subpoena was overbroad or imposed an undue burden. *QueerDoc, PLLC v. U.S. Dep't of Just.*, No. 25-7384, 2026 WL 2359440 (9th Cir. Aug. 14, 2026).

[4] *See In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d at 239; *In re Children's Nat'l Hosp.*, 2026 WL 160792, at *8; *see also In re Dep't of Just. Admin. Subpoena No. 25-1431-030*, 2026 WL 33398, at *4.

### C. RIH and the Department negotiate compliance.

On July 9, 2025, the Department served RIH with a subpoena mirroring those issued nationwide. ROA.40, 68, 119. The subpoena demanded fifteen broad categories of records spanning an approximately six-year period. ROA.46-48. Request 1 sought "[c]omplete personnel files" of all executives, prescribing providers, and billing staff. ROA.46. Requests 2 through 6 sought documents related to billing, coding, and insurance claims. ROA.46-47. Requests 7 through 10 and 14 sought internal and external communications about puberty blockers and hormones used for gender-affirming care. ROA.47. Requests 11, 12, 13, and 15 sought patient records, including diagnoses, treatment outcomes, and consent documents. ROA.47-48. The subpoena also demanded documents that "identify each patient (by name, date of birth, social security number, address, and parent/guardian information) who was prescribed puberty blockers or hormone therapy." ROA.47.

The subpoena set a return date less than a month after service. ROA.40. It required production at the Consumer Protection Branch's Washington, D.C. office. *Id.*

RIH initially chose negotiation over moving to quash. ROA.385.[5] When negotiations began, DOJ attorneys conceded that they did not believe RIH had engaged in any criminal wrongdoing, and that the Department had subpoenaed it only as a potential witness. ROA.119; *see also* Declaration of Glenn Friedemann at 3, ¶ 8, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 11, 2026), Dkt. 28-8 ("D.R.I. Friedemann Decl.").

Full compliance in under a month was impracticable, so the Department informed RIH that partial compliance by the return date would suffice and that it was "willing to receive documents responsive to the subpoena past the return date." ROA.38. At the Department's request, RIH made an initial production by the return date while reserving its right to object to the subpoena and pursue judicial relief. *Id.*; D.R.I. Friedemann Decl. at 3, ¶ 9. RIH continued regular calls with

[5] Because RIH was not permitted to develop a record in the District Court about these negotiations and other facts bearing on the enforceability of the subpoena, aside from limited filings in connection with its emergency motion for a stay pending appeal, RIH primarily references the transcript of the hearing in the District of Rhode Island, which RIH filed in the District Court below, to provide the necessary facts. *See* ROA.347-540. Where otherwise necessary to present a complete factual picture, RIH cites its motion to quash and supporting documents filed in the District of Rhode Island.

DOJ attorneys about compliance for several months. ROA.386-90; Emergency Mot. to Quash Subpoena Duces Tecum, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* at 5 (D.R.I. May 11, 2026), Dkt. 28 ("D.R.I. Mot. to Quash").

In late January 2026, RIH notified the Department that it was ready to produce additional documents consistent with the focus of the parties' recent discussions. ROA.388-90. On February 4, RIH sent proposed search terms for the Department's review. ROA.123; D.R.I. Mot. to Quash 5.

The Department never responded to that proposal. ROA.123. Indeed, RIH heard nothing back for nearly three months, while the primary DOJ attorney on the matter took paternity leave. ROA.424, 427-28. On April 28, the DOJ attorney finally resumed contact, requesting a "conference this week regarding status." ROA.122-23. RIH responded the next day, April 29, with a proposed date. ROA.123.

### D. The Department seeks enforcement in the Northern District of Texas.

The Department's next communication came on the evening of April 30. ROA.122. But it was not a message confirming the call date. Instead, the Department informed RIH that it had filed a petition to

enforce the subpoena earlier that day in the Northern District of Texas. ROA.6, 122.

The Department's enforcement petition presented a one-sided and inaccurate account of the subpoena's issuance and corresponding negotiations. It misstated the date on which RIH was served with the subpoena by nearly a week (July 3 instead of July 9). ROA.6, 119. It portrayed RIH as abjectly noncompliant, claiming that RIH had "produced only one six-page document," while omitting material facts about the parties' months of negotiations and RIH's unanswered search-term proposal. ROA.6, 9. It also represented that "other hospitals to whom the Department issued similar subpoenas have complied with the subpoena without any disruption or hindrance," without acknowledging that every district court to adjudicate the subpoenas had quashed them in whole or in part—including in several challenges brought by hospitals. ROA.16-17.

To support venue in the Northern District of Texas, the petition asserted—without evidentiary support—that the Department's investigation "is being carried out in the Northern District of Texas." ROA.7 (citing 18 U.S.C. § 3486(c)). And to explain the Department's need

for private patient records, the petition and supporting declaration represented that "patient records including patient identities" can provide "essential investigative leads." ROA.14, 37. The petition did not disclose that the Department had agreed to accept anonymized records from at least three other hospitals. *See* D.R.I. Mot. to Quash 7 & n.3.

Although the Department's July 9 press release had described its investigation as involving "healthcare fraud" and "false statements," the enforcement petition invoked only the Department's "statutory authority to investigate violations" of the FDCA. July 9 Press Release; ROA.6. The petition conclusorily asserted that the subpoena fell within that authority, that the information sought was relevant to its investigation, and that "the subpoena is neither overbroad nor unduly burdensome." ROA.6.

### E. Without giving RIH any opportunity to respond, the District Court enforces the subpoena.

In filing its petition, the Department did not seek emergency or *ex parte* relief. ROA.6-17. Yet the District Court granted the petition on April 30, the same day it was filed. ROA.72-73. The District Court gave

RIH no opportunity to respond. ROA.3, 72. Indeed, RIH had not even entered an appearance in the action. ROA.3.

The District Court adopted the Department's proposed order verbatim, including its incorrect service date. ROA.70, 72. Although the District Court entered the enforcement order before RIH could file any opposition (and potentially before RIH even received notice of the petition),[6] it adopted the Department's proposed conclusions wholesale, including that RIH had not "shown just cause for noncompliance." ROA.72. The order commanded RIH to "provide all records responsive to each request in the subpoena" within two weeks, by May 14, and warned that noncompliance could result in "sanctions up to and including . . . contempt." ROA.72-73.

RIH promptly appealed and sought a stay pending appeal from the District Court. ROA.88, 91. RIH argued that it was likely to succeed on appeal because the District Court had denied it due process by failing to allow a response to the petition. ROA.99-101. RIH also challenged venue, because the petition offered no record support for the

---

[6] It is unclear when on April 30 the District Court entered the order, making it possible that the court signed the order before the Department even notified RIH it had filed the petition. ROA.390-91, 442-43.

Department's claim that its investigation was being "carried on" in the Northern District of Texas; by all indications, the Department had conducted its nationwide investigation from its Washington, D.C. hub. ROA.101-102; *see* 18 U.S.C. § 3486(c).

The District Court ordered the Department to respond to the stay motion. ROA.135. In its opposition, the Department argued that RIH had not carried the "heavy burden" of demonstrating entitlement to the "extraordinary relief" of a stay. ROA.136-37 (quotation omitted). The Department asserted that a district court "need not wait for a response" to an enforcement petition if it "reasonably believes that the response will not change the outcome." ROA.138.

To support venue, the Department attached a new declaration—filed *ex parte* and under seal—purporting to show that "the investigation is being carried on" in the Northern District of Texas. ROA.140. That sealed declaration remains inaccessible to RIH. The Department's pleading, however, described it as showing that "there is substantial operational and decision-making control of the investigation being exercised at the U.S. Attorney's Office in the Northern District of Texas, along with several subjects and potential targets of the investigation

located" there. *Id.* The Department insisted it "did not simply decide that it would park the investigation in this District to bring enforcement petitions and nothing else," but that "substantial investigative steps [were] happening" there. ROA.140-41.

On May 10, the District Court denied the stay pending appeal.[7] ROA.154. It adopted the Department's due process rationale, agreeing that it need not allow a response it believed would not change the result. ROA.157-58. The District Court also added a separate rationale: relying on cases involving *ex parte* subpoenas under 28 U.S.C. § 1782, which concerns discovery for use in foreign proceedings, the District Court reasoned that "a motion for reconsideration would be the proper mechanism to challenge an ex parte order." ROA.158.

To justify venue, the District Court relied entirely on the Department's new sealed, *ex parte* declaration filed in response to RIH's stay motion. ROA.159 & n.8. It concluded that RIH "failed to show a likelihood of success on the merits as to its venue challenge" based

[7] This order recognized the correct service date for the first time and acknowledged that RIH "did seek the Government's views on proposed search terms and received no response." ROA.154.

entirely on evidence that did not exist when the petition was filed, or when RIH filed its notice of appeal and moved for a stay. ROA.159.

### F. The Rhode Island district court quashes the subpoena.

Meanwhile, the Rhode Island Child Advocate—the official charged with protecting the legal rights of children in the State's care—had filed an emergency motion to quash the subpoena issued to RIH in the District of Rhode Island. ROA.334. The day before the Northern District of Texas denied RIH's motion for a stay, with its compliance deadline rapidly approaching, RIH moved to intervene in the District of Rhode Island and attached its own motion to quash. *See* Emergency Mot. to Intervene, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 9, 2026), Dkt. 17; Emergency Mot. to Quash Subpoena Duces Tecum, *In re: Admin. Subpoena 25-1431-032 to R.I. Hosp.* (D.R.I. May 9, 2026), Dkt. 17-1.

The Rhode Island district court granted intervention and held a hearing on the motions to quash, with all parties participating.[8] ROA.348. Following the hearing, the Rhode Island district court granted both motions. ROA.279. The court first held that the motions were

[8] While that hearing was unfolding in Rhode Island, this Court denied RIH's motion for a stay pending appeal. ROA.479.

properly filed in Rhode Island: because RIH "was not provided notice and an opportunity to be heard before the Texas court ordered the administrative subpoena enforced," claim preclusion and the collateral-attack doctrine should not bar RIH's motion to quash. ROA.290-91.

On the merits, the court held that the subpoena lacked a valid statutory basis. ROA.291-97. The court reasoned that the Department's FDCA theory—that "any party in the distribution chain who helped place [a] drug in commerce," including prescribing doctors, could be criminally liable for "misbranding" when a drug is prescribed off-label—was irreconcilable with the settled rule that off-label prescribing is lawful. ROA.292-93.

The court also joined seven other courts in concluding that the subpoena was issued for an improper purpose in bad faith. ROA.296-97. It rejected the Department's claim that a legitimate investigative motive accompanied its objective of suppressing gender-affirming care, explaining that the Department may not "immunize any coercive investigation from the improper purpose doctrine simply by appending an untenable legal theory to it." ROA.296. The court further agreed with

the Child Advocate that the subpoena's requests for medical records violated minor patients' informational privacy rights. ROA.297-301.

The court also concluded that the Department had "misrepresented and withheld information" in both Rhode Island and Texas. ROA.279. The enforcement petition "misleadingly . . . never acknowledged that [DOJ] had failed to respond in any way to the February message from RIH where it suggested search terms." ROA.282. And the Department's declarant, Lisa Hsiao, "neglected to inform the Texas court that DOJ had agreed to anonymized data in several other jurisdictions," making "[h]er assertion that DOJ needed this information . . . at best, deceptive, if not intentionally and knowingly false."[9] ROA.284.

For these reasons, the court quashed the subpoena and enjoined the Department from "seeking, receiving, using, retaining, or disseminating any patient-identifying information or protected health information produced by RIH." ROA.327. The Department appealed to the First Circuit and obtained expedited consideration. ROA.211; *see* Mot. to

---

[9] The Rhode Island district court has initiated disciplinary proceedings based on the conduct of counsel for the Department.

Expedite, *In re: Mot. to Quash Admin. Subpoena to R.I. Hosp.*, No. 26-1568 (1st Cir. May 22, 2026). That appeal is now fully briefed.

### G. The District Court enjoins RIH from seeking relief in other courts or encouraging others to do so.

After the Rhode Island district court quashed the subpoena, RIH notified the District Court that in light of the quashal order, it would not produce responsive documents to the Department. ROA.272. The District Court held a status conference at which the court inquired into RIH's efforts to prepare for production in compliance with the enforcement order. ROA.328, 574-79, 582. Shortly after, the District Court entered another order. ROA.338. Citing purported concerns about preserving the subpoenaed documents amid the "parallel litigation, pending appeals, [and] conflicting court orders," the District Court ordered RIH to produce responsive materials to be held *in camera*, inaccessible to the Department, while the appeals proceed. ROA.337-38.[10]

The order also imposed a separate injunction—a directive that (like the production aspect of the order) it did not raise or seek the parties'

[10] RIH does not challenge the order's *in camera* production component and has been complying via regular productions. ROA.339-40, 541. RIH

position on at the status conference. *See* ROA.338, 567-93. Stating that it sought "[t]o avoid the waste of duplication[,] rulings which may trench upon the authority of sister courts, and piecemeal resolution of issues that call for a uniform result," the District Court barred RIH from "seeking relief, encouraging others to seek relief, or cooperate [sic] with others in seeking relief from any other court related to these proceedings, and from aiding and abetting others or encouraging others from seeking relief from any other court" except the District Court, this Court, and the Supreme Court. ROA.338 (quotation, brackets, and ellipses omitted). The District Court did not provide RIH any notice of this injunction.

RIH timely appealed the injunction. ROA.619. This Court consolidated that appeal with RIH's pending appeal from the enforcement order.

## STANDARD OF REVIEW

This Court reviews both orders enforcing administrative subpoenas and injunctions for abuse of discretion. *See CFPB v. Source for Pub. Data,*

notified the District Court that, in producing documents, it would anonymize any patient information "as agreed by the Government on the record during the May 12 hearing before the District of Rhode Island." ROA.340.

*L.P.*, 903 F.3d 456, 458 (5th Cir. 2018); *Qureshi v. United States*, 600 F.3d 523, 524 (5th Cir. 2010).

## SUMMARY OF ARGUMENT

This Court should correct course by reversing or vacating both orders. The enforcement order is legally deficient because RIH was denied due process in its issuance. The recipient of an administrative subpoena must have notice and an opportunity to be heard before a court enforces the subpoena. Without that adversarial testing, the subpoena lacks the necessary protections against Fourth Amendment violations and abuse of process.

The due process deprivation is especially blatant here: every other district court to adjudicate the validity of these subpoenas did so after hearing from both sides and quashed them in whole or in part. RIH never had an opportunity to voice this substantial objection (or others) before the District Court enforced the subpoena. The enforcement order is a clear abuse of discretion and should be vacated.

The District Court's proffered justifications for denying that opportunity to respond do not salvage its order. No "futility" exception erases a due process deprivation—especially where opposing arguments

have seen such resounding success. Nor can reconsideration cure the defect: a party denied due process may immediately appeal and need not submit to the demanding standards governing reconsideration motions.

The injunction is equally infirm. This Court's precedent makes notice and a hearing mandatory before imposing such an injunction. That procedural defect alone requires vacatur. But even more fundamentally, the injunction is an unjustified, impermissibly vague, and overbroad restriction on RIH's First Amendment freedoms, warranting reversal.

## ARGUMENT

### I. The District Court's enforcement order denied RIH due process.

Judicial enforcement of an administrative subpoena is not a rubber stamp. It requires adversarial testing in which both the issuing agency and the subpoenaed party have an opportunity to be heard. Because the District Court bypassed that process—issuing the enforcement order without giving RIH notice or an opportunity to respond to the Department's petition—its enforcement order must be vacated.

### A. Due process requires notice and an opportunity to be heard in subpoena enforcement proceedings.

Procedural due process under the Fifth Amendment requires "notice and an opportunity to be heard" before deprivation of a protected life, liberty, or property interest. *Castille v. Port Arthur ISD*, 168 F.4th 240, 252 (5th Cir. 2026) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)); *see Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). That requirement extends to subpoena recipients like RIH.

Circuit precedent in the subpoena context reflects this principle. In *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, this Court held that the district court violated a subpoena issuer's due process rights by granting a motion to quash a subpoena the day after its filing, without giving the issuer "an opportunity to respond in opposition." 694 F.3d 548, 549, 556 & n.5 (5th Cir. 2012) (per curiam).

*Texas Keystone* built on *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, where this Court likewise held that ruling on a motion to quash an administrative subpoena before receiving a response is a dispositive error. 878 F.2d 875, 881 (5th Cir. 1989). There, the district court's ruling without a response "robbed" the issuer

of "its right to be heard," *id.*—a right that *Texas Keystone* made clear is grounded in "procedural due process," 694 F.3d at 556 n.5.

Due process protections apply in both proceedings to enforce administrative subpoenas and proceedings to quash them. Neither this Court's precedent nor foundational due process principles support any distinction between those proceedings.

In particular, neither *Texas Keystone* nor *Sandsend* suggests that the identity of the moving party or the procedural posture of the dispute alters the due process standard. To the contrary, their reasoning rests on the fundamental principle that any party whose protected interest is imperiled by a judicial order is entitled to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965))). And their clear import is that the opposing party in an administrative subpoena proceeding—whether issuer or recipient, and whether opposing quashal or enforcement—has a due process right to be heard before any order is entered.

Indeed, the need for due process is at its zenith in enforcement proceedings. An enforcement order deprives the recipient of property by compelling it to surrender its records. Here, for instance, the order directly impacts RIH's possessory interest in the records it safeguards—including those that contain minor patients' highly sensitive medical information. In quashal proceedings, by contrast, a subpoena issuer denied an opportunity to respond is simply denied access to *others'* property.

Confirming the need for an opportunity to respond in enforcement proceedings is the fact that administrative subpoenas are not self-executing. That is, the subpoena does not become judicially enforceable when issued. Instead, the agency may only obtain judicial enforcement after adversarial testing aimed at ensuring the subpoena's validity and reasonableness. *See Donaldson v. United States*, 400 U.S. 517, 525 (1971) ("[T]he summons is administratively issued but its enforcement is only by federal court authority in an adversary proceeding affording the opportunity for challenge and complete protection to the witness." (quotation omitted)); *see also* 18 U.S.C. § 3486(c) (permitting the Attorney General to "invoke the aid" of a court). And that adversarial testing

involves giving the opposing party an "adequate opportunity to present objections." *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 195 (1946); *see United States v. Clarke*, 573 U.S. 248, 253 (2014) ("[W]e have time and again stated that the requisite judicial proceeding is not *ex parte* but adversarial."); *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) (recipient may "rais[e] objections" to "question the reasonableness of a subpoena, before suffering any penalties for refusing to comply with it").

Without adequate judicial review, courts could not properly assess whether the subpoena meets the "reasonable relevance" standard that governs under the Fourth Amendment—i.e., "(1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *United States v. Zadeh*, 820 F.3d 746, 755 (5th Cir. 2016). Opponents of a subpoena may also contend that the instrument is "an abuse of process." *Id.* at 759; *see Mazurek v. United States*, 271 F.3d 226, 230-31 (5th Cir. 2001).

This Court applies a burden-shifting framework to both issues: "[t]he government need only make a prima facie showing under the reasonable relevance standard, at which point the party opposing

enforcement bears the heavy burden of demonstrating that the government has not met this standard." *Zadeh*, 820 F.3d at 757 (quotation omitted). Similarly, where a subpoena recipient raises an abuse-of-process argument, it must make a substantial preliminary showing that the subpoena was issued in bad faith. *See id.* at 759.

Such burden-shifting, of course, presupposes that the opposing party has an opportunity to participate in the proceedings and thereby carry its burden. Burden-shifting cannot occur if the party opposing enforcement has no chance to even attempt to rebut the government's case or to advance its own defense. Thus, if that party lacks any opportunity to object, this burden-shifting framework collapses.

Such adversarial testing before a court is also what distinguishes an administrative subpoena from a warrant under the Fourth Amendment—and justifies the less stringent standard of reasonableness for the former. *See Doe v. United States*, 253 F.3d 256, 262-64 (6th Cir. 2001); *In re Subpoena Duces Tecum*, 228 F.3d 341, 346-48 (4th Cir. 2000); *see also In re Anthony Marano Co.*, 51 F.4th 722, 734 (7th Cir. 2022). For a warrant, the "first opportunity that a party subject to the warrant may have to contest the basis or scope of the warrant usually comes when it

defies the warrant," in "contempt proceedings or other subsequent proceedings," but the recipient of an administrative subpoena "has an opportunity to be heard during the enforcement proceeding itself." *In re Anthony Marano Co.*, 51 F.4th at 734. Because an administrative subpoena undergoes this adversarial testing, it need only be reasonable, while a warrant requires a heightened showing of probable cause. *See Doe*, 253 F.3d at 262-64; *In re Subpoena Duces Tecum*, 228 F.3d at 346-48. If that adversarial testing does not occur—because the subpoena's opponent is not given any opportunity to oppose enforcement—the justification for this differential treatment falls away.

In sum, the right to be heard before a subpoena enforcement order issues is grounded in the Fifth Amendment's Due Process Clause, confirmed by this Court's precedents in *Texas Keystone* and *Sandsend* and controlling Supreme Court precedent, required by the burden-shifting framework for administrative subpoenas, and essential to the constitutional distinction between subpoenas and warrants.

### B. The District Court abused its discretion by failing to permit RIH to respond to the Department's petition.

The District Court did exactly what due process and controlling precedent forbids. Within hours of the petition's filing—and before RIH

could offer a word in response—it entered an enforcement order adopting verbatim the Department's proposed text. That rushed *ex parte* procedure denied RIH due process.

This due process violation, standing alone, requires vacatur of the enforcement order. This Court has confirmed that course multiple times. In *Texas Keystone*, this Court vacated and remanded when the district court "failed to provide Texas Keystone an opportunity to respond." 694 F.3d at 555-56. In *Sandsend*, this Court similarly held that denying "an opportunity to respond" was a "procedural error[]" that was "dispositive" of the appeal, warranting at least vacatur. 878 F.2d at 881.

The failure to let RIH respond, without more, would be enough to support vacatur. But the surrounding circumstances here make the District Court's error especially stark. The Department obtained the same-day enforcement order in a courthouse some 1,500 miles from both RIH and the D.C.-based DOJ attorneys with whom RIH had negotiated during the preceding nine months, relying on representations the Rhode Island district court later deemed false or at least misleading. ROA.283-84. The District Court accepted those assertions without any adversarial

testing, giving them its judicial imprimatur with no assurances they were correct.

RIH had no chance to inform the District Court about the parties' ongoing negotiations, the unanswered search-term proposal, or the Department's willingness to accept anonymized records elsewhere. Nor could RIH raise its other challenges to the subpoena's validity and breadth—challenges that had succeeded in every other court to consider them. The earliest RIH could raise any argument on its behalf was in its emergency motion for a stay pending appeal, where, as the Department recognized, RIH bore a "heavy burden" to earn "extraordinary relief." ROA.137 (quotation omitted). This scenario is not the "adequate opportunity to present objections" that due process requires. *Okla. Press*, 327 U.S. at 195.

### C. No basis for affirming the enforcement order exists.

In asserting otherwise, the Department and the District Court have relied on two theories. First, the Department argued—and the District Court agreed—that allowing a response is unnecessary if the response would not change the outcome. ROA.138-40, 157. Second, the District

Court reasoned that RIH's ability to move for reconsideration satisfied due process. ROA.158-59. Neither theory withstands scrutiny.

#### 1. No futility exception exists in subpoena-enforcement proceedings.

Nothing supports the Department's effort to invoke a futility exception to due process, under which a party has no right to file an opposition that the court believes would not persuade it. No authority permits a court to deny due process based on its own one-sided prediction that an unseen opposition would not succeed (or that it would not alter that particular court's decision).

The Supreme Court has said the opposite: when a party has been deprived of "the most basic tenets of due process, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86-87 (1988) (quotation omitted). In *Texas Keystone*, for example, this Court did not ask whether the party denied due process would have prevailed on the merits after responding. Instead, it vacated and remanded with instructions for the district court "to allow Texas Keystone a reasonable period to respond to the Motion to Quash" and to then adjudicate the matter anew. 694 F.3d at 556.

Likewise, the other decisions recognizing the need for adversarial testing in enforcement or quashal proceedings acknowledged no futility exception. *See Clarke*, 573 U.S. at 253-54; *Okla. Press*, 327 U.S. at 195; *Sandsend*, 878 F.2d at 881-82. A full "adversary proceeding," no matter the opposition's chance of ultimate success, is the "only" lawful path to enforcement. *Donaldson*, 400 U.S. at 525.

Nor can harmless-error review on appeal absolve any such due process deprivation, much less support the proffered futility exception. The denial of the right to be heard in violation of due process "is never harmless error." *Republic Nat'l Bank of Dallas v. Crippen*, 224 F.2d 565, 566 (5th Cir. 1955); *see Council of Federated Orgs. v. Mize*, 339 F.2d 898, 900-01 (5th Cir. 1964); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022). Thus, appellate and district courts alike cannot overlook the deprivation of the right to be heard on futility grounds.

In taking the contrary view, the District Court relied primarily on *United States v. Rand*, 924 F.3d 140, 144-45 (5th Cir. 2019) (per curiam). ROA.157. That reliance was misplaced. In *Rand*, the government moved for an order directing the Bureau of Prisons to turn over funds in an inmate's trust account as payment toward a restitution debt. 924 F.3d

at 142. "Three days later and before it received a response" from the inmate, the district court granted the turnover order. *Id.* On appeal, the inmate argued that the "three-day turnaround time between the government filing its turnover request and the district court granting it . . . . effectively denied him a chance to reply and thus violated his right to due process." *Id.* at 144. This Court held that the relevant test for "the amount of due process owed to an inmate subject to a restitution-based turnover order" was "whether the response would have affected the outcome of the district court's decision." *Id.* at 144-45.

*Rand* does not control here. This Court expressly limited its decision to the context of a turnover order—where liability for restitution had *already* been determined through an adversarial criminal prosecution and sentencing. *See id.* at 142, 144-45 (noting that the inmate was "subject to an ongoing lien" that arose "upon entry of judgment" in the criminal proceeding). The amount of process due in a particular proceeding differs based on the nature of the proceeding and the interests at stake. *See Mathews*, 424 U.S. at 335. And in the administrative subpoena context, due process requires an "adequate opportunity to present objections." *Okla. Press*, 327 U.S. at 195.

**2. RIH's response would not have been futile.**

In any event, the record and the nationwide litigation over these subpoenas belie any notion of futility. RIH's successful motion to quash in the District of Rhode Island demonstrates that its arguments had merit. ROA.292-97. And every district court to adjudicate the validity of these subpoenas after hearing from both sides has quashed or narrowed them. *See supra* at 9-10 & nn.3-4. Almost every court to consider the issue has held that the Department issued the subpoena for an improper purpose, amounting to an abuse of process. *See id.*

RIH also would have raised meritorious arguments about the subpoena's overbreadth and undue burden. At minimum, RIH could have shown that the subpoena was overbroad and unduly burdensome in demanding minor patients' personally identifiable information and that anonymized records would have satisfied the Department's stated needs. Indeed, at the Rhode Island hearing, the Department conceded precisely that point, agreeing that it would accept anonymized documents from RIH. ROA.448-49, 471-72. That concession—made only after adversarial testing in another court—confirms that the enforcement order requiring production of patient-identifying information in full was

broader than necessary. Had the District Court afforded RIH the opportunity to respond, anonymization could have been litigated before enforcement, not after.

The record also shows that RIH's opposition would not have been futile on the venue issue. The Department's opposition to RIH's stay motion added a new *ex parte* declaration to justify venue, and the District Court denied the stay only after relying on that declaration. ROA.140, 159 & n.8. This *post hoc* activity shows that the initial petition and supporting declaration filed with it lacked sufficient support for venue, and RIH's opposition would have exposed that deficiency.

If permitted to litigate venue before the District Court, RIH could have advanced a substantial argument based on even the Department's proffer about its declaration. The Department described the declaration as showing that "substantial operational and decision-making control of the investigation" is "being exercised at the U.S. Attorney's Office in the Northern District of Texas" and that "several subjects and potential targets of the investigation" are located there. ROA.140. Yet for an admittedly "nationwide" investigation like this, *id.*, where "its subject matter is not located in any particular place," venue lies where the "hub"

of the investigation is located—that is, the District of Columbia, not the Northern District of Texas. *NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1202 (D.C. Cir. 2006); *see FEC v. Comm. to Elect Lyndon La Rouche*, 613 F.2d 849, 857 (D.C. Cir. 1979); *see also FTC v. Jim Walter Corp.*, 651 F.2d 251, 254 (5th Cir. Unit A July 1981), *abrogated on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982) (considering where the agency "managed [its] investigation").[11] RIH could also have sought at least partial access to the sealed declaration. While the restricted nature of the record on venue clouds analysis of RIH's ultimate likelihood of success on this issue, neither can it be said that RIH's venue arguments would necessarily have been futile. *See Jim Walter*, 651 F.2d at 254 (assessing whether "suspect practices are investigated to any substantial degree" in a particular district and whether "the choice of forum is otherwise unreasonable").

---

[11] Moreover, it is unclear whether the declaration describes any investigative activities that occurred before the Department filed its petition, or whether the Department instead expanded its investigation in the Northern District of Texas after the fact. *See Moler v. Wells*, 18 F.4th 162, 166 n.7 (5th Cir. 2021) ("[V]enue is determined at the outset of litigation and is not affected by subsequent events." (quotation and brackets omitted)).

In short, given a meaningful chance to respond, RIH would have challenged venue, corrected material inaccuracies, and presented substantive arguments against the validity of the subpoena that have prevailed in every other district court to consider them. No futility exception could apply here.

**3. The ability to seek reconsideration does not cure the due process violation.**

The option to seek reconsideration also does not cure the defect. The District Court's stay denial order reasoned that "a motion for reconsideration would be the proper mechanism to challenge an ex parte order." ROA.158. The District Court relied on cases involving discovery orders under 28 U.S.C. § 1782, which permits courts to order discovery for use in foreign proceedings. This reasoning is wrong.

An *ex parte* order granting a § 1782 application does not create a due process problem because it is interlocutory, and the affected party may immediately obtain full adversarial review before it becomes final. *See Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 55 F.4th 469, 473-76 (5th Cir. 2022). The enforcement order here, by contrast, was final upon entry and subject to a demanding standard of review upon reconsideration.

Pursuing reconsideration under Federal Rule of Civil Procedure 59(e) would have required RIH to "clearly establish" a "manifest error of law or fact," a far higher burden than is required of oppositions to enforcement petitions reviewed de novo. *Farmers Tex. Cnty. Mut. Ins. Co. v. 1st Choice Accident & Inj., L.L.C.*, 168 F.4th 271, 276 (5th Cir. 2026) (quotation omitted). Reconsideration under that demanding standard does not provide an adequate substitute for an opportunity to respond *before* enforcement. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). A *post hoc* opportunity for reconsideration of a final order—under a substantially heightened standard, and before the very court that already ruled without hearing from the opposing party—is not that.

## II. The District Court unlawfully enjoined RIH from seeking relief in other courts.

The District Court's follow-on injunction—expansively barring RIH from litigating related issues in other courts or cooperating with other entities that do so—is as defective as its enforcement order. ROA.338. RIH did not engage in conduct warranting any sanction, much less the

extreme prohibitions imposed by the injunction. Injunctions against court filings must be narrowly tailored and justified to avoid infringing the First Amendment right to petition for the redress of grievances. The District Court did not heed those constraints. Instead, it breached multiple First Amendment protections, all while repeating its error of failing to give notice and an opportunity to oppose as due process requires.

### A. RIH did not engage in conduct justifying the injunction.

Injunctions against future filings "curtail [a litigant's] future access to the courts," and the First Amendment therefore safeguards against unnecessary or unjustified restrictions. *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 192-93 (5th Cir. 2008) (quotation omitted); *see Klayman v. Porter*, 104 F.4th 298, 309 (D.C. Cir. 2024). Because "[t]he right of access to the courts is neither absolute nor unconditional," a court may use an injunction as "a tool" to ensure that a litigant "does not continue to engage in abusive litigation practices." *Baum*, 513 F.3d at 193 (quotation omitted). Such injunctions, called pre-filing injunctions because they place restrictions on a litigant's ability to file, must be

tailored to "preserv[e] the legitimate rights of litigants." *Id.* at 187 (quotation omitted).

Pre-filing injunctions are reserved for litigants who repeatedly abuse the courts and harass opponents. "Federal courts have the power to enjoin [parties] from future filings" when they "consistently abuse the court system and harass their opponents." *Id.* at 190; *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002) (describing the "power under the All Writs Act to issue narrowly tailored orders enjoining repeatedly vexatious litigants"). This Court considers four factors, among other circumstances, in deciding "whether a pre-filing injunction is warranted to deter future vexatious filings." *Nix v. Major League Baseball*, 62 F.4th 920, 936-37 (5th Cir. 2023). The factors are: (1) "the party's history of litigation, in particular whether he has filed vexatious, harassing, or duplicative lawsuits"; (2) "whether the party had a good faith basis for pursuing the litigation, or simply intended to harass"; (3) "the extent of the burden on the courts and other parties resulting from the party's filings"; and (4) "the adequacy of alternative sanctions." *Id.* (quotation omitted).

The District Court did not cite or analyze those factors. But under the appropriate analysis, the injunction has no sound basis. The District Court's reasoning for the injunction was largely forward-looking, appearing to speculate about potentially obstructive filings RIH might pursue in the future. ROA.338. That speculation was misplaced: "the test for pre-filing injunctions does not focus on whether the plaintiff *will* file a vexatious suit but whether he *has* filed such suits." *Bechuck v. Home Depot U.S.A., Inc.*, 814 F.3d 287, 292 (5th Cir. 2016). Where a litigant has "not displayed a pattern of past vexatious behavior," an injunction against future filings is unwarranted. *Id.* The District Court lacked an adequate factual basis to curtail RIH's future filings prospectively. RIH had engaged in no inappropriate conduct—much less vexatious or harassing conduct—before the injunction.

Indeed, the District Court's order identified no history of abusive litigation tactics. It faulted RIH for (1) not complying with the Department's subpoena in full before the Department sought enforcement; (2) seeking "to circumvent the authority of [the District] Court and the Fifth Circuit"; and (3) "attempt[ing] to collaterally attack the Enforcement Order." ROA.336-37. None of those rationales support

the injunction. RIH did not circumvent any court's authority, and neither pre-enforcement noncompliance nor the post-enforcement motion to quash, under the circumstances here, is sanctionable conduct.

Before judicial enforcement, RIH had no obligation to comply with the subpoena. Again, an administrative subpoena is not self-executing. *See supra* at 28. It becomes an order that requires compliance only when a court validly enforces it. RIH therefore had no obligation to comply—or to explain a "reason . . . for its noncompliance"—before judicial enforcement (especially when the District Court never gave it an opportunity to justify its conduct). ROA.336. In any event, RIH did partially comply and continued preparing for further production at a pace the Department never suggested was problematic. ROA.97; *see* ROA.38 ("In early conversations with counsel for RIH, the Government communicated that it would be willing to receive documents responsive to the subpoena past the return date but that it did not expect to extend that grace period beyond reason.").

Moreover, document production takes time. *See* ROA.119, 339. It often requires developing search terms—an effort undertaken by RIH but ignored by the Department for months, *see* ROA.97, 122-23; running

searches across multiple custodians and data sources; collecting and processing the results; conducting a privilege review to protect attorney-client communications and work product; logging privileged documents; performing quality-control checks; and staging the production in the format the requesting party requires. *See* ROA.119.

Each step requires coordination among counsel, information-technology professionals, and custodians. Many custodians here are practicing physicians whose time spent identifying and reviewing documents must be balanced against patient care needs. *Id.* The volume of potentially responsive material, number of custodians, and complexity of the investigation all affect the timeline. It is unreasonable to expect rapid compliance with a subpoena demanding this volume of material and of this level of sensitivity.

RIH therefore acted well within its rights by negotiating the production's scope and timing with the Department and taking time to prepare for reasonable compliance. Nothing about that pre-enforcement conduct was sanctionable. *See* 18 U.S.C. § 3486(c) ("Any failure to obey *the order of the court* may be punished by the court as a contempt thereof." (emphasis added)).

Nor did RIH engage in sanctionable conduct after enforcement. The District Court's failure to provide notice and an opportunity to be heard made the enforcement order void. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270-71 (2010). Void judgments may be challenged directly on appeal and collaterally through an independent action. *See* Fed. R. Civ. P. 60(b)(4), (d)(1); 18 MOORE'S FEDERAL PRACTICE § 130.04 (3d ed. 1997) ("Void judgments are subject to both direct and collateral attack."). Faced with an impossibly short two-week compliance window, RIH pursued two avenues: it appealed the enforcement order and joined the ongoing litigation in the District of Rhode Island. Responding to a denial of due process through a permissible collateral challenge is not improper at all, let alone to the degree that would warrant a pre-filing injunction. Under the circumstances, the collateral challenge was the proper way for RIH to preserve its rights and protect the minor patients in its care. *Cf. Newby*, 302 F.3d at 303 ("The advocate is duty-bound to protect his client's interests, and his choices of venue and timing belong to him.").

Each relevant factor weighs against the injunction. RIH engaged in no misconduct and simply litigated in good faith (factors 1 and 2). *See*

*Nix*, 62 F.4th at 936. Allowing other courts to assess whether a party may proceed before them, and then to consider a party's side of the dispute for the first time, imposes no meaningful burden on those courts or other parties (factor 3). *See id.* The fourth factor—"the adequacy of alternative sanctions"—also weighs against the injunction. *Id.* at 937 (quotation omitted). The District Court's principal concern was preserving RIH's documents, *see* ROA.337, and it addressed that concern by ordering *in camera* production, which RIH has complied with. ROA.337-40; *see supra* at 22 n.10. The injunction served no additional preservation purpose. It was therefore both unfounded and unnecessary.

Rather than examining these factors, the District Court relied on generalized comity concerns. *See* ROA.338. It stated that its injunction was meant to "avoid the waste of duplication[,] rulings which may trench upon the authority of sister courts, and piecemeal resolution of issues that call for a uniform result," misquoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818-20 (1976). ROA.338 (ellipses omitted).[12]

[12] The quoted language does not appear in *Colorado River*. The language originates from this Court's decision in *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985), which in turn

Neither *Colorado River* nor the comity principle attributed to it support an injunction of this kind. *Colorado River* addresses when a federal court may decline to exercise its own jurisdiction in deference to a concurrent state-court proceeding; it says nothing about barring a party from seeking relief elsewhere. 424 U.S. at 817-19. And even for that lesser step, *Colorado River* emphasized the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them" and cautioned that "[o]nly the clearest of justifications will warrant dismissal." *Id.* at 817, 819. Nothing in that framework authorizes a total bar on access to other tribunals solely to protect one court's exclusive say over a matter.

Indeed, this Court has emphasized that other courts "are capable of taking appropriate action on their own" if a litigant improperly comes before them. *Baum*, 513 F.3d at 192 (quotation omitted). The proceedings in the District of Rhode Island illustrate the point: that court considered whether RIH could proceed and held that it could, specifically finding that RIH "should not be precluded from litigating" before it

---

cited *Colorado River* as an example of decisions that reflect principles of comity between federal courts. *Id.* (citing *Colorado River*, 424 U.S. at 818-20).

because RIH "was deprived of any opportunity to argue the propriety of the subpoena" before the subpoena was enforced. ROA.291. Preventing other courts from making that case-specific determination would undermine, not promote, comity.

**B. The injunction is unduly overbroad.**

Even if the injunction had a legitimate basis, it would be excessive in scope. It extends to nearly every court nationwide, with only three exceptions, and it absolutely prohibits filing rather than merely requiring permission.

The District Court's injunction is far broader and more severe than nearly any this Court has approved. It unduly infringes RIH's access to the courts. *See Baum*, 513 F.3d at 191 (considering whether the injunction was "too broad and not tailored so as to protect the legitimate rights of litigants" (quotation omitted)). Both as to its geographic reach and the conduct it bars, the injunction is excessively broad.

In *Baum v. Blue Moon Ventures, LLC*, this Court considered a litigant who posted fake notices of federal tax liens, misrepresented himself as an attorney, waged what the district court called "guerilla warfare through litigation," and "continued in [his] abusive litigation

practices" despite an existing pre-filing injunction. *Id.* at 184-86 (quotation omitted). Even there, the Court held that "the district court abused its discretion in extending the pre-filing injunction to filings in state courts, state agencies, and this Court," because "those courts or agencies are capable of taking appropriate action on their own." *Id.* at 192 (quotation and brackets omitted). The Court allowed the injunction only to the extent that it barred filing "in federal bankruptcy courts, federal district courts, and federal agencies in the state of Texas without the express written permission" of the district court judge. *Id.* The order here does what *Baum* counsels against and more: it reaches every type of court nationwide except the District Court, this Court, and the Supreme Court. The circumstances here do not justify that expansive reach.

Only *Harrelson v. United States*, 613 F.2d 114 (5th Cir. 1980) (per curiam), approaches this injunction's severity. There, this Court approved an injunction against "any future litigation on any cause of action arising from the fact situation at issue." *Id.* at 116. Unlike most pre-filing injunctions this Court has approved, that injunction "did not invite the plaintiff to seek leave of the court to file suit." *Newby*, 302 F.3d at 302. Yet *Harrelson* explained that absolute pre-filing injunctions of

that sort are "generally unnecessary, as res judicata and collateral estoppel are usually more than adequate to protect defendants against repetitious litigation." 613 F.2d at 116. The *Harrelson* Court approved the extreme injunction only because "the plaintiff ha[d] forced various defendants in and out of court for almost five years" and had "a full opportunity to present and litigate his claims." *Id.* RIH had no such opportunity until it intervened in the District of Rhode Island. That contrast confirms that no pre-filing injunction is warranted here, least of all an absolute injunction with no mechanism to seek leave to file.

### C. The injunction is impermissibly vague.

Just as fundamentally, the injunction leaves RIH to guess at what conduct it prohibits. Rule 65 requires every injunction to "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(B), (C). Rule 65's "specificity provisions . . . are no mere technical requirements"; they serve "to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414

U.S. 473, 476 (1974) (per curiam); *see Int'l Longshoremen's Ass'n, Loc. 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967).

This Court applies that specificity requirement through a "drafting standard": "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (per curiam) (quotation omitted). This rule serves "the elementary due process requirement of notice," and it requires vacatur of vague injunctions. *Id.* at 212 (quotation omitted). In *Scott v. Schedler*, for instance, this Court vacated an injunction directing a state official to "maintain in force and effect his policies, procedures, and directives" because the order "refer[red] generally to the defendant's policies without defining what those policies are or how they can be identified." *Id.* at 212 (quotation omitted). "An injunction should not contain broad generalities." *Id.* at 213.

The injunction here falls far short of that standard. It bars RIH from "seeking relief . . . related to these proceedings" without defining that scope. ROA.338. Does that mean only challenges to this subpoena,

filings concerning the underlying investigation, or disputes involving the same parties? The order does not say.

The injunction also bars "encouraging others to seek relief" and "cooperat[ing] with others in seeking relief" without defining either term. *Id.* Does "encouraging" include making a public statement? Responding to a third party's questions? Communicating with a party considering intervention or amicus support? The order provides no answers.

Meanwhile, RIH has had to litigate in the First Circuit without knowing whether the order reaches any aspect of its participation there. Because noncompliance with the injunction threatens judicial punishment, "basic fairness requires" that RIH "receive explicit notice of precisely what conduct is outlawed." *Schmidt*, 414 U.S. at 476. The injunction does not provide that notice.

### D. The injunction violates the First Amendment rights of speech and association.

Even beyond the unjustified impediment on RIH's right to petition for the redress of grievances, the injunction also infringes RIH's First Amendment rights of speech and association. By its terms, it reaches far beyond *filing*—it bars RIH from "encouraging others to seek relief" and from "cooperat[ing] with others in seeking relief." ROA.338. The right of

association protects the ability to join with others to pursue common legal objectives. *See NAACP v. Button*, 371 U.S. 415, 428-31 (1963). By restraining RIH from cooperating with or encouraging others who independently seek relief, the order suppresses precisely this kind of protected associational activity.

The injunction is especially problematic because of its vagueness, which has already caused a chilling effect on RIH's speech and associational activities. The Rhode Island Child Advocate independently initiated proceedings to protect minor patients' privacy rights. The Department appealed the resulting quashal order to the First Circuit, where RIH and the Child Advocate are co-appellees. Yet the injunction's undefined prohibition on "encouraging" or "cooperat[ing] with others in seeking relief from any other court" leaves RIH uncertain whether it may fully participate in that appeal or even communicate with the Child Advocate about that appeal. ROA.338. An injunction that chills a party's coordination with co-parties in active appellate proceedings cannot withstand First Amendment scrutiny. *See Button*, 371 U.S. at 433 ("First Amendment freedoms need breathing space to survive."); *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 618-19 (2021) (same).

**E. The District Court breached procedural requirements.**

At a minimum, the injunction must be vacated because the District Court ignored settled procedural requirements in issuing it. The District Court issued the injunction *sua sponte*, without any request from the Department, in reaction to the Rhode Island district court's quashal order. This Court has repeatedly held that "[n]otice and a hearing are required if the district court *sua sponte* imposes a pre-filing injunction." *Baum*, 513 F.3d at 189; *see Qureshi*, 600 F.3d at 526; *IntegraNet Physician Res., Inc. v. Tex. Indep. Providers, LLC*, 945 F.3d 232, 245 (5th Cir. 2019), *overruled on other grounds by Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020) (en banc). Those requirements are "mandatory and constitutionally derived," and "failure to provide notice and conduct a hearing is an abuse of discretion." *Qureshi*, 600 F.3d at 526.

Here, "[t]he record is very clear that the district court entered this injunction without giving any prior notice to [RIH] and without offering [it] any opportunity to oppose the injunction or be heard on its merits." *Id.* The District Court did not issue an order to show cause or otherwise notify RIH that it was considering an injunction restricting filings

elsewhere. It convened an in-person status conference but gave no warning of an injunction. ROA.328. Nor did it mention any intent to enjoin RIH before issuing the order. *See* ROA.567-93. RIH thus had no chance to contest the factual premises of the order or explain why it was overbroad and unnecessary. *See W. Water Mgmt., Inc. v. Brown*, 40 F.3d 105, 109 (5th Cir. 1994); *Williams v. McKeithen*, 939 F.2d 1100, 1105 (5th Cir. 1991).

As with the enforcement order, this procedural violation alone requires vacatur "[r]egardless of the merits of the injunction." *Qureshi*, 600 F.3d at 524, 526 (vacating a *sua sponte* injunction because "the district court entered this injunction without affording . . . prior notice or the opportunity to oppose the order"); *see IntegraNet*, 945 F.3d at 245 (similar); *W. Water Mgmt.*, 40 F.3d at 109 (similar).

## CONCLUSION

For these reasons, this Court should vacate the District Court's enforcement order and reverse the pre-filing injunction.

Dated: August 27, 2026

Respectfully submitted,

*/s/ Eric G. Olshan*
Eric G. Olshan
PA Bar No. 336966
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

Kathryn M. Barber
VA Bar No. 88992
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Erin L. Brown
FL Bar No. 1073695
MCGUIREWOODS LLP
Bank of America Tower
50 North Laura Street,
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

James R. Hornsby
D.C. Bar No. 90028358
MCGUIREWOODS LLP

888 16th Street N.W.
Suite 500
Washington, D.C. 20006
T: (202) 857-2440
F: (202) 828-2960
jhornsby@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which will automatically serve all counsel of record electronically.

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7) because it contains 10,950 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. Rule 32.2.

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font.

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*