**No. 26-10431**

In the

# United States Court of Appeals
# For the Fifth Circuit

IN RE ADMINISTRATIVE SUBPOENA NO. 25-1431-032

UNITED STATES OF AMERICA,

*Petitioner-Appellee,*

*v.*

RHODE ISLAND HOSPITAL,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
Honorable Reed O'Connor, Chief District Judge
Case No. 4:26-mc-00006-O

## RECORD EXCERPTS OF APPELLANT RHODE ISLAND HOSPITAL

Kathryn M. Barber
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Eric G. Olshan
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

*(additional counsel listed on inside cover)*

Erin L. Brown
McGuireWoods LLP
Bank of America Tower
50 North Laura Street,
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

James R. Hornsby
McGuireWoods LLP
888 16th Street N.W.,
Suite 500
Washington, DC 20006
T: (202) 857-2440
F: (202) 828-2960
jhornsby@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

August 27, 2026

# INDEX


| **Document** | **Tab** |
|---|---|
| Docket Sheet, *In re Administrative Subpoena No. 25-1431-032*, No. 4:26-mc-00006 (N.D. Tex.) (ROA.613-618) | **1** |
| Notice of Appeal, Dkt. 36 (July 14, 2026) (ROA.619-621) | **2** |
| Notice of Appeal, Dkt. 6 (May 6, 2026) (ROA.88-90) | **3** |
| Order Entering Injunction, Dkt. 26 (May 18, 2026) (ROA.333-338) | **4** |
| Order Denying Emergency Motion for Stay Pending Appeal, Dkt. 12 (May 10, 2026) (ROA.154-163) | **5** |
| Order Granting Enforcement of Subpoena, Dkt. 2 (April 30, 2026) (ROA.72-73) | **6** |
| Petition to Enforce Administrative Subpoena, Dkt. 1 (April 30, 2026) (ROA.6-17) | **7** |
| Certificate of Service | |

# Tab 1

APPEAL

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:26-mc-00006-O

In Re: Administrative Subpoena 25-1431-032
Assigned to: Chief District Judge Reed O'Connor
Case in other court: United States Court of Appeals 5th Circuit, 26-10431
Cause: Civil Miscellaneous Case

Date Filed: 04/30/2026
Jurisdiction: U.S. Government Plaintiff

**In Re**

**Administrative Subpoena 25-1431-032**

**Petitioner**

**United States of America** represented by

**Patrick Raymond Runkle**
DOJ-Civ
Ealb
PO Box 386
Washington, DC 20044-0386
202-532-4723
Email: patrick.r.runkle@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Ethan Womble-DOJ**
Department of Justice
801 Cherry Street, Suite 1700
Fort Worth, TX 76102
214-287-0162
Email: ethan.womble@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Jordan Campbell**
DOJ-Civ
950 Pennsylvania Ave NW
Room 3611
Washington DC, DC 20530
202-856-1121
Email: jordan.c.campbell@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Ross S Goldstein**
United States Department of Justice
Enforcement and Affirmative Litigation
Branch

PO Box 386
Washington, DC 20044
202-353-4218
Fax: 202-514-8742
Email: ross.goldstein@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**<u>Respondent</u>**

| | | |
|---|---|---|
| **Rhode Island Hospital** | represented by | **Mindy Sauter**<br>McGuirewoods LLP<br>2601 Olive Street<br>Suite 2100<br>Dallas, TX 75201<br>469-372-3916<br>Email: msauter@mcguirewoods.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Admitted/In Good Standing*<br><br>**Eric Olshan**<br>McGuire Woods<br>Tower Two-Sixty<br>260 Forbes Avenue<br>Suite 1800<br>Pittsburgh, PA 15222<br>412-667-6941<br>Fax: 412-667-6050<br>Email: eolshan@mcguirewoods.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted*<br><br>**Kathryn M. Barber**<br>McGuirewoods LLP<br>800 East Canal Street<br>Richmond, VA 23219-3916<br>804-775-1214<br>Email: kbarber@mcguirewoods.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED*<br>*Bar Status: Not Admitted*<br><br>**Robert L Webster**<br>Robert L Webster<br>8350 N Central Expressway, Suite 1900<br>Dallas, TX 75206<br>214-695-3670<br>Email: robert.webster@bobwebsterlaw.com<br>*ATTORNEY TO BE NOTICED* |

*Bar Status: Admitted/In Good Standing*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/30/2026 | 1 | Government's Petition for Enforcement of Administrative Subpoena Pursuant to 18 U.S.C. § 3486(c) filed by United States of America. Filed on behalf of USA, no fee due. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Proposed Order) (jnp) (Entered: 04/30/2026) |
| 04/30/2026 | 2 | ORDER: The Court determines that the government's 1 petition to enforce should be and is hereby GRANTED. (Ordered by Chief District Judge Reed O'Connor on 4/30/2026) (jnp) (Entered: 05/01/2026) |
| 05/01/2026 | | New Case Notes: A filing fee is not due for this case. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (jnp) (Entered: 05/01/2026) |
| 05/06/2026 | 3 | NOTICE of Attorney Appearance by Mindy Sauter on behalf of Rhode Island Hospital. (Filer confirms contact info in ECF is current.). Party Rhode Island Hospital added. (Sauter, Mindy) (Entered: 05/06/2026) |
| 05/06/2026 | 4 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-16425168) filed by Rhode Island Hospital (Attachments: # 1 Proposed Order)Attorney Kathryn M. Barber added to party Rhode Island Hospital(pty:res) (Barber, Kathryn) (Entered: 05/06/2026) |
| 05/06/2026 | 5 | Application for Admission Pro Hac Vice with Certificate of Good Standing (Filing fee $100; Receipt number ATXNDC-16425171) filed by Rhode Island Hospital (Attachments: # 1 Proposed Order)Attorney Eric Olshan added to party Rhode Island Hospital(pty:res) (Olshan, Eric) (Entered: 05/06/2026) |
| 05/06/2026 | 6 | NOTICE OF APPEAL as to 2 Order of Dismissal or Administrative Closure to the Fifth Circuit by Rhode Island Hospital. Filing fee $605, receipt number ATXNDC-16425174. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Sauter, Mindy) (Entered: 05/06/2026) |
| 05/06/2026 | 7 | Emergency MOTION to Stay *Pending Appeal* filed by Rhode Island Hospital with Brief/Memorandum in Support. (Attachments: # 1 Proposed Order) (Sauter, Mindy) Modified docket text on 5/7/2026 (jnp). (Entered: 05/06/2026) |
| 05/06/2026 | 8 | Appendix in Support filed by Rhode Island Hospital re 7 MOTION to Stay *Pending Appeal* (Sauter, Mindy) (Entered: 05/06/2026) |
| 05/07/2026 | 9 | ORDER: The Court ORDERS the government to respond to the Hospital's 7 Motion to Stay no later than 12:00 P.M. on May 8, 2026. The Court will issue a ruling on the Hospital's Motion as soon as is practicable. (Ordered by Chief District Judge Reed |

| | | |
|---|---|---|
| | | O'Connor on 5/7/2026) (jnp) (Entered: 05/07/2026) |
| 05/08/2026 | 11 | RESPONSE filed by United States of America re: 7 MOTION to Stay *Pending Appeal* (Runkle, Patrick) (Entered: 05/08/2026) |
| 05/10/2026 | 12 | OPINION AND ORDER denying 7 Motion to Stay. See Order for specifics. (Ordered by Chief District Judge Reed O'Connor on 5/10/2026) (chmb) (Entered: 05/10/2026) |
| 05/11/2026 | 13 | NOTICE of *Related Proceedings and Filings in the District of Rhode Island* filed by United States of America (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B) (Runkle, Patrick) (Entered: 05/11/2026) |
| 05/12/2026 | 17 | Ex Parte ORDER denying sealed and/or ex parte motion 16 . (Ordered by Chief District Judge Reed O'Connor on 5/12/2026) (Chief District Judge Reed O'Connor) (Main Document 17 replaced with flattened image on 5/13/2026) (jnp). Modified file date on 5/13/2026 (jnp). (Main Document 17 replaced on 5/14/2026) (saw). (Entered: 05/13/2026) |
| 05/14/2026 | 18 | ORDER: The Court entered an Order (ECF No. 17 ) in response to the Government's Supplemental Emergency Petition to Disclose the Existence of a Grand Jury Investigation (ECF No. 16 ). Having since reviewed that Order, there is no good reason for it to remain sealed. Accordingly, the Clerk is directed to unseal it. (Ordered by Chief District Judge Reed O'Connor on 5/14/2026) (saw) (Entered: 05/14/2026) |
| 05/14/2026 | 19 | NOTICE of Related Case *Proceedings and Filings* filed by United States of America (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s)) (Womble-DOJ, Ethan) (Entered: 05/14/2026) |
| 05/14/2026 | 20 | NOTICE of *District of Rhode Island Memorandum and Order* filed by Rhode Island Hospital (Sauter, Mindy) (Entered: 05/14/2026) |
| 05/14/2026 | 21 | Appendix in Support filed by Rhode Island Hospital re 20 Notice (Other) (Sauter, Mindy) (Entered: 05/14/2026) |
| 05/15/2026 | 22 | ORDER: The Court sets an in-person hearing for Monday, May 18, 2026, at 2:00 P.M. for a status conference. The hearing will convene in the Second Floor Courtroom, 501 W. 10th Street, Fort Worth, Texas. Counsel for all Parties are ORDERED to appear at the hearing set above. (Ordered by Chief District Judge Reed O'Connor on 5/15/2026) (jnp) (Entered: 05/15/2026) |
| 05/16/2026 | 23 | NOTICE of Attorney Appearance by Robert L Webster on behalf of Rhode Island Hospital. (Filer confirms contact info in ECF is current.) (Webster, Robert) (Entered: 05/16/2026) |
| 05/18/2026 | 24 | NOTICE of Attorney Appearance by Ross S Goldstein on behalf of United States of America. (Filer confirms contact info in ECF is current.) (Goldstein, Ross) (Entered: 05/18/2026) |
| 05/18/2026 | 25 | NOTICE of Attorney Appearance by Jordan Campbell on behalf of United States of America. (Filer confirms contact info in ECF is current.) (Campbell, Jordan) (Entered: 05/18/2026) |
| 05/18/2026 | 26 | ORDER: IT IS THEREFORE ORDERED that RIH submit to this Court all materials that it would have turned over to the Government in compliance with this Court's Enforcement Order to be secured and held in camera, inaccessible to the Government for the pendency of the appeals. RIH shall submit these materials in the form of USB flash drives or another similar medium as they become segregated. The first of these |

| | | |
|---|---|---|
| | | productions is due by May 19, 2026 at 11:59 P.M CT. IT IS FURTHER ORDERED that RIH is entitled to seek reconsideration or file any other motion in this Court and to seek relief before the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court but not in front of any other court. RIH is hereby ENJOINED from seeking relief, encouraging others to seek relief, or cooperate with others in seeking relief from any other court related to these proceedings, and from aiding and abetting others or encouraging others from seeking relief from any other court but those identified above. (Ordered by Chief District Judge Reed O'Connor on 5/18/2026) (jnp) (Entered: 05/18/2026) |
| 05/18/2026 | 27 | ELECTRONIC Minute Entry for proceedings held before Chief District Judge Reed O'Connor: Status Conference held on 5/18/2026. Attorney Appearances: Plaintiff - Ethan Womble, Jordan Campbell, Ross Goldstein; Defense - Eric Olshan, Robert Webster. (Court Reporter: Zoie Williams) (No exhibits) Time in Court - :32. (chmb) (Entered: 05/18/2026) |
| 05/18/2026 | 28 | ELECTRONIC ORDER granting 4 Application for Admission Pro Hac Vice of Kathryn M. Barber. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Chief District Judge Reed O'Connor on 5/18/2026) (chmb) (Entered: 05/18/2026) |
| 05/18/2026 | 29 | ELECTRONIC ORDER granting 5 Application for Admission Pro Hac Vice of Eric G. Olshan. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Chief District Judge Reed O'Connor on 5/18/2026) (chmb) (Entered: 05/18/2026) |
| 05/19/2026 | 30 | NOTICE of *Productions* filed by Rhode Island Hospital (Sauter, Mindy) (Entered: 05/19/2026) |
| 05/19/2026 | 31 | Appendix in Support filed by Rhode Island Hospital re 30 Notice (Other) (Sauter, Mindy) (Entered: 05/19/2026) |
| 05/19/2026 | 32 | NOTICE: The Court issues this Notice of Manual filing of electronic documents by Counsel for Rhode Island Hospital. The electronically stored documents will be secured in the Clerk of Court's safe only accessible by Court authorization. (Ordered by Chief District Judge Reed O'Connor on 5/19/2026) (chmb) (Entered: 05/19/2026) |
| 05/20/2026 | 33 | USCA Case Number 26-10431 in United States Court of Appeals 5th Circuit for 6 Notice of Appeal, filed by Rhode Island Hospital. (tle) (Entered: 05/20/2026) |
| 05/21/2026 | 34 | Transcript Order Form: transcript requested by Rhode Island Hospital for Status Conference held 5/18/2026 (Court Reporter: Zoie Williams.) Payment method: Private funds - Requester has obtained the estimate from the reporter and has paid or will pay the cost as directed. Reminder: If the transcript is ordered for an appeal, Appellant must also file a copy of the order form with the appeals court. (Olshan, Eric) (Entered: 05/21/2026) |
| 05/27/2026 | 35 | Notice of Filing of Official Electronic Transcript of Status Conference Proceedings held on 5.18.26 before Judge Reed O'Connor. Court Reporter/Transcriber Zoie Williams, Telephone number 817.850.6630. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 |

| | | |
|---|---|---|
| | | U.S.C. § 3509, file a Redaction Request - Transcript within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (39 pages) Redaction Request due 6/17/2026. Redacted Transcript Deadline set for 6/29/2026. Release of Transcript Restriction set for 8/25/2026. (zow) (Entered: 05/27/2026) |
| 05/28/2026 | | Record on Appeal for USCA5 26-10431 (related to 6 appeal): Record consisting of: Sealed or ex parte electronic document number(s): 10,14,15,16 (circuit approval is required for access),.<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (tle) (Entered: 05/28/2026) |
| 06/01/2026 | | Supplemental Record on Appeal for USCA5 26-10431 (related to 6 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript,.<br>**PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (tle) (Entered: 06/01/2026) |
| 07/14/2026 | 36 (p.619) | NOTICE OF APPEAL as to 26 Order Setting Deadline/Hearing, to the Fifth Circuit by Rhode Island Hospital. Filing fee $605, receipt number ATXNDC-16615060. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Sauter, Mindy) (Entered: 07/14/2026) |

# Tab 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032 | Civil Action No. 4:26-MC-0006-O |

**NOTICE OF APPEAL**

Notice is hereby given that Rhode Island Hospital appeals to the United States Court of Appeals for the Fifth Circuit from the Order entered in this action on May 18, 2026 (ECF No. 26).

Dated: July 14, 2026

Respectfully submitted,

*/s/ Mindy M. Sauter*
Mindy M. Sauter
Texas Bar No. 24033114
MCGUIREWOODS LLP
2601 Olive Street
Suite 2100
Dallas, Texas 75201
T: (469) 372-3916
F: (214) 273-7470
msauter@mcguirewoods.com

Eric G. Olshan (*Pro Hac Vice*)
MCGUIREWOODS LLP
Tower Two-Sixty, 260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-6000
F: (412) 667-6050
eolshan@mcguirewoods.com

Kathryn M. Barber (*Pro Hac Vice*)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219

T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

Robert L. Webster
Texas Bar No. 21053375
8350 N. Central Expressway
Suite 1900
Dallas, TX 75206
T: (214) 695-3670
robert.webster@bobwebsterlaw.com

*Attorneys for Rhode Island Hospital*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Appeal was filed electronically with the clerk of court via ECF, which will provide electronic service on all counsel of record.

Dated: July 14, 2026

*/s/ Mindy M. Sauter*_____
Mindy M. Sauter

# Tab 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032 | Civil Action No. 4:26-MC-0006-O |

# NOTICE OF APPEAL

Notice is hereby given that Rhode Island Hospital appeals to the United States Court of Appeals for the Fifth Circuit from the Order entered in this action on April 30, 2026 (ECF No. 2).

Dated: May 6, 2026

Respectfully submitted,

*<u>/s/ Mindy M. Sauter</u>*______
Mindy M. Sauter
Texas Bar No. 24033114
MCGUIREWOODS LLP
2601 Olive Street
Suite 2100
Dallas, Texas 75201
T: (469) 372-3916
F: (214) 273-7470
msauter@mcguirewoods.com

Eric G. Olshan (*Pro Hac Vice* pending)
MCGUIREWOODS LLP
Tower Two-Sixty, 260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-6000
F: (412) 667-6050
eolshan@mcguirewoods.com

Kathryn M. Barber (*Pro Hac Vice* pending)
MCGUIREWOODS LLP
800 East Canal Street
Richmond, VA 23219

T: (804) 775-1227
F: (804) 698-2227
kbarber@mcguirewoods.com

*Attorneys for Rhode Island Hospital*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Notice of Appeal was filed electronically with the clerk of court via ECF, which will provide electronic service on all counsel of record.

Dated: May 6, 2026

*/s/ Mindy M. Sauter*_____
Mindy M. Sauter

# Tab 4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032** | § § § § § § § § | **Civil Action No. 4:26-MC-00006-O** |

**ORDER**

In the Northern District of Texas, Fort Worth division the Department of Justice is carrying on a nationwide investigation into potential violations of the Federal Food, Drug, and Cosmetic Act ("FDCA").[1] On July 9, 2025, as part of that nationwide investigation, the Department of Justice served an administrative subpoena on Rhode Island Hospital ("RIH"), with a return date of August 7. The Government issued the subpoena pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), 18 U.S.C. § 3486, to "investigate Federal health care offenses."[2]

Over the ensuing roughly nine meonths, RIH produced one six-page document. RIH did not otherwise move to quash the subpoena or make any other attempt to explain non-compliance. It did seek the Government's views on proposed search terms and received no response. On April 30, 2026, the Government moved to enforce the subpoena in this Court.

After reviewing the petition, the Court concluded that the subpoena had a legitimate inquiry, the records sought were relevant and therefore entered an order enforcing the subpoena (the "Enforcement Order"). RIH filed a notice of appeal and moved this Court to stay its order

[1] *See generally* Hsiao Declaration (Sealed) Ex. 1, ECF No. 10-1 (providing the basis for the jurisdiction and venue in the Fort Worth Division of the Northern District of Texas; due to the sensitive nature of that information, it was provided ex parte).
[2] Pet. Ex. B at 2, ECF No. 1-2.

pending appeal which the Court denied but the Court did stay its ruling, in part, to permit RIH to obtain relief from the Fifth Circuit.[3] RIH then moved the Fifth Circuit to stay this ruling pending its appeal. After considering RIH's motion, the Circuit denied that request and permitted enforcement of the subpoena. *See United States v. Rhode Island Hospital*, No. 26-10431 (5th Cir. May 12, 2026).

On May 4, 2026, the Child Advocate for the State of Rhode Island moved the United States District Court for the District of Rhode Island (the "Rhode Island court") to quash the subpoena that this Court ordered enforced.[4] On May 9, 2026, RIH filed a motion to intervene which the Rhode Island court granted.[5] On May 11, 2026, RIH filed its own motion to quash, arguing that the Enforcement Order could be collaterally attacked in Rhode Island.[6] Two days later, on May 13, the Rhode Island court granted both the Child Advocate's motion and RIH's motion and quashed the subpoena but concluded that the Enforcement Order entered by the undersigned remains in effect.[7] The Government has filed its notice of appeal of that decision to the First Circuit.[8] On May 18, this Court held a hearing related to these proceedings in which counsel for RIH agreed that the Enforcement Order was still in effect.

In short, the undersigned has concluded that the Government acted pursuant to its statutory authority and is engaged in a legitimate investigation. *See United States v. Zadeh*, 820 F.3d 746, 755 (5th Cir. 2016) ("The burden on the government can be fulfilled by a simple affidavit of an

---

[3] *See* Order, ECF No. 12.
[4] Emergency Mot. Quash, ECF No. 1, *In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-00007-MSM-AEM (D.R.I. May 4, 2026) (McElroy, J.) (hereinafter "*In Re: Administrative Subpoena*").
[5] *Id*. at ECF Nos. 17, 20.
[6] *Id.* at ECF No. 28.
[7] *Id.* at 23, ECF No. 44 ("In granting these Motions, this Court quashes the administrative subpoena—the instrument issued by DOJ—not the enforcement order entered by the Texas court.").
[8] *Id.* at ECF No. 46.

agent involved in the investigation." (citation modified)); *see also United States v. Morton Salt Co.*, 338 U.S. 632, 642–43 (1950) ("Administrative agencies have the "power of inquisition . . . analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."). On the other hand, the Rhode Island court has determined that the subpoena should be quashed because it lacks a congressionally authorized purpose and was issued for an improper purpose. *See In Re: Administrative Subpoena* at 14, 18.[9]

That means the undersigned has ordered RIH to turn over documents responsive to the Government's subpoena[10] and, after staying a portion of the Enforcement Order to permit RIH to seek a stay of enforcement, the Fifth Circuit concluded that the Enforcement Order should proceed pending its appeal. Meanwhile, the Rhode Island court has ordered the Government to refrain from acting to obtain responsive documents pursuant to the subpoena. *See In Re: Administrative Subpoena* at 24. Specifically, the Government has been enjoined from "seeking, receiving, using, retaining, or disseminating any patient-identifying information or protected health information produced by RIH in response to" the subpoena. *Id.* The First Circuit has yet to weigh in.

So what is permitted at this point? A close reading of Judge McElroy's order explains the path forward. Judge McElroy believes she did not collaterally attack the Enforcement Order. *See Pratt v. Ventas, Inc.*, 365 F.3d 514, 519 (6th Cir. 2004) ("A 'collateral attack' is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court."); *see also Stafne v. Zilly*, 337 F. Supp. 3d 1079, 1084 (W.D. Wash. 2018) ("The collateral attack doctrine directs that challenges to the orders, decisions, or judgments of a court other than

[9] Notably, the Rhode Island court does not dispute that venue for enforcement of the subpoena was proper in this Court.
[10] Order, ECF No. 2.

through [appeal or reconsideration] are generally improper, and to allow such collateral attacks would seriously undercut the orderly process of law."). The basis for Judge McElroy's belief appears to rest in the remedy she imposed. Her order expressly states that in granting the Motions to Quash she "quashes the administrative subpoena—the instrument issued by DOJ—not the enforcement order entered by the Texas court." *In Re: Administrative Subpoena* at 23. Judge McElroy further specified that the only entity governed by the terms of her order was the Government. *See id.* ("*DOJ* is hereby ENJOINED" (emphasis added)).

The only fair reading then is that Judge McElroy prohibited the DOJ from taking the specified actions related to obtaining documents from RIH but left the Enforcement Order otherwise in effect. This narrow remedy leaves no question that this Court can vindicate the Enforcement Order, so long as the Government does not commit any of the prohibited acts. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, (1991) (stating that courts' implied "powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases'").

To date, RIH has proffered no reason in this case for its noncompliance with the subpoena or the Enforcement Order, beyond noting that the Government provided no search terms. Nor had RIH previously asserted any challenge to the subpoena, prior to the Enforcement Order. Over the course of nearly a year, RIH has produced only one six-page document. The Government has said that RIH had promised on several occasions to provide unobjected to documents in response to the subpoena but ultimately RIH provided none.[11] This non-compliance alone gave the Court pause as to RIH's intentions to comply with the subpoena. But now, RIH has also sought to circumvent

[11] Resp. Mot. Stay 1, ECF 11; Pet. Ex. A (Hsiao Deceleration) 19, ECF No. 1-2.

the authority of this Court and the Fifth Circuit and attempted to collaterally attack the Enforcement Order.[12]

Such flagrant attempts to avoid compliance with lawful orders leads the Court to conclude that it is necessary to hold the materials responsive to the subpoena *in camera* pending the outcome of the appeals. Such a step is necessary to ensure the preservation of the materials subject to the subpoena and the Court's assurance of RIH's compliance should the courts of appeals rule against RIH. *See Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977) (upholding the "inherent authority of a court to enforce its orders by whatever means").

Therefore, in light of the parallel litigation, pending appeals, conflicting court orders, and RIH's refusal to produce responsive documents, the Court finds it necessary and prudent for RIH to turn over all responsive documents compliant with the Court's Enforcement Order to the undersigned. Such documents are to be held *in camera* by this Court, not available to the Government. As in cases where the parties dispute the production of privileged information or in interpleader actions, the Court takes possession of documents or other items to ensure that the parties' rights and obligations are not infringed, facilitates judicial resolution of the matter, and preserves the contested documents in their current form. *See Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 302 (5th Cir. 1978) (holding that the district court's order to deposit the contested property in the court's registry "served to preserve the rights of all parties involved" and "the court's ability to render a meaningful decision on the merits").

**IT IS THEREFORE ORDERED** that RIH submit to this Court all materials that it would have turned over to the Government in compliance with this Court's Enforcement Order to be

[12] *See* RIH's Emergency Mot. Quash 22, ECF No. 28, *In Re: Administrative Subpoena 25-1431-032 to Rhode Island Hospital*, No. 1:26-mc-00007-MSM-AEM (D.R.I. May 4, 2026) (McElroy, J.) (arguing that this Court's Order is "void" and therefore subject to collateral attack).

secured and held *in camera*, inaccessible to the Government for the pendency of the appeals. RIH shall submit these materials in the form of USB flash drives or another similar medium as they become segregated. The first of these productions is due by **May 19, 2026 at 11:59 P.M CT.**

**IT IS FURTHER ORDERED** that RIH is entitled to seek reconsideration or file any other motion in this Court and to seek relief before the United States Court of Appeals for the Fifth Circuit or the United States Supreme Court but not in front of any other court. To "avoid the waste of duplication . . . rulings which may trench upon the authority of sister courts, and . . . piecemeal resolution of issues that call for a uniform result[,]" RIH is hereby **ENJOINED** from seeking relief, encouraging others to seek relief, or cooperate with others in seeking relief from any other court related to these proceedings, and from aiding and abetting others or encouraging others from seeking relief from any other court but those identified above. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 818–20 (1976); *See also* 1 MOORE'S MANUAL—FEDERAL PRACTICE AND PROCEDURE § 10A.43, at 3 (2026) ("[E]ven nonparties may be held in contempt if the nonparty has aided or abetted a party in a concerted violation of the injunction.").

**SO ORDERED** on this **18th day** of **May, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

# Tab 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-MC-00006-O** |

**OPINION & ORDER**

Before the Court are Rhode Island Hospital's Emergency Motion for Stay Pending Appeal (ECF No. 7); and the Government's Response (ECF No. 11). Having considered the Motion, briefing, and applicable law, the Court finds that Rhode Island Hospital's Motion should be, and hereby is, **DENIED**.

## I. BACKGROUND

The Court's recitation of the facts is taken from the parties' briefing. On July 9, 2025, the Department of Justice served an administrative subpoena on Rhode Island Hospital ("RIH") at its principal place of business in Providence, Rhode Island. The Government set a return date of August 7 and requested production at the office of the DOJ's Consumer Protection Branch (now the Enforcement and Affirmative Litigation Branch), which is located in Washington, D.C. The Government issued the subpoena pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"), 18 U.S.C. § 3486, to "investigate Federal health care offenses."[1]

Over the ensuing roughly nine months, RIH produced one six-page document. RIH did not otherwise move to quash the subpoena or make any other attempt to explain non-compliance. It did seek the Government's views on proposed search terms and received no response. On April

[1] Pet. Ex. B at 2, ECF No. 1-2.

30, 2026, the Government moved to enforce the subpoena in this Court. After reviewing the petition, the Court concluded that the subpoena had a legitimate inquiry, the records sought were relevant, and therefore entered an order enforcing the subpoena. RIH filed a notice of appeal and moved this Court to stay its order pending appeal.

## II. LEGAL STANDARD

A stay pending appeal is "extraordinary relief" for which the movant bears a "heavy burden." *Plaquemines Par. v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023). In determining whether RIH has met its burden, the Court considers "four factors": "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies.'" *United States v. Texas*, 97 F.4th 268, 274 (5th Cir. 2024) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors of the traditional standard are the most critical." *Id.* (quoting *Nken*, 556 U.S. at 434). But "[a] stay pending appeal 'is not a matter of right, even if irreparable injury might otherwise result.'" *Id.* (quoting *Nken*, 556 U.S. at 427).

The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433–34. Importantly, "[a] stay is not a matter of right, even if irreparable injury might otherwise result," but "[i]t is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Plaquemines Parish*, 84 F.4th at 373 (quoting *Nken*, 556 U.S. at 433). A court must thoughtfully consider the factors because "'a stay is an intrusion into the ordinary processes of administration and judicial review.'" *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 427).

## III. ANALYSIS

Applying the four well-established factors here and considering the arguments raised by the parties, the Court determines that RIH has not met its burden to show that the Court should "exercise . . . judicial discretion" to stay the compliance with the subpoena pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

### A. Strong Likelihood of Success on the Merits

To begin, the Court considers whether RIH has made a strong showing that it is likely to succeed on the merits. *U.S. Navy Seals 1-26 v. Biden*, 27 F. 4th 336, 349–50 (5th Cir. 2022) (citing *Nken*, 556 U.S. at 426). Having reviewed RIH's arguments as to this factor, the Court concludes it has not made a strong showing of likely success on the merits.

First, RIH argues that the Court violated RIH's due process rights by issuing its Order without allowing RIH to be heard.[2] In support, RIH cites to *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board* for the proposition that "by ruling on a motion to quash an administrative subpoena before receiving a response, the district court robb[ed] the subpoena's issuer of its right to be heard."[3] But *Sandsend*, like nearly all of RIH's cited authority, involves a motion to quash a subpoena, not enforcement of one.

There is a reason the two are treated differently. As the Court in *Sandsend* recognized when reviewing an administrative subpoena—in this case, one that was issued ten months ago—"the court plays a strictly limited role." 878 F.2d at 879 ("The court's inquiry is limited to two questions: (1) whether the investigation is for a proper statutory purpose and (2) whether the documents the agency seeks are relevant to the investigation."). Moreover, the Fifth Circuit "has consistently

[2] Mot. Stay 4, ECF No. 7.
[3] Mot. Stay 4, ECF No. 7 (quoting *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, 878 F.2d 875, 881 (5th Cir. 1989) (internal quotation marks omitted)).

recognized the summary nature of administrative subpoena enforcement proceedings." *Burlington N. R.R. v. Office of Inspector Gen.,* 983 F.2d 631, 637 (5th Cir.1993); *see also EEOC v. Bay Shipbuilding Corp.*, 668 F.2d 304, 310 (7th Cir. 1981) ("The great discretion afforded by motion rules is appropriate when regulating the form of opposition to subpoena enforcement because . . . subpoena enforcement is meant to be a summary proceeding.").

Generally, a "district court does not abuse its discretion or violate a non-movant's due process rights by deciding a motion to dismiss before the non-movant has responded if 'the response would [not] have affected the outcome of the decision.'" *Vodicka v. Ermatinger*, No. 3:19-CV-0056-B, 2022 WL 992600, at *10 (N.D. Tex. Apr. 1, 2022) (alteration adopted) (quoting *United States v. Rand*, 924 F.3d 140, 144–45 (5th Cir. 2019)). So too here.

The Court need not wait for a response if it reasonably believes that the response will not change the outcome. *See Vodicka*, 2022 WL 992600 at *10. In such a circumstance, the "central question" is "whether the response would have affected the outcome of the district court's decision." *Rand*, 924 F.3d at 145. In enforcing the instant subpoena, the Court considered RIH's long-term non-compliance with the subpoena and the arguments in opposition that have been made to other district courts.[4] In the face of those considerations, it is plain that the Government's inquiry is legitimate, the records sought are relevant, and save for one document, RIH has not complied. *Sandsend*, 878 F.2d at 879. Over the previous ten months, RIH has proffered no reason for its non-compliance with the subpoena, nor had it previously asserted any legal justification for the non-compliance. Indeed, the Government's evidence indicates that RIH's counsel represented several times that it would produce responsive documents.[5] But to date, RIH has produced only one six-

[4] Pet. 12, n.4, ECF No. 1.
[5] Pet. Ex. A at 19, ECF No. 1-1.

page document over the course of nearly a year.[6] It defies belief that one six-page document is the only non-objectionable responsive document. Such flagrant non-compliance and lack of legal challenge to the subpoena prior to the Government's enforcement petition left the Court to conclude that if RIH had a basis for non-compliance, then it would have asserted it. Even now, RIH has not sought reconsideration of the enforcement order to explain why it refused to comply beyond the one six-page document, nor has it indicated that it will end its seemingly intentional non-compliance and produce responsive non-objectionable documents.

Moreover, the process due in ex parte subpoena proceedings is instructive here. Courts have indicated that the proper due process protection to test the validity of a subpoena is a motion to quash or modify. *See In re Application of Eurasian Bank Joint Stock Co. for Expedited Jud. Assistance Pursuant to 28 U.S.C. § 1782*, No. 3:15-mc-106-L-BN, 2015 WL 6438256, at *1 (N.D. Tex. Oct. 21, 2015) ( Noting that "once the subpoenas are served, [the respondent] will have the opportunity to move to quash or modify the subpoenas under Federal Rule of Civil Procedure 45," so that "[t]he respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." (cleaned up)). But even if a party were denied the opportunity to litigate the validity of a subpoena, a motion for reconsideration would be the proper mechanism to challenge an ex parte order. *In re Ord. Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proc.*, No. CV 4:23-MC-96, 2025 WL 714374, at *3 (E.D. Tex. Mar. 5, 2025) (noting that "a motion for reconsideration may seem like a strange motion at this juncture because this is Respondents' first pleading on this issue. However, because the Court issued its Order on an ex parte basis, a motion

[6] *Id.*

for reconsideration is the proper procedural mechanism at this stage”). Again, RIH has neither moved to quash, to reconsider, nor produced responsive non-objectionable documents.

After ten months, RIH has made no showing as to why it is legally justified in withholding compliance, particularly given the “minimal” requirements for enforcement of a subpoena. *Burlington N R. Co.,* 983 F.2d at 637–38. Instead, all of the evidence indicates that RIH intends to delay and frustrate compliance, which demonstrates how RIH’s opposition would not have changed the outcome of the Court’s ruling. Accordingly, the Court finds that RIH fails to demonstrate a likelihood of success on its claim that it lacked the necessary due process.

Second, RIH argues that this Court is not the proper venue to adjudicate the Government’s petition.[7] Title 18 U.S.C. § 3486(c) permits enforcement of an administrative subpoena in “any court of the United States within the jurisdiction of which the investigation is carried on or of which the subpoenaed person is an inhabitant, or in which he carries on business or may be found.” According to the Declaration from the Acting Director of the Enforcement and Affirmative Litigation Branch there is substantial operational and decision-making control of the investigation being exercised at the U.S. Attorney’s Office in the Northern District of Texas, along with several subjects and potential targets of the investigation located therein.[8] The record therefore reflects that the investigation is being carried on in the Northern District of Texas and the Government’s enforcement petition was properly brought in this Court. Accordingly, RIH has failed to show a likelihood of success on the merits as to its venue challenge.

[7] Mot. Stay 6, ECF No. 7.

[8] *See generally* Hsiao Declaration (Sealed) Ex. 1, ECF No. 10-1. The Government has presented the Court with ex parte information that supports its choice to enforce the subpoena in this Court and due to the sensitive nature of that information, it was provided ex parte. *See In re Grand Jury Subpoena*, 419 F.3d 329 (5th Cir. 2005) (finding no abuse of discretion where the district court relied on the government’s ex parte submission in reaching its decision).

Finally, RIH argues that the subpoena is "unlawful" because it claims that the Government is proceeding on a theory that "'off label use of puberty blockers and cross sex hormones' is 'a violation of the FDCA.'"[9] But the Government's Petition does not advance this argument.[10] Regardless, a subpoena recipient "may not avoid an administrative subpoena on the ground that it has a valid defense to a potential subsequent lawsuit" and cannot raise "factual challenges based on a lack of statutory 'coverage'" of a recipient's activities, as RIH attempts to do here. *EEOC v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076–77 (9th Cir. 2001); *Donovan v. Shaw*, 668 F.2d 985, 989 (8th Cir. 1982) ("[A] subpoena enforcement proceeding is not the proper forum in which to litigate the question of coverage under a particular federal statute."); *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5 (1st Cir. 1996) ("[Q]uestions concerning the scope of an agency's substantive authority to regulate are not to be resolved in subpoena enforcement proceedings.").

RIH also argues that the subpoena is overly broad and burdensome.[11] The Government responds that the subpoena seeks information relevant to an FDCA investigation as it relates to RIH itself and as it relates to the conduct of manufacturers and distributors of drugs that may have violated the FDCA.[12] As it relates to RIH, it presents no factual record in connection with its Motion to Stay as to the merits of the Government's investigation such that the Court could determine in these proceedings the potential scope of RIH's activities. Therefore, the Court has no basis to conclude RIH carried its burden to show it may succeed on the merits of this claim. As it relates to manufacturers and distributors, such entities also can be convicted of FDCA violations.

---

[9] Mot. Stay 8, ECF No. 7.
[10] Pet. 3–4, ECF No. 1 (explaining that when a drug is distributed for an intended use not approved by FDA—a potential FDCA violation—and an insurance plan pays for that drug, the FDCA violation becomes a "federal health care offense" under 18 U.S.C. § 24 and therefore may be investigated through a HIPAA subpoena).
[11] Mot. Stay 11, ECF No. 7.
[12] Resp. 11, ECF No. 11.

*See e.g.,* 21 C.F.R. § 201.128 (intent may "be shown by labeling claims, advertising matter," "oral or written statements," and "circumstances in which the [drug] is, with the knowledge of" certain persons, "offered or used for a purpose for which it is neither labeled nor advertised"). RIH has not overcome the Government's representation in the initial Hsiao Declaration that details precisely how and why each category of information the subpoena seeks is relevant and necessary to further the Government's investigation. Nor has RIH sought reconsideration of the order to present that theory, nor has it included any evidence supporting it as a basis to stay enforcement.

Accordingly, the Court finds that RIH, who bears the burden, fails to demonstrate a likelihood of success on the merits, let alone the "strong" showing required for such "extraordinary relief" as a stay pending appeal. Therefore, this factor weighs heavily against granting a stay.

**B. Irreparable Harm**

Turning to the second stay factor, the Court concludes that Defendants have not shown that they will suffer irreparable harm absent a stay pending appeal. RIH argues that it will suffer irreparable constitutional and monetary injuries without a stay.[13] The Court disagrees.

First, the subpoena requires production of nonprivileged, pre-existing business records of a large, closely regulated healthcare provider. The Court struggles to see how the Government seeing RIH's nonprivileged business records as part of a lawful criminal investigation qualifies as irreparable harm. Moreover, the Court can order a complete return of the documents on any potential remand if RIH is successful on appeal, and the Court can order that no information gleaned from those documents be used in the investigation. Such a remedy is available and would not moot the case. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–15 (1992)

[13] Mot. Stay 12, ECF No. 7.

("[T]his case is not moot because if the summons were improperly issued or enforced a court could order that the IRS' copies of the tapes be either returned or destroyed.").

Second, spending money to comply with the subpoena is not an irreparable harm to RIH because, among many other things, "[t]he burden of complying with a subpoena does not constitute irreparable injury." *Nikon Corp. v. GlobalFoundries U.S., Inc.*, No. 17- MC-80071, 2017 WL 4865549, at *2 (N.D. Cal. Oct. 26, 2017). "In general, the cost to businesses of complying with governmental subpoenas are normal costs of doing business which should be borne by the company." *Hurt v. Dime Sav. Bank*, 151 F.R.D. 30, 31 (E.D.N.Y. 1993).

Finally, RIH argues that disclosure of patient records would irreparably harm its patients and its relationship with its patients.[14] But the "irreparable-harm analysis focuses on the moving party, not the nonmoving party or some third party." *Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Thus, RIH has not shown how *it* would be harmed rather than its patients, who are third parties. In any event, RIH discloses to its patient that their health information may be shared with the Government in response to a subpoena.[15] Such a known, warned of, danger does not rise to the level of irreparable harm in this case. Accordingly, this factor does not weigh in favor of a stay.

**C. Balance of Equities and the Public Interest**

The Court also finds that the remaining two factors—comparative balance of the equities and the public interest—likewise do not justify a stay pending appeal. *See Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("[I]n the context of a stay, assessing the harm to the opposing party and weighing the public interest merge when the Government is the opposing party."). The Government has an "uncontested interest" in the "faithful execution of

[14] Mot. Stay 13, ECF No. 7.
[15] Resp. 15–16, ECF No. 11.

law." *Newsom v. Trump*, 141 F.4th 1032, 1054 (9th Cir. 2025). Indeed, "[t]he government has a compelling interest in identifying illegal activity and in deterring future misconduct," and that interest "outweighs the privacy rights of those whose [medical] records" are sought via subpoena, "particularly in light of the limitation placed on uses of subpoenaed information by § 3486." *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000). Thus, the Court finds that the public interest and balance of the equities weigh against a stay.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that RIH has not met its burden of showing that the circumstances justify an exercise of the Court's discretion to grant a stay pending appeal. Accordingly, the Court **DENIES** RIH's Motion (ECF No. 7). The foregoing notwithstanding, the Court **STAYS** enforcement of the subpoena, except as to responsive non-privileged documents without a valid legal objection, pending RIH's request for a stay before the Fifth Circuit Court of Appeals.[16]

**SO ORDERED** on this **10th day** of **May, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

[16] The Court's carve out is consistent with the standards for discovery and attorney conduct laid out in *Dondi*. *See generally Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988). It is unclear whether RIH seeks to appeal enforcement of the subpoena as to non-privileged responsive documents with no valid legal objections. Regardless, there is no good reason to delay production of those documents.

# Tab 6

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 4:26-MC-00006-O** |

**ORDER**

Before the Court is the government's petition to enforce compliance with the above captioned subpoena (ECF No. 1). The Court finds that the subpoena was issued within the Department of Justice's statutory authority, the subpoena seeks documents reasonably relevant to the investigation, and the subpoena's demands are reasonable. The Court further finds that the witness, Rhode Island Hospital, was served with the subpoena on July 3, 2025, and has failed to fully comply with the subpoena by providing records to the government on or before the original due date of August 7, 2025, or the date of the Government's filing of its petition to enforce of April 30, 2026. The Court further finds that the witness has neither filed a motion to quash nor shown just cause for noncompliance. The Court determines that the government's petition to enforce should be and is hereby **GRANTED.**

Therefore, the Court hereby **ORDERS** the following:

1. That the witness, Rhode Island Hospital, provide all records responsive to each request in the subpoena within 14 days of the entry of this order; and

2. That failure to fully comply with the subpoena or show just cause for continued noncompliance may result in sanctions up to and including this Court holding the witness in contempt.

**SO ORDERED** on this **30th day** of **April, 2026.**

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**

# Tab 7

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 30 2026
CLERK, U.S. DISTRICT COURT
By NG 3:31 CTJ
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN THE MATTER OF ADMINISTRATIVE SUBPOENA 25-1431-032 | NO. 4-26MC-006-O |

**GOVERNMENT'S PETITION FOR ENFORCEMENT OF ADMINISTRATIVE SUBPOENA PURSUANT TO 18 U.S.C. § 3486(c)**

On July 3, 2025, the Department of Justice (Department) served a Health Insurance Portability and Accountability Act (HIPAA) administrative subpoena on Rhode Island Hospital (RI Hospital), with a return date of Thursday, August 7, 2025. The subpoena is within the Department's statutory authority to investigate violations of the Federal Food, Drug, and Cosmetic Act (FDCA), the information requested is relevant to the Department's inquiry, and the subpoena is neither overbroad nor unduly burdensome. Yet, over ten months after service, RI Hospital has not complied with the subpoena. In fact, it has produced only one six-page document in response to the Department's fifteen document requests. The Department therefore moves for an order compelling RI Hospital to fully comply.

## BACKGROUND

This case concerns an investigation into the distribution of certain prescription drugs to minors with gender dysphoria and related disorders—intended uses for which the Food

and Drug Administration (FDA) has determined neither their safety nor effectiveness. These include drugs that suppress the production of sex hormones to delay puberty (commonly referred to as "puberty blockers") and cross-sex hormones meant to induce physical changes to alter the child's secondary sexual characteristics to resemble those typically seen in the opposite sex and less like the individual's biological sex. *See United States v. Skrmetti*, 605 U.S. 495 503-04 (2025) (describing use of these drugs). Although these drugs are approved by FDA for some uses, the agency has not determined that any of these drugs are safe or effective for the treatment of gender dysphoria, nor has FDA approved them for the treatment of gender dysphoria or any other psychiatric disorder.

A primary focus of the Department's investigation—which is being carried out in the Northern District of Texas, *see* 18 U.S.C. § 3486(c)—is potential violations of the FDCA. The FDCA generally prohibits "misbranding" a drug. *See* 21 U.S.C. § 352; *id.* § 331(a)-(c), (k). A drug may be misbranded if, among other things, its labeling is false or misleading, *id.* § 352(a), or if its labeling does not bear adequate directions for its intended use, *id.* § 352(f)(1). "Intended use" means the "objective intent of the persons legally responsible for the labeling of an article (or their representatives)." 21 C.F.R. § 201.128. Such intent "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives." *Id.* And the "intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer." *Id.* If, for example, a seller "intends an article for different uses than those intended by the person from whom he or she received the article," then the "seller is required to supply adequate labeling in accordance with the new intended uses." *Id.*

Under the FDCA, drug labeling is broadly defined to include any "written, printed, or graphic matter . . . accompanying" the drug. 21 U.S.C. § 321(m). The term "accompanying" includes materials that are separate from but related to the drug and any material that supplements, explains, or is designed for use with the drug. *See id.* § 321(m); 21 C.F.R. § 1.3(a); *Kordel v. United States*, 335 U.S. 345, 349-50 (1948); *United States v. Urbuteit*, 335 U.S. 355, 357 (1948); *United States v. 47 Bottles, More or Less, Etc.*, 320 F.2d 564, 569 (3d Cir. 1963). Labeling can include promotional materials, advertisements, brochures, flyers, instruction sheets, posters, and similar materials.

Misdemeanor violations of the FDCA are punishable on a strict liability basis, without any proof of criminal intent. *See* 21 U.S.C. § 331, § 333(a)(1); *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 91 (1964). For example, if a drug manufacturer or other person causes the distribution of an approved drug for an unapproved use, the manufacturer or other person could be charged with misbranding the drug by distributing it with labeling that lacks adequate directions for its intended uses. 21 U.S.C. §§ 331(a)-(c), (k), 352(f)(1). Where a violator has an intent to defraud or mislead, an FDCA violation may be punishable as a felony. *Id.* § 333(a)(2).

In the investigation of a "Federal health care offense," HIPAA permits the Attorney General to issue a subpoena. 18 U.S.C. § 3486(a)(1)(A)(i)(I). A federal health care offense includes a "violation of, or a criminal conspiracy to violate" 21 U.S.C. § 331, "if the violation or conspiracy relates to a health care benefit program," 18 U.S.C. § 24(a)(2). And a "health care benefit program" is "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual,

and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." *Id.* § 24(b).

Because public or private insurance plans were presented with claims related to off-label use of puberty blockers and cross-sex hormones, such a violation of the FDCA could constitute a "federal health care offense" as defined by 18 U.S.C. § 24. *See* Ex. A (Hsiao Decl.). Accordingly, the Assistant Attorney General signed a HIPAA subpoena, which was served on RI Hospital on July 11, 2025. *See* Ex. B (Subpoena); Ex. C (Proof of Service). After the review of claims data and billing records, the Department is investigating whether RI Hospital patients have received misbranded drugs. Hsiao Decl. ¶ 36. Also, the Department has reason to suspect that RI Hospital employees might have engaged in false billing concerning patients suffering from gender dysphoria. *Id.* ¶¶ 37–38. Medical records from other pediatric hospitals suggest that RI Hospital is not unique in this regard. *Id.* ¶ 39. The return date specified in the subpoena was reasonable and was set as August 7, 2025. Hsiao Decl. ¶ 46; Ex. B. But, to date, RI Hospital remains non-complaint. Indeed, over the past ten months, RI Hospital has provided only *one* document totaling *six* pages. Hsiao Decl. ¶ 46.[1]

[1] Partial compliance does not foreclose a petition to enforce. *See, e.g.*, *Equal Emp. Opportunity Comm'n v. MTV Food, Inc.*, No. 23-MC-278, 2024 WL 4164507, at *1 (S.D.N.Y. Sept. 12, 2024) (granting petition to enforce in the absence of full compliance); *United States v. Sysco Corp.*, 25 F. Supp. 2d 684, 685 (D. Md. 1998) (granting a motion to enforce after the recipient "only partially complied with the subpoenas"); *see also United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 488 (5th Cir. 2014) (affirming judgment granting petition to enforce after the recipient "failed to comply fully" with the subpoenas").

## ARGUMENT

The Fifth Circuit "has consistently recognized the summary nature of administrative subpoena enforcement proceedings," *Burlington N. R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*, 983 F.2d 631, 637 (5th Cir. 1993), and said that "when reviewing an administrative subpoena, the court plays a strictly limited role," *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 879 (5th Cir. 1989). The requirements for enforcement are "minimal"—"courts will enforce an administrative subpoena if: (1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *Burlington N. R. Co.*, 983 F.2d at 637-38; *see United States v. Zadeh*, 820 F.3d 746, 756 (5th Cir. 2016) (applying this standard "in the context of an administrative subpoena seeking an individual's medical records"). Here, all three prerequisites are met. *See United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 489 (5th Cir. 2014) (explaining that the Government has the "minimal" burden of making a "prima facie case").[2]

### I. The Subpoena Is Within the Department's Statutory Authority.

An agency's subpoena must be enforced unless it is "plainly incompetent or irrelevant to any lawful purpose." *Fed. Election Comm'n v. Lance*, 617 F.2d 365, 368 (5th Cir. 1980) (quoting *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943)); *accord,*

[2] To the extent the Fifth Circuit also requires a showing that "the required administrative steps have been followed," *Burlington N. R. Co.*, 983 F.2d at 637 n.2, the Department meets that requirement too. The subpoena was signed by the Assistant Attorney General, properly served on RI Hospital, and calls for the production of nonprivileged documents relevant to the investigation within 500 miles of RI Hospital. *See* Subpoena; 18 U.S.C. § 3486(a)(3).

*e.g.*, *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 5–6 (1st Cir. 1996) ("As long as the agency's assertion of authority is not obviously apocryphal, a procedurally sound subpoena must be enforced.").

The subpoena at issue is plainly relevant to a lawful purpose. Congress has expressly authorized the Attorney General to issue subpoenas to investigate potential "Federal health care offense[s]," including qualifying offenses in the FDCA. 18 U.S.C. § 3486(a)(1)(A)(i)(I). The subpoena in this case was issued for that very purpose, as described above. The subpoena to RI Hospital will assist the Department's efforts to "investigate Federal health care offenses," Subpoena at 1. Accordingly, the subpoena issued to RI Hospital plainly comes within the Department's statutory authority. *See* *Burlington N. R. Co.*, 983 F.2d at 637-38.

## II. The Subpoena Seeks Documents Reasonably Relevant to the Investigation.

The subpoena seeks information "reasonably relevant" to the Department's investigation in two different ways. *Burlington N. R. Co.*, 983 F.2d at 638; *see FTC v. Texaco, Inc.*, 555 F.2d 862, 874 (D.C. Cir. 1977) (en banc) ("[I]n the pre-complaint stage, . . . the relevance of the agency's subpoena requests may be measured only against the general purposes of its investigation."). First, the Department seeks records to determine whether RI Hospital itself may have engaged in conduct that implicates the FDCA. Second, the Department seeks records from RI Hospital to determine whether manufacturers and distributors of the drugs at issue may have violated the FDCA.

In the subpoena are 15 Requests, all of which extend from January 1, 2020, to the present. *See* Subpoena at 4, 7-9. The fifteen requests can be broadly broken down into four

main categories: (1) requests related to personnel and corporate oversight (Request 1); (2) requests related to billing, coding, and reimbursement practices (Requests 2–6); (3) requests related to the practice's relationships with drug manufacturers, distributors, and pharmacies (Requests 7–10); and (4) requests regarding clinical practices and drug safety (Requests 11–15). As the Hsiao Declaration explains, all 15 requests—and all four categories—are reasonably related to identifying evidence that could be used to shed light on the Government's lawful investigation. *See* Hsiao Decl. ¶¶ 40–44.

Request 1 seeks information to identify who had authority to direct prescribing, billing, or marketing practices to determine liability. Subpoena at 7. Under strict liability doctrines, including the responsible corporate officer doctrine, officers and responsible personnel can be held criminally liable for FDCA violations even without direct participation. Hsiao Decl. ¶ 41. Personnel files also show financial incentives, disciplinary history, and/or training which can establish knowledge and intent. *Id.*

Requests 2 through 6 (regarding billing, coding, and reimbursement practices) are necessary to determine whether the clinic disguised treatment for gender-related mental disorders as another, physical illness (e.g., endocrine disorder) to disguise or hide potential FDCA violations and potentially secure health care benefit program reimbursements through fraud. Subpoena at 7-8; Hsiao Decl. ¶ 42. Such practices are especially important to demonstrate an "intent to defraud or mislead" under 21 U.S.C. § 333(a)(2) if the clinic misrepresented the intended use of the drugs. Hsiao Decl. ¶ 42. Moreover, training materials and internal discussions can reveal whether improper coding was a deliberate strategy. *Id.*

Requests 7 through 10 (relating to relationships with drug manufacturers, distributors, and pharmacies) seek evidence of an intent to market or promote drugs for unapproved uses in violation of the FDCA. Subpoena at 8; Hsiao Decl. ¶ 43. Communications between pharmaceutical sales representatives and prescribing physicians can provide evidence of off-label promotion, which would be relevant to an FDCA prosecution for misbranding drugs. *See, e.g.*, Information at 4-5, ¶¶ 12-18, *United States v. Cephalon, Inc.*, No. 2:08-cr-598 (E.D. Pa. Sep. 29, 2008), Dkt. No. 1; Press Release, U.S. Dep't of Just., *Eli Lilly and Company to Pay U.S. $36 Million Relating to Off-Label Promotion* (Dec. 21, 2005), https://perma.cc/2Y64-FUK5 (announcing guilty plea of drug manufacturer involving illegal off-label promotion and highlighting evidence that the defendant "[e]ncourag[ed] sales representatives . . . to send unsolicited medical letters to promote the drug for an unapproved use to doctors").[3] If RI Hospital, or one of its affiliated health care providers, received promotional materials, "scientific exchange information," or payments to encourage prescribing of puberty blockers or cross-sex hormones, such information would support a FDCA theory (including conspiracy) involving the illegal misbranding of drugs and distribution of misbranded drugs or unapproved new drugs.

---

[3] There are many similar examples. *See, e.g.*, Press Release, U.S. Dep't of Just., *Genzyme Corporation to Pay $32.5 Million to Resolve Criminal Liability Relating to Seprafilm* (Sep. 3, 2015), https://perma.cc/P7AT-MUVT (highlighting evidence that manufacturer encouraged off-label uses by distributing promotional materials citing a misleading scientific study); *United States v. Endo Pharms., Inc.*, No. 1:14-CR-66 (N.D.N.Y. Feb. 21, 2014), Dkt. 2 (deferred prosecution agreement regarding drug manufacturer's off-label promotion of drug, highlighting evidence that manufacturer distributed a misleading scientific study and promoted off-label uses at educational presentations for physicians); Press Release, U.S. Dep't of Just., *Wyeth Pharmaceutical Agrees to Pay $490.9 Million for Marketing the Prescription Drug Rapamune for Unapproved Uses* (July 30, 2013), https://archives.fbi.gov/archives/oklahomacity/press-releases/2013/wyeth-pharmaceutical-agrees-to-pay-490.9-million-for-marketing-the-prescription-drug-rapamune-for-unapproved-uses (highlighting evidence that manufacturer paid bonuses to incentivize off-label sales).

Hsiao Decl. ¶ 43. Similarly, information regarding financial arrangements (consulting agreements, sponsorships, speaking honoraria) may suggest improper influence to reinforce a showing of an intent to misbrand the drugs, including with an intent to defraud or mislead. *Id.*

Requests 11 through 15 (relating to patient-level clinical practices and drug safety) will permit the United States to evaluate the scope of prescribing (including the number and age range of patients treated), and consistency of diagnoses. Subpoena at 8-9; *see* Hsiao Decl. ¶ 44. Such information also establishes the scope of interstate distribution and the scale of potential FDCA violations. Hsiao Decl. ¶ 44. Linking each patient's clinical record to corresponding billing and insurance claims can demonstrate whether diagnoses were miscoded, which can prove fraudulent intent. *Id.* Documentation of clinical justification, informed consent, and disclosure of unapproved use is key to assessing whether the clinic (and/or potential co-conspirators) concealed or downplayed risks associated with the unapproved use of these drugs. *Id.* Absence or minimization of such warnings could establish the intent to mislead. *Id.* Patient charts also typically capture adverse outcomes, side effects, and complications of drug use. *Id.* By reviewing multiple patient records, the investigative team may reveal systemic use of the same masking codes and fraudulent informed consent documents. *Id.* This enables investigators to distinguish between mere errors and an institutionalized practice.

Providing patient records including patient identities can also provide essential investigative leads. *Id.* Parents may be witnesses about what disclosures were made. Patients (depending on age and circumstances) may provide information about the

informed consent process, side effects, or other false or misleading information about the drugs conveyed during treatment. *Id.* Health benefit programs tied to identified patients could provide additional information including claim records, creating a reinforced evidentiary record. *Id.* In sum, without this information, the Government cannot fully determine the scope of the violations, identify patterns of misbranding or fraudulent billing, or assess whether the conduct was undertaken with intent to defraud or mislead, as required for felony liability under 21 U.S.C. § 333(a)(2).

For these reasons, the information sought is "reasonably relevant," *Morton Salt,* 338 U.S. at 652, to the "general purposes of the agency's investigation," *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1268 (7th Cir. 1982) (alteration adopted and quotation omitted)). Accordingly, the Court should enforce the subpoena. *See United States v. Zadeh*, No. 4:14-CV-105-O, 2015 WL 418090, at *7 (N.D. Tex. Jan. 31, 2015) (O'Connor, J.) ("For the purposes of administrative subpoenas, the notion of relevancy is a broad one, and so long as the material requested touches a matter under investigation, the subpoena will survive a challenge that it is not relevant.").

## III. The Subpoena's Demands Are Reasonable.

Finally, the subpoena's demands are "not unreasonably broad or burdensome." *Burlington N. R. Co.*, 983 F.2d at 638.

Because the Department's "inquiry" is "a relatively broad one," "the permissible scope of materials that [can] reasonably be sought [is] necessarily equally broad." *McPhaul v. United States*, 364 U.S. 372, 382 (1960); *see Securities & Exch. Comm'n v. McGoff*, 647 F.2d 185, 192-93 (D.C. Cir. 1981) ("We agree that the demands are broad.

But the nature of the inquiry precludes a trim list of requests." (footnote omitted)). And the Department's requests are not atypical in this area. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d 341, 350 (4th Cir. 2000) ("[I]f Bailey had treated 15,000 patients over a period of seven years and all of them were reimbursed on claims he submitted, a suspicion of fraud on these claims would justify a review of Bailey's documentation of services to these patients, of the claims submitted on their behalf, and of the reimbursements collected."); *cf. Zadeh*, 820 F.3d at 758 (agreeing that "the subpoena was not unduly broad or burdensome albeit implicating privacy interests of patients whose records are produced but are not parties to this litigation"). The Department's requests are also limited in "time and scope," asking only for records since January 1, 2020. *Zadeh*, 2015 WL 418090 at *5.

The subpoena is also not unduly burdensome. The information sought is relevant and not otherwise available, meaning that the subpoena is "unreasonably burdensome" only if "compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *F.T.C. v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981) (quotation omitted), *abrogated on other grounds as recognized by Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 943 (11th Cir. 1997). RI Hospital has not presented to the Department any evidence demonstrating that compliance with the subpoena would cause such a disruption or hindrance. *Id.* ("The subpoenaed party may not merely utter the claim; it must persuade us."). Notably, other hospitals to whom the

Department issued similar subpoenas have complied with the subpoena without any disruption or hindrance. The Court therefore should enforce the subpoena in its entirety.[4]

**CONCLUSION**

The Government respectfully requests an order from the Court compelling Rhode Island Hospital to comply with the subpoena.

Dated: April 30, 2026

Respectfully submitted,

RYAN RAYBOULD
United States Attorney

BRETT A. SHUMATE
Assistant Attorney General

JORDAN C. CAMPBELL
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director
Enforcement and Affirmative Litigation Branch

[4] The Fifth Circuit has provided that "[c]ourts will not enforce an administrative subpoena . . . if the subpoena was issued for an improper purpose, such as harassment." *Burlington N. R. Co.*, 983 F.2d at 638. The Department acknowledges that a handful of mistaken district judges have found "improper purpose" given the administration's policy positions and priorities. *See, e.g.*, *QueerDoc, PLLC v. U.S. Dep't of Just.*, 807 F. Supp. 3d 1295, 1303-04 (W.D. Wash. 2025); *In re Admin. Subpoena No. 25-1431-019*, 800 F. Supp. 3d 229, 239 (D. Mass. 2025). These decisions are wrong and currently on appeal. There is no basis in law or logic to conclude that an administration's policy positions prevent it from enforcing existing federal law. And, given that existing federal law, even if an administration's policy views might be treated as an improper purpose, this is no reason to deny the Department's motion. Denial is only warranted when the sole purpose behind a subpoena's issuance is an improper one. *See Donaldson v. United States*, 400 U.S. 517, 533 (1971) (inquiring whether "the sole objective of the investigation is to" impermissibly use a civil subpoena to "obtain evidence for use in a criminal prosecution"); *Lynn v. Biderman*, 536 F.2d 820, 826 (9th Cir. 1976) ("It is not . . . a ground to deny enforcement of a subpoena that it is being employed for a wrongful purpose if there is also a legitimate purpose for the subpoena.").

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which will automatically serve all counsel of record electronically.

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*