**No. 26-10431**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

IN RE ADMINISTRATIVE SUBPOENA NO. 25-1431-032

UNITED STATES OF AMERICA,

*Petitioner-Appellee*,

v.

RHODE ISLAND HOSPITAL,

*Respondent-Appellant*.

On Appeal from the United States District Court
for the Northern District of Texas, Chief Judge Reed O'Connor
No. 4:26-mc-00006-O

# BRIEF FOR APPELLEE

RYAN RAYBOULD
*United States Attorney*

ETHAN WOMBLE
*Assistant United States Attorney*
*U.S. Attorney's Office*
*801 Cherry Street, Suite 1700*
*Fort Worth, Texas 76102*

BRETT A. SHUMATE
*Assistant Attorney General*

BRAD HINSHELWOOD
SARAH WELCH
JOHN BAILEY
BRANTLEY MAYERS
*Attorneys, Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3180*

## CERTIFICATE OF INTERESTED PERSONS

*In re Administrative Subpoena No. 25-1431-032:*
*United States of America v. Rhode Island Hospital*

A certificate of interested persons is not required, under Fifth Circuit Rule 28.2.1, as appellee is a governmental party.

*/s/ John Bailey*
John Bailey

## STATEMENT REGARDING ORAL ARGUMENT

Given the importance of the issues presented, the United States respectfully requests that this case be set for oral argument.

# TABLE OF CONTENTS

INTRODUCTION ........ 1

JURISDICTIONAL STATEMENT ........ 3

STATEMENT OF ISSUES ........ 3

STATEMENT OF THE CASE ........ 4

A. Statutory Background ........ 4

B. Factual Background ........ 10

C. The Subpoena to RIH ........ 14

D. Procedural History ........ 17

E. The Northern District Protects Its Jurisdiction ........ 24

SUMMARY OF ARGUMENT ........ 26

STANDARD OF REVIEW ........ 28

ARGUMENT ........ 28

I. RIH's Procedural Objection Fails. ........ 28

A. The timing of the enforcement order does not require vacatur ........ 28

B. The record permits only enforcement. ........ 40

II. The District Court Properly Protected Its Jurisdiction. ........ 48

CONCLUSION ........ 58

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

***Cases***

*Armstrong v. Manzo*,
380 U.S. 545 (1965) ........................................ 33

*Baum v. Blue Moon Ventures, LLC*,
513 F.3d 181 (5th Cir. 2008) ........................................ 52

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) ........................................ 49, 51, 52

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ........................................ 51

*Council of Federated Organizations v. Mize*,
339 F.2d 898 (5th Cir. 1964) ........................................ 37, 38

*F.T.C. v. Swanson*,
560 F.2d 1 (1st Cir. 1977) ........................................ 45

*FTC v. Jim Walter Co.*,
651 F.2d 251 (5th Cir. 1981) ........................................ 43, 47

*Glenn v. Newman*,
614 F.2d 467 (5th Cir. 1980) ........................................ 35

*In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*,
836 F. Supp. 3d 459 (D.R.I. 2026) ........................................ 22

*In re Bartle*,
560 F.3d 724 (7th Cir. 2009) ........................................ 35, 36, 38

*In re Subpoena Duces Tecum*,
228 F.3d 341 (4th Cir. 2000) ........................................ 46

*In re Wade*,
948 F.2d 1122 (9th Cir. 1991) ........................................ 35, 37

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
342 U.S. 180 (1952) .......................................................................... 49

*Kordel v. United States*,
335 U.S. 345 (1948) ............................................................................ 7

*Luig v. N. Bay Enters., Inc.*,
817 F.3d 901 (5th Cir. 2016) ............................................. 27, 32, 34, 36

*Mann Mfg., Inc. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) ............................................................ 49

*Mathews v. Eldridge*,
424 U.S. 319 (1976) .......................................................................... 31

*McLane Co. v. E.E.O.C.*,
581 U.S. 72 (2017) ............................................................................ 28

*McPhaul v. United States*,
364 U.S. 372 (1960) .......................................................................... 46

*Meyer v. Brown & Root Constr. Co.*,
661 F.2d 369 (5th Cir. 1981) ............................................................ 54

*N.L.R.B. v. Cooper Tire & Rubber Co.*,
438 F.3d 1198 (D.C. Cir. 2006)........................................................ 43

*Newby v. Enron Corp.*,
302 F.3d 295 (5th Cir. 2002) ............................................................ 28

*Off. of Inspector Gen., R.R. Ret. Bd.*,
983 F.2d 631 (5th Cir. 1993) ...................................................... 31, 32

*Olim v. Wakinekona*,
461 U.S. 238 (1983) .......................................................................... 34

*Peralta v. Heights Medical Centers, Inc.*,
485 U.S. 80 (1988) ............................................................................ 37

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
No. 25-7384, 2026 WL 2359440 (9th Cir. Aug. 14, 2026) ... 2, 24, 30, 44, 45, 46, 47, 48

*Regal Knitwear Co. v. N.L.R.B.*,
324 U.S. 9 (1945) .......... 55

*Republic National Bank of Dallas v. Crippen*,
224 F.2d 565 (5th Cir. 1955) .......... 37, 38

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) .......... 27, 36, 38, 39, 48

*Schauss v. Metals Depository Corp.*,
757 F.2d 649 (5th Cir. 1985) .......... 49, 51, 53

*Scott v. Schedler*,
826 F.3d 207 (5th Cir. 2016) .......... 54, 55

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) .......... 36

*Texas Keystone, Inc. v. Prime Natural Resources, Inc.*,
694 F.3d 548 (5th Cir. 2012) .......... 38

*U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*,
847 F.2d 775 (11th Cir. 1988) .......... 27, 35

*United States v. 47 Bottles*,
320 F.2d 564 (3d Cir. 1963) .......... 7

*United States v. Bacto-Unidisk*,
394 U.S. 784 (1969) .......... 4

*United States v. Dotterweich*,
320 U.S. 277 (1943) .......... 4

*United States v. Hall*,
472 F.2d 261 (5th Cir. 1972) .......... 49, 50, 52, 57

*United States v. Marschall*,
82 F.4th 774 (9th Cir. 2023) .......... 8

*United States v. Park*,
421 U.S. 658 (1975) .......... 7

*United States v. Rand*,
924 F.3d 140 (5th Cir. 2019) .......... 35, 48

*United States v. Skrmetti*,
605 U.S. 495 (2025) .......... 11, 12

*United States v. Sturm, Ruger & Co.*,
84 F.3d 1 (1st Cir. 1996) .......... 45

*United States v. Urbuteit*,
335 U.S. 355 (1948) .......... 7

*United States v. Wiesenfeld Warehouse Co.*,
376 U.S. 86 (1964) .......... 7

*United States v. Zadeh*,
820 F.3d 746 (5th Cir. 2016) .......... 31, 47

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
751 F.2d 721 (5th Cir. 1985) .......... 49, 53

*Wolff v. McDonnell*,
418 U.S. 539 (1974) .......... 31

***Statutes***

18 U.S.C. § 24(a) .......... 15

18 U.S.C. § 24(a)(2) .......... 10

18 U.S.C. § 24(b) .......... 10

18 U.S.C. § 3486 .......... 16

18 U.S.C. § 3486(a)(1) .......... 10

18 U.S.C. § 3486(a)(5) .......... 16, 32

18 U.S.C. § 3486(c) .......... 3, 42, 43

21 U.S.C. § 321(m) .......... 6, 7

21 U.S.C. § 331 .......... 7

21 U.S.C. § 331(a) .......... 7
21 U.S.C. § 331(c) .......... 7
21 U.S.C. § 331(d) .......... 5
21 U.S.C. § 331(k) .......... 7
21 U.S.C. § 333 .......... 31
21 U.S.C. § 333(a)(1) .......... 7
21 U.S.C. § 333(a)(2) .......... 7
21 U.S.C. § 352 .......... 6
21 U.S.C. § 352(a) .......... 6
21 U.S.C. § 352(f) .......... 5
21 U.S.C. § 352(f)(1) .......... 5, 6, 7
21 U.S.C. § 355 .......... 5
21 U.S.C. § 355(a) .......... 5
21 U.S.C. § 355(d) .......... 5
28 U.S.C. § 1292(a)(1) .......... 3
28 U.S.C. § 1651(a) .......... 52

***Rules***

Fed. R. Civ. P. 61 .......... 34
Fed. R. Civ. P. 65(d)(2) .......... 55

***Regulations***

21 C.F.R. § 1.3(a) .......... 7
21 C.F.R. § 201.128 .......... 6, 8

21 C.F.R. § 201.5 .......................................................................... 5

21 C.F.R. § 201.55 ........................................................................ 5

21 C.F.R. § 201.57 ........................................................................ 5

21 C.F.R. § 201.100 ...................................................................... 5

## INTRODUCTION

Rhode Island Hospital's (RIH) opening brief makes no effort to demonstrate that the subpoena that the district court here ordered enforced—an order this Court declined to stay—is invalid. It does not ask this Court to hold that the Department lacked statutory authority, that the requested records are irrelevant to a good-faith investigation, or that venue was improper. It declines to make any such arguments despite presenting those same contentions in seeking a stay of the district court's enforcement order from the district court and this Court—which both courts denied. Despite the fact that this subpoena enforcement action was filed before RIH (or any other party) sought relief related to the subpoena in the District of Rhode Island, RIH has attempted to reserve its merits contentions for litigation arising from that court, where RIH repaired in an avowed effort to undermine the district court's ruling here and elicited an injunction that prohibits the government from receiving or using any records sought by the subpoena that the Northern District ordered enforced.

RIH's selective reluctance to litigate the merits is understandable, given the district court's rejection of its arguments, this Court's denial of a stay, and the Ninth Circuit's recent rejection of substantively similar arguments. *QueerDoc, PLLC v. U.S. Dep't of Just.*, No. 25-7384, 2026 WL 2359440 (9th Cir. Aug. 14, 2026). Having declined to brief its arguments that the order was wrong on the merits, this Court should affirm the district court's enforcement order and its holding that the subpoena seeks information reasonably relevant to a good-faith investigation within the Department's statutory authority.

The sole argument RIH directly advances to contest the district court's enforcement of the subpoena—that no amount of process can cure an initial failure to be heard—fares no better. That counterintuitive argument fails on first principles and under circuit precedent, which does not require remand for an empty procedural exercise when the subpoenaed party has presented its arguments and obtained a ruling on them from the district court, particularly where the record permits only one result. The unfortunate procedural history of this case vividly illustrates that RIH has already received all of the process it was due—and then some.

The same procedural history dooms RIH's separate objection to the district court's postjudgment order that restrained RIH from taking further actions to undermine the jurisdiction of the district court and this Court. RIH cannot avoid that ordinary application of the first-filed rule by invoking inapt cases involving pre-filing sanctions entered against vexatious litigants.

This Court should affirm.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 18 U.S.C. § 3486(c). It entered an order enforcing Administrative Subpoena No. 25-1431-032 on April 30, 2026. ROA.72. RIH filed a notice of appeal on May 6. ROA.88. The court entered the challenged postjudgment injunction on May 18, and RIH appealed that order on July 14. ROA.338, 619. This Court has jurisdiction over the enforcement order under 28 U.S.C. § 1291 and over the postjudgment order under, at minimum, 28 U.S.C. § 1292(a)(1).

## STATEMENT OF ISSUES

1. Whether the district court's enforcement order should be affirmed where the court correctly determined that the subpoena seeks

information reasonably relevant to a good-faith investigation within the Department's statutory authority, RIH had a statutory opportunity to seek pre-enforcement review, and RIH presented its arguments about the subpoena's validity to the district court before producing any records.

2. Whether the district court abused its discretion by directing RIH to seek relief concerning this first-filed enforcement proceeding only in that court, this Court, or the Supreme Court.

## STATEMENT OF THE CASE

### A. Statutory Background

**1.** In 1938, Congress enacted the FDCA. Its "overriding purpose [is] to protect the public health." *United States v. Bacto-Unidisk*, 394 U.S. 784, 798 (1969). Because the statute's purpose should "infuse [its] construction," *United States v. Dotterweich*, 320 U.S. 277, 280 (1943), courts give the FDCA a "liberal construction" that furthers protection of the public health, including through criminal enforcement, *Bacto-Unidisk*, 394 U.S. at 798.

The FDCA regulates the development, manufacturing, and distribution of drugs in the United States. Before any "new drug" may

enter interstate commerce, the manufacturer must demonstrate to the United States Food and Drug Administration (FDA) that the drug is both safe and effective for each of its intended uses. 21 U.S.C. §§ 331(d), 355(a). The introduction of an unapproved new drug into interstate commerce violates the FDCA. *Id.* § 331(d).

A drug manufacturer obtains FDA approval for a new drug through a new drug application (NDA) that demonstrates its drug is safe and effective for each of its intended uses. 21 U.S.C. § 355(a). When FDA approves a drug, it approves it as safe and effective for particular use(s) in the NDA. *See id.* § 352(f); 21 C.F.R. § 201.5. In addition, for prescription drugs, FDA must also approve elements of the drug's labeling, such as the prescribing information, which specifies, among other things, the essential scientific information needed for the safe and effective use of the drug for its FDA-approved uses and adequate directions for those uses. 21 U.S.C. §§ 352(f)(1), 355; *see* 21 C.F.R. §§ 201.5, 201.55-201.57, 201.100. Because a drug that is safe and effective for one use may be neither safe nor effective for others, FDA approval extends only to the uses specified in a drug's approved application and labeling. 21 U.S.C. § 355(d).

The FDCA generally prohibits "misbranding" a drug. *See* 21 U.S.C. § 352; *id.* § 331(a)-(c), (k). A drug may be misbranded if, among other things, its labeling is false or misleading, *id.* § 352(a), or if its labeling does not bear adequate directions for its intended use, *id.* § 352(f)(1). "Intended use" means the "objective intent of the persons legally responsible for the labeling of an article (or their representatives)." 21 C.F.R. § 201.128. Such intent "may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives." *Id.* And the "intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer." *Id.* If, for example, a seller "intends an article for different uses than those intended by the person from whom he or she received the article," then the "seller is required to supply adequate labeling in accordance with the new intended uses." *Id.*

Under the FDCA, drug labeling is broadly defined to include any "written, printed, or graphic matter . . . accompanying" the drug. 21 U.S.C. § 321(m). The term "accompanying" includes materials that are separate from but related to the drug and any material that

supplements, explains, or is designed for use with the drug. *See id.*; 21 C.F.R. § 1.3(a); *Kordel v. United States*, 335 U.S. 345, 349-50 (1948); *United States v. Urbuteit*, 335 U.S. 355, 357 (1948); *United States v. 47 Bottles*, 320 F.2d 564, 569 (3d Cir. 1963). Labeling can include promotional materials, advertisements, brochures, flyers, instruction sheets, posters, and similar materials.

Given the FDCA's protective purpose, misdemeanor violations of the FDCA are punishable on a strict liability basis, without any proof of criminal intent. *See* 21 U.S.C. §§ 331, 333(a)(1); *United States v. Park*, 421 U.S. 658, 672-73 (1975); *United States v. Wiesenfeld Warehouse Co.*, 376 U.S. 86, 91 (1964). For example, if a drug manufacturer or other person causes the distribution of an approved drug for an unapproved use, the manufacturer or other person could be charged with misbranding the drug or distributing a drug with labeling that lacks adequate directions for its intended uses. 21 U.S.C. §§ 331(a)-(c), (k), 352(f)(1). Where a violator has an intent to defraud or mislead, an FDCA violation may be punishable as a felony. *Id.* § 333(a)(2).

Misbranding, via false or misleading "written, printed, or graphic matter" on a drug, container, or wrapper or that supplements, explains,

or is designed for use with a drug, is a classic FDCA violation. *See, e.g.*, *United States v. Marschall*, 82 F.4th 774, 779 (9th Cir. 2023) (quotation omitted) (upholding misbranding conviction of the defendant who shipped drugs with false informational sheets). Drug manufacturers and distributors also can be convicted of FDCA violations, for example, for shipping drugs in interstate commerce intending that they be used off-label, with that intent frequently shown through evidence of promoting the drugs for such uses. *See* 21 C.F.R. § 201.128 (intent may "be shown by labeling claims, advertising matter," "oral or written statements," and "circumstances in which the [drug] is, with the knowledge of" certain persons, "offered or used for a purpose for which it is neither labeled nor advertised"); *see, e.g.*, Judgment, *United States v. Cephalon, Inc.*, No. 2:08-cr-598 (E.D. Pa. Oct. 10, 2008), Dkt. 11 (conviction of manufacturer for promoting three drugs for off-label uses). Thus, in such prosecutions, the government may rely on evidence of communications between pharmaceutical sales representatives and prescribing physicians and recommendations to doctors of diagnostic codes to mask off-label prescriptions to ensure payment for unapproved uses. *See, e.g.*, Information at 4-5, ¶¶ 12-18, *United States v. Cephalon,*

*Inc.*, No. 2:08-cr-598 (E.D. Pa. Sep. 29, 2008), Dkt. No. 1; Press Release, U.S. Dep't of Just., Eli Lilly and Company to Pay U.S. $36 Million Relating to Off-Label Promotion (Dec. 21, 2005), https://perma.cc/2Y64-FUK5 (announcing guilty plea of drug manufacturer involving illegal off-label promotion and highlighting evidence that the defendant "[e]ncourag[ed] sales representatives . . . to send unsolicited medical letters to promote the drug for an unapproved use to doctors").[1]

**2.** In 1996, Congress enacted the Health Insurance Portability and Accountability Act (HIPAA). In it, Congress gave the Attorney General a broad but familiar investigative tool: in "any investigation" of

[1] There are many similar examples. *See, e.g.*, Press Release, U.S. Dep't of Just., *Genzyme Corporation to Pay $32.5 Million to Resolve Criminal Liability Relating to Seprafilm* (Sep. 3, 2015), https://perma.cc/P7AT-MUVT (highlighting evidence that manufacturer encouraged off-label uses by distributing promotional materials citing a misleading scientific study); *United States v. Endo Pharms., Inc.*, No. 1:14-CR-66 (N.D.N.Y. Feb. 21, 2014), Dkt. 2 (deferred prosecution agreement regarding drug manufacturer's off-label promotion of drug, highlighting evidence that manufacturer distributed a misleading scientific study and promoted off-label uses at educational presentations for physicians); Press Release, U.S. Dep't of Just., *Wyeth Pharmaceutical Agrees to Pay $490.9 Million for Marketing the Prescription Drug Rapamune for Unapproved Uses* (July 30, 2013), https://perma.cc/ZG9J-8JFK (highlighting evidence that manufacturer paid bonuses to incentivize off-label sales).

a "Federal health care offense," the Attorney General may issue a subpoena—often referred to as a "HIPAA subpoena"—for the production of "any records or other things relevant to the investigation." 18 U.S.C. § 3486(a)(1)(A)(i)(I), (B)(i). Federal health care offenses include a "violation of, or a criminal conspiracy to violate" the FDCA, "if the violation or conspiracy relates to a health care benefit program," 18 U.S.C. § 24(a)(2). And a "health care benefit program" is "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." *Id.* § 24(b). The Department is therefore expressly empowered to use a HIPAA subpoena to investigate violations of the FDCA and related conspiracies, if the violation or conspiracy relates to products or services that might ultimately be paid for by a private or public health insurance program.

### B. Factual Background

This case involves a HIPAA subpoena that the Department issued to RIH in connection with an investigation into the provision of certain

prescription drugs to minors with gender dysphoria. *See* ROA.6. These include prescription drugs that suppress the production of sex hormones to delay puberty (commonly referred to as "puberty blockers") and cross-sex hormones meant to induce physical changes to alter the child's secondary sexual characteristics to resemble those typically seen in the opposite sex and less like the individual's biological sex. *See United States v. Skrmetti*, 605 U.S. 495, 503-04 (2025) (describing use of these drugs). Although these drugs are approved by FDA for some uses, FDA has not determined that any of these drugs are safe or effective for the treatment of gender dysphoria, nor has FDA approved any of these prescription drugs for the treatment of gender dysphoria or any other psychiatric disorder.

The use of these drugs in the treatment of gender dysphoria in minors is highly controversial—the subject of "fierce scientific and policy debates." *Skrmetti*, 605 U.S. at 525. As the Supreme Court recently explained, "health authorities in a number of European countries have raised significant concerns regarding the potential harms associated with using puberty blockers and hormones to treat transgender minors," and "more than 20 States have enacted laws

banning the provision of sex transition treatments to minors." *Id.* at 504-05.

In April 2025, then-Attorney General Bondi directed the Department to prioritize investigations of "medical providers and pharmaceutical companies that mislead the public about the long-term side effects of chemical and surgical mutilation." Memorandum from the Att'y Gen., Off. of the Att'y Gen., for Select Component Heads 4 (Apr. 22, 2025), https://perma.cc/N345-R8QL (Bondi Memo). The Bondi Memo directed the Department to "undertake appropriate investigations of any violations of the [FDCA] by manufacturers and distributors engaged in misbranding by" making "false claims about the on- or off-label use of puberty blockers, sex hormones," and similar drugs. *Id.* In June 2025, Assistant Attorney General for the Civil Division Brett Shumate issued a memorandum directing his staff to "prioritize investigations of doctors, hospitals, pharmaceutical companies, and other appropriate entities consistent with" the Bondi Memo. Memorandum from Brett A. Shumate, Assistant Att'y Gen., U.S. Dep't of Just., to Civ. Div. Emps. 2-3 (June 11, 2025), https://perma.cc/AMR2-U7W3 (Shumate Memo).

Based on information from whistleblowers and experts, there may be violations of federal law associated with gender-related treatments for minors. For example, the marketing or promotion of puberty blockers and cross-sex hormones (the drugs at the center of the investigation) for treating gender dysphoria in minors—an unapproved use—could constitute illegal misbranding under the FDCA. Misleading or deceiving minors and their parents about the risks of gender-related treatments could similarly violate the FDCA.

These are not mere technical violations. Bypassing the drug approval process carries real health consequences for children. The United States Department of Health and Human Services (HHS) has found, after reviewing the available evidence, that these interventions in minors are associated with serious potential harms—including infertility and sterility, impaired bone density development, cardiovascular and metabolic disease, and psychiatric conditions. Admiral Brian Christine, Assistant Sec'y for Health, U.S. HHS, *Evidence-Based Care for Children and Adolescents with Gender Dysphoria* 1 (Dec. 18, 2025), https://perma.cc/ZH22-R5GH (HHS Statement). In sum, "[c]urrent evidence does not support claims that

puberty blockers, cross-sex hormones, and surgeries are safe and effective treatments for pediatric gender dysphoria." *Id.* at 3.

In connection with its investigation, the government has issued various HIPAA subpoenas, including the subpoena at issue on appeal. The Department has thus far announced resolutions of criminal liability with six hospital systems for allegations that they violated federal law in connection with providing gender-related medical interventions to children.[2]

**C. The Subpoena to RIH**

RIH operates the "Gender and Sexuality Program at Hasbro's Children's Hospital," through which its providers administer sex-rejecting procedures to children—what is sometimes euphemistically referred to as "gender-affirming care." ROA.173. These services for children include "hormone therapy" as well as other unspecified "gender care." *Id.* RIH does not dispute that FDA has not approved or

[2] Press Release, U.S. Dep't of Justice (August 5, 2026), https://perma.cc/D4MX-8TD8; Press Release, U.S. Dep't of Justice (June 5, 2026), https://perma.cc/7MPN-4AQK; Press Release, U.S. Dep't of Justice (May 15, 2026), https://perma.cc/S4NQ-X6FN; Press Release, U.S. Dep't of Just. (Sept. 18, 2026) (https://perma.cc/F3HV-ARTB)

otherwise determined that puberty blockers or cross-sex hormones are safe or effective treatments for gender dysphoria.

In July 2025, the Civil Division issued a HIPAA subpoena to RIH seeking information relevant to its investigation into potential FDCA violations related to the provision of puberty blockers and cross-sex hormones to minors. ROA.40-66. The subpoena explained that it seeks information to investigate "Federal health care offenses as defined in 18 U.S.C. § 24(a)," ROA.40, and included 15 different requests for documents. The subpoena seeks documents and data relating to RIH's provision of gender-related medical treatment, including medical records for patients prescribed puberty blockers or hormone therapy and documents relating to billing or coding practices, or insurance claims, for gender-related care. ROA.46-48. It also seeks communications with pharmaceutical manufacturers regarding the use of puberty blockers or hormones in connection with gender affirming care for minor patients. ROA.47. The subpoena's return date was August 7, 2025. ROA.40.

The subpoena and relevant statute put RIH on notice of its ability to obtain pre-enforcement review of the subpoena. The subpoena stated

that it was issued under the authority of 18 U.S.C. § 3486, ROA.40, which permits a recipient to seek modification or quashal in its home district before the return date, *see* 18 U.S.C. § 3486(a)(5). And the subpoena also stated what would happen if RIH failed to comply or bring a pre-enforcement challenge: "Upon contumacy or refusal to obey, this subpoena shall be enforced by order of the appropriate United States District Court." ROA.41.

Rather than comply or seek pre-enforcement review, RIH stalled—for months. In early conversations with counsel for RIH, the Department "communicated that it would be willing to receive documents responsive to the subpoena past the return date but that it did not expect to extend that grace period beyond reason." ROA.38. In turn, counsel for RIH communicated "several times that [RIH] intends to and would be producing responsive documents." *Id.*

Those assertions proved hollow. In August 2025, RIH provided its "one and only production," ROA.123—of a single, six-page document consisting of a list of names of hospital employees and certain drugs, ROA.6, 36. On February 4, 2026, RIH provided a "list of search terms Brown Health has used in its efforts to identify records that are

responsive to document requests 7-10 and 14 of the subpoena." Add.001.[3] If those search terms were ever used by RIH, all parties agree that it did not result in RIH producing any responsive documents to the Department. Thus, as of April 30, 2026—nearly ten months after the subpoena's issuance—RIH had produced to the Department just one document.

### C. Procedural History

Faced with RIH's prolonged noncompliance, the Department petitioned for enforcement in the Northern District of Texas. ROA.6-17. The petition explained that the subpoena is within the Department's statutory authority to investigate FDCA violations, seeks information relevant to the Department's investigation, and is neither overbroad nor unduly burdensome. *See id.* The same day, the district court signed an order granting the petition and directing RIH to produce responsive records within 14 days. ROA.72-73.

---

[3] The quotation here is from a letter RIH sent to the Department by email on February 4. Although the letter is discussed in both RIH's motion for stay pending appeal filed in the Northern District (ROA.97) and the district court's stay decision (ROA.154), and RIH filed as an exhibit the email conveying the letter (ROA.122), the letter itself was not included as an exhibit. We have attached the letter here for the Court's reference. *See* Add.001-004.

A few days later, on May 4, a third party—the Rhode Island Child Advocate—filed an action in the U.S. District Court for the District of Rhode Island seeking to collaterally attack Chief Judge O'Connor's enforcement order. *See In re: Mot. to Quash Admin. Subpoena to R.I. Hosp.* (*In re: RIH*), No. 26-mc-0007 (D.R.I. filed May 4, 2026). The Advocate sought to quash the same subpoena that the Northern District of Texas had already ordered RIH to comply with in its enforcement order.

Meanwhile, back in Texas, RIH on May 6 appealed, ROA.88, and sought a stay pending appeal from the Northern District, ROA.91-134. RIH raised a host of substantive and procedural objections to the enforcement order, including an objection to the government's filing the motion to enforce in Texas. ROA.91-110. RIH also attached several declarations and exhibits in support. ROA.117-134.[4] The court ordered

---

[4] RIH suggests it was "not permitted to develop a record" below and so must here cite "supporting documents filed in the District of Rhode Island." Br. 12 n.5. For example, RIH cites the Rhode Island declaration of Glenn Friedemann for the proposition that RIH "reserve[d] its right to object to the subpoena and pursue judicial relief." Br. 12 (citing Dkt. 28-8, *In re: RIH*). If that is true, it is unclear why Mr. Friedemann's declaration in the Northern District of Texas did not disclose that fact. *See* ROA.118-120. RIH's reliance on its declarant's

*Continued on next page.*

a response, ROA.135, and the government filed an opposition and submitted an ex parte declaration explaining that substantial operational and decision-making control of the investigation was exercised in the Northern District and that subjects and potential targets were located there. ROA.136-152.

On May 9, RIH sought a stay from this Court and requested a decision by May 12. Dkt.15-1 at 11. Its motion argued that the enforcement order denied RIH due process, that venue did not lie in the Northern District of Texas, and that the subpoena "lacks a congressionally authorized and legitimate investigatory purpose." Dkt.15-1 at 16. That same day, this Court directed the government to respond by noon on May 12. Dkt.19.

On May 10, four days before compliance was due, the district court denied RIH's stay request in a ten-page order, concluding that RIH was not likely to succeed on the merits of its objections to the subpoena or enforcement order. ROA.156-61. Beginning with RIH's procedural objection, the court explained that it had considered RIH's submissions,

---

statements in parallel litigation without acknowledging that same declarant's declaration here raises more questions than it answers.

along with arguments made to other district courts in related actions, and concluded that RIH's response "would not have changed the outcome" on the enforcement petition. ROA.159; *see* ROA.156-58. The court then rejected RIH's venue argument, crediting the government's declaration showing that "substantial operational and decision-making control of the investigation [was] being exercised" in the Northern District, which is also the location of several subjects and potential targets. ROA.159. As for RIH's objections to the subpoena's purpose and scope, the court explained that the government's submissions "detail[] precisely how and why each category of information the subpoena seeks is relevant and necessary to further" its FDCA investigation. ROA.161. Turning to the other stay factors, the court then found that RIH was not likely to suffer irreparable harm, and that the public interest and balance of equities favored prompt compliance to avoid further obstructing the government's ongoing investigation. ROA.161-63. The district court nonetheless stayed enforcement of the subpoena until this Court ruled on RIH's motion for a stay pending appeal—carving out only "responsive non-privileged documents without a valid legal objection." ROA.163.

RIH, meanwhile, made clear its intent to undercut any unfavorable ruling from the district court or this Court—indeed, as the district court explained, to "circumvent" this Court's "authority." ROA.336. On the same day RIH moved for a stay pending appeal from this Court, it successfully moved to intervene in the parallel action filed in the District of Rhode Island by the Rhode Island Child Advocate. *See* Mot. to Intervene, Dkt.20, *In re: RIH*. On May 11, while RIH's stay motion before this Court was still pending, RIH filed its own emergency motion in the District of Rhode Island action, seeking to quash the subpoena that Chief Judge O'Connor had already enforced. *See* Mot. to Quash, Dkt.28, *In re: RIH*. Unlike with the Advocate's motion, the Rhode Island court did not order a response to either RIH's motion to intervene or motion to quash, and thus the government did not respond to RIH's motion before the hearing in Rhode Island.

On May 12 (the same day the government's stay opposition in this Court was due), the District of Rhode Island (Judge Mary McElroy) held a hearing on RIH's and the Advocate's collateral attack motions. *See* ROA.347-540 (hearing transcript). During that hearing, this Court denied RIH's stay motion (on the timeline RIH requested), which Judge

McElroy acknowledged on the record. ROA.479. Counsel for RIH retook the podium and stated: "The Fifth Circuit has now denied our request for a stay and we would ask the Court, if the Court is inclined, to quash the subpoena both as to the request from the Child Advocate, but on behalf of Rhode Island Hospital in full." ROA.526. Counsel also requested the Rhode Island court order the government "be enjoined from seeking to collect [or] receive" any "records that are responsive to the subpoena issued to Rhode Island Hospital." ROA.527.

RIH's gambit succeeded. Judge McElroy quickly issued an order purporting to quash the subpoena that Chief Judge O'Connor had already enforced in an order this Court declined to stay. *See In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, 836 F. Supp. 3d 459, 463 (D.R.I. 2026); ROA.305. For good measure, Judge McElroy also granted RIH's request to broadly enjoin the government from "seeking or receiving any documents related to this now invalid subpoena."[5] *Id.*; ROA.305.

---

[5] The Rhode Island court's opinion made a series of statements asserting that the Department misled that court (or the Northern District) as to the content and extent of its communications with RIH before April 30. The district court also referred this matter "for further

*Continued on next page.*

RIH now states that the injunction bars only the government's receipt of "any patient-identifying information or protected health information produced by RIH." Br. 21 (quoting ROA.327). That is belied both by RIH's conduct and the Rhode Island court's order. After winning the injunction, RIH filed an emergency motion asking Judge McElroy to clarify her vague order, requesting "clarif[ication] that the DOJ is without authority to enforce the now-invalid subpoena in *any* respect." *In re: RIH*, Dkt.41 at 2 (emphasis added). Judge McElroy then entered a text order granting that request "in part," and attached an amended order. The amended order states: "the Court GRANTS both Motions to Quash and enjoins the DOJ from seeking or receiving *any* documents related to this now invalid subpoena." ROA.305 (emphasis added). The Department takes the amended order, and the Rhode Island court, at its word.

---

proceedings under R.I. Dist. Ct. Local Rule 210(b)." *In re: RIH*, Dkt. Text Order (June 5, 2026). Those statements are not relevant to the questions on appeal, and the Department will respond as appropriate to the district court's assertions in the necessary forum. But for now, we note that the Department disagrees in the strongest terms with the district court's statements, which were based on an incomplete record of the Department's discussions with RIH.

The government promptly appealed that order and received expedited consideration from the First Circuit, which will hear argument on October 7. Order, *In re: RIH*, No. 26-1568 (Aug. 26, 2026). In the collateral appeal, RIH leads with the same arguments that it previously advanced to both the Northern District and this Court in the stay proceedings, but did not renew in this brief. It argues at length that collateral quashal was proper because the subpoena was issued for an "improper purpose" and lacks "congressional authorization." *See* Br. of Appellee RIH at 32, 37, *In re: RIH*, No. 26-1568 (filed July 17, 2026). Those arguments were not only rejected by the district court here (and this Court in denying a stay pending appeal), but have also been rejected by the only other appellate court to consider them. *QueerDoc*, 2026 WL 2359440.

### D. The Northern District Protects Its Jurisdiction

After Judge McElroy granted RIH relief this Court would not, RIH notified Chief Judge O'Connor of its view that compliance with his enforcement order was "not legally required or justified." ROA.272. The Northern District then held a status conference to address preservation and compliance amid the two conflicting orders. ROA.571-

93. After the hearing, the court below ordered RIH to produce responsive records in camera, beyond the government's access, while appellate review proceeded. ROA.337-38. The court explained that RIH's "flagrant attempts to avoid compliance with lawful orders," along with its efforts to "circumvent the authority of this Court and the Fifth Circuit," required that preservation measure. ROA.336-37. Though RIH had previously asserted that compliance would result in "irreparable monetary harm," ROA.107, it does not challenge that aspect of the court's order on appeal. Br. 22 n.10.

In the same order, the Northern District directed RIH only to seek relief from its orders before it, this Court, or the United States Supreme Court. Outside those courts, the order prohibits RIH "from seeking relief, encouraging others to seek relief, or cooperat[ing] with others in seeking relief" that is "related to these proceedings." ROA.338. The court explained this restraint would avoid further duplicative proceedings, rulings trenching on sister courts' authority, and piecemeal resolution of issues requiring a uniform answer. *Id.*

Notably, the Northern District's order required RIH to make an initial in camera production by midnight on May 19. ROA.338. On the

morning of May 19, the Advocate asked the First Circuit for an emergency injunction pending appeal barring RIH from complying with the Northern District's in camera production order. A panel of the First Circuit unanimously denied that extraordinary request, Order, *In re: Mot. to Quash Admin. Subpoena to RI Hosp.*, 26-1568 (1st Cir. May 19, 2026), and RIH has since started producing documents in camera to the Northern District, ROA.339-340.

## SUMMARY OF ARGUMENT

**I.** RIH received constitutionally sufficient process before producing any responsive records pursuant to the enforcement order. After the order was entered, RIH presented all of its arguments and evidence in a stay motion to the district court. After considering those submissions along with the government's response, the court held that RIH's objections lacked merit under any standard and would not have changed its decision on the enforcement petition. Even so, after considering RIH's arguments and evidence, the district court largely stayed its enforcement order pending this Court's decision on RIH's stay request.

RIH received an "opportunity to present all of its arguments and evidence" against enforcement before it had any obligation to produce responsive documents. *Luig v. N. Bay Enters., Inc.*, 817 F.3d 901, 905 (5th Cir. 2016). Due process requires nothing more. Courts of appeals, including the Fifth Circuit, recognize that an initial failure to be heard can be remedied by subsequent process. *See id.*; *accord e.g.*, *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 847 F.2d 775, 778 (11th Cir. 1988). Moreover, this Court has refused to allow a properly subpoenaed party to obstruct a lawful investigation by invoking "procedural miscues" in district court, at least where there is "no basis in the record for quashing the subpoena." *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989).

**II.** The district court properly enjoined RIH from seeking to further undermine its jurisdiction through collateral litigation outside the Fifth Circuit. A federal district court has broad equitable authority—both inherent and under the All Writs Act—to protect the integrity of its judgment. RIH devotes substantial briefing to attacking the injunction as if it were a pre-filing suit sanction entered against a vexatious litigant. It plainly is not. The narrow injunction is rather an

ordinary application of the first-filed rule, issued in response to RIH's extraordinary effort to evade the jurisdiction of both the district court and this Court. Properly framed, RIH's various objections collapse; the injunction is not overbroad nor vague, and a court need not warn a party of its intention to prohibit further attacks on its jurisdiction.

## STANDARD OF REVIEW

The Court reviews enforcement of an administrative subpoena under the deferential abuse of discretion standard. *McLane Co. v. E.E.O.C.*, 581 U.S. 72, 75 (2017). A district court's entry of an injunction is likewise reviewed for abuse of discretion. *Newby v. Enron Corp.*, 302 F.3d 295, 301 (5th Cir. 2002).

## ARGUMENT

### I. RIH's Procedural Objection Fails.

#### A. The timing of the enforcement order does not require vacatur.

After the district court enforced the subpoena here, RIH moved to stay the enforcement order pending appeal. In doing so, RIH advanced a variety of objections to the subpoena, including asserting that the Northern District of Texas was an improper venue for an enforcement action, that the subpoena was issued for an improper purpose and

lacked congressional authorization, and that the subpoena was overbroad. ROA.101-06. It also submitted declarations and exhibits related to RIH's negotiations with the federal government about the subpoena, RIH's ability to produce responsive records, and RIH's objections to doing so. ROA.117-34. The government substantively responded to that motion, explaining why RIH's arguments were mistaken and further providing an *ex parte* declaration conveying further information relevant to RIH's venue objection. ROA.136-52. The district court denied a stay pending appeal in a reasoned opinion, rejecting RIH's objections to venue, ROA.159, the lawfulness of the subpoena, ROA.160, and the asserted overbreadth of the subpoena, ROA.160-61. RIH then raised the same substantive objections to this Court in seeking a stay pending appeal, Doc. 15-1 at 13-21, and this Court denied that stay after the government responded—again addressing RIH's arguments on the merits.

Despite asserting in its stay papers that its appeal to this Court would "raise multiple challenges to the subpoena's enforcement" on which RIH was "likely to succeed," Doc. 15-1 at 21, RIH's opening brief attempts to abandon all of its substantive arguments about the

lawfulness of the subpoena. RIH instead rests entirely on the assertion that it was denied due process in this case because the district court entered its enforcement order before RIH responded to the government's motion.

RIH's reluctance to brief its substantive objections is understandable, given this Court's denial of a stay and the Ninth Circuit's rejection of several substantively identical arguments. *QueerDoc*, 2026 WL 2359440. But RIH fares no better in limiting its appeal to its due process contentions. RIH advanced all of its substantive objections to the subpoena before the district court, including submitting the evidence it believed bolstered those objections. The government substantively responded to those objections, and the district court rejected them on their merits. This Court then considered those same objections and denied a stay. All of that occurred before RIH would have incurred any obligation to produce a single document in response to the district court's order. And RIH could have raised—and indeed asserted that it would raise—the same arguments to this Court in this appeal, and this Court would have conducted de novo

review of many of RIH's assertions. Against that backdrop, RIH's assertion that it was deprived of due process rings hollow.

**1.** Due process asks whether a party received a meaningful chance to be heard before being "finally deprived" of a protected interest. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). Due process is "flexible" and calls for "such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (quotation omitted). Its core is notice and an "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333. (quotation omitted).

That standard is being applied here in the context of proceedings to enforce an administrative subpoena, which this Court has "consistently recognized" are "summary" in nature. *Burlington N.R.R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*, 983 F.2d 631, 637 (5th Cir. 1993); *see United States v. Zadeh*, 820 F.3d 746, 756 (5th Cir. 2016) (applying this standard to subpoena seeking medical records). The requirements for enforcement are "minimal"—courts "will enforce" an administrative subpoena "if: (1) the subpoena is within the statutory authority of the agency; (2) the information sought is reasonably

relevant to the inquiry; and (3) the demand is not unreasonably broad or burdensome." *Burlington*, 983 F.2d at 637-38. Moreover, as to HIPAA subpoenas in particular, § 3486 grants a subpoenaed entity an opportunity to be heard in its home district: a recipient may seek quashal or modification at any time before the return date. 18 U.S.C. § 3486(a)(5). RIH knew of the subpoena and its terms for months, during which it neither produced responsive records nor sought pre-enforcement review.

Nor was the eventual enforcement order a denial of due process. Here, the government submitted a detailed enforcement petition explaining the basis for the investigation, the statutory authority for the subpoena, the categories of information sought, and RIH's prolonged noncompliance. ROA.6-17. The district court reviewed those submissions and granted the petition after concluding that the subpoena satisfied the governing—and narrow—standards. ROA.154-163.

RIH also received an "opportunity to present all of its arguments and evidence" against enforcement before it had any obligation to produce responsive documents. *Luig*, 817 F.3d at 905. The enforcement

order did not require compliance for fourteen days, and RIH took advantage of this opportunity by presenting its merits arguments to the district court here in its motion to stay, which the court denied in a reasoned order after adjudicating them de novo. Due process requires nothing more: RIH was heard "in a meaningful manner" and "at a meaningful time." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). The district court, after all, largely stayed its enforcement order in response to RIH's motion, pending a decision from this Court, despite its conclusion that those arguments lack merit.

In particular, the district court below addressed RIH's procedural objection, venue argument, and merits challenges at length. It concluded that RIH "fail[ed] to demonstrate a likelihood of success on the merits." ROA.161; *see also* ROA.159 (concluding that RIH "made no showing as to why it is legally justified in withholding compliance"). The court specifically explained that it had also considered "the arguments in opposition that have been made to other district courts," together with RIH's present arguments, and nonetheless concluded "the Government's inquiry is legitimate" and "the records sought are relevant." ROA.157. And significantly, moving past the stay request,

the court also made clear that "RIH's opposition would not have changed the outcome of the Court's ruling" on the petition to enforce. ROA.159.

That was more than sufficient in this context. This Court and others have recognized in a variety of circumstances that any error a district court commits in failing to consider a party's arguments at a particular stage of a case can be cured by the court's consideration of those arguments by another means. Those principles reflect the common-sense recognition that "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *see* Fed. R. Civ. P. 61 (directing courts to "disregard all errors and defects that do not affect any party's substantial rights").

For example, this Court has treated consideration through a Rule 59(e) motion for reconsideration sufficient to cure any error in a district court's *sua sponte* grant of summary judgment where the party had "the opportunity to present all of its arguments and evidence" in connection with reconsideration. *Luig*, 817 F.3d at 905. Other Courts apply the same rule. As the Eleventh Circuit has put it, "[c]ases have consistently held that a violation of procedural due process may be waived or cured."

*Nat'l Ass'n of Letter Carriers*, 847 F.2d at 778 (citing *Glenn v. Newman*, 614 F.2d 467, 472 (5th Cir. 1980)); *see also, e.g., In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009) (appellant did not suffer a "complete denial of the opportunity to be heard" when he "had the opportunity to be heard via his motion to alter or amend"); *In re Wade*, 948 F.2d 1122, 1125 (9th Cir. 1991) (due process satisfied when the court "thoroughly considered" arguments raised in "motion for reconsideration").

Even aside from these cases, the district court's express determination that RIH's arguments would not have altered the outcome below forecloses RIH's procedural objection. This Court has held that in some circumstances a district court does not violate a party's due process rights by ruling before a response is filed—and where the party has never obtained a ruling from the district court on the substance of the party's arguments—where "the response would [not] have affected the outcome." *United States v. Rand*, 924 F.3d 140, 145 (5th Cir. 2019). And more generally, this Court has recognized that "procedural miscues" do not automatically require "remand for reconsideration under the proper procedure," as that would "waste

precious resources" where the proper result is clear. *Sandsend*, 878 F.2d at 881.

**2.** RIH's only answer is that all of the process it received does not count because its arguments against enforcement were adjudicated in the context of a motion for stay pending appeal. Br. 33. Specifically, RIH says that a stay motion carried a heavier burden than opposing enforcement in the first place. *Id.* That observation does not help RIH. Consider this Court's decision in *Luig*. There, the district court entered summary judgment sua sponte and without notice. *Luig*, 817 F.3d at 904-05. This Court nevertheless held that later consideration of a Rule 59(e) motion—giving the losing party an "opportunity to present all of its arguments and evidence"—"cured" the initial procedural defect. *Id.* at 905. That later opportunity counted even though Rule 59(e) is typically an "extraordinary remedy." *Id.* at 906; *see Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (Rule 59(e) "serves the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence"). The Seventh and Ninth Circuits have similarly concluded that due process does not turn on the caption a litigant places on its filing. *See In re Bartle*, 560 F.3d

at 730 (Rule 59(e) motion); *In re Wade*, 948 F.2d at 1125 (motion for reconsideration).

And even setting that aside, the district court made clear that its rejection of RIH's merits arguments both applied to the stay motion itself and "would not have changed the outcome of the Court's ruling" on the enforcement petition because RIH "made no showing as to why it is legally justified in withholding compliance." ROA.159. This Court thus need not speculate as to whether the standard of review might have made a difference—the district court explicitly stated that even in the enforcement posture, RIH's arguments are unpersuasive.

RIH's cases (at Br. 34-35) are not to the contrary. Those cases involved no comparable cure. *Peralta v. Heights Medical Centers, Inc.*, 485 U.S. 80 (1988), concerned a default judgment entered without valid service, followed by a completed lien and sale. The losing party never received a predeprivation chance to defend. *See id.* at 84-87. *Republic National Bank of Dallas v. Crippen*, 224 F.2d 565 (5th Cir. 1955), and *Council of Federated Organizations v. Mize*, 339 F.2d 898 (5th Cir. 1964), likewise involved judgments where the complaining party had been deprived of an opportunity to present evidence or argument.

*Crippen*, 224 F.2d at 566 (party barred from introducing "any evidence in support of their claims"); *Mize*, 339 F.2d at 900-01 (litigant denied "an opportunity to be heard"). Cases involving "a complete denial of the opportunity to be heard" are of no relevance here, where RIH had an opportunity to be heard by the district court (and by this Court) before the deadline to produce responsive documents. *In re Bartle*, 560 F.3d at 730.

For similar reasons, RIH's reliance on cases like *Sandsend* and *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548 (5th Cir. 2012), is misplaced. Unlike here, in those cases the district court never issued an order considering the nonmoving party's arguments and explaining why they fail. And here, unlike those cases, RIH did not invoke its statutory right to seek quashal or modification of the subpoena, instead delaying for ten months while producing virtually nothing. RIH has not been "robbed" of "its right to be heard." Br. 26-27 (quoting *Sandsend*, 878 F.2d at 881).

Indeed, properly considered, *Sandsend* supports the government. There a district court granted a motion to quash before the agency's response was due, even though the relevant statute required the court

to first order a response from the government. 878 F.2d at 881. This Court found that the district court had committed "a plethora of procedural errors," including denying the agency an opportunity to be heard. *Id.* at 881. But the opinion did not end there. *Sandsend* held that remand would "waste precious resources" if the record permitted "only one resolution." *Id.* This Court then accepted the subpoena opponent's factual account, decided the legal objections itself, and reversed quashal—"direct[ing] the district court to ENFORCE the subpoena." *Id.* at 881-82. The Court also specifically rejected the opponent's plea for a remand to answer facts submitted by the agency on reconsideration; the party had put "its best foot forward on appeal," and even accepting its account, "the subpoena must stand." *Id.* at 882 n.7.

That disposition cannot be reconciled with RIH's apparent theory that denial of a pre-order response always compels vacatur. *Sandsend* establishes that even where a response is denied in error, this Court will direct compliance with a lawful subpoena when further proceedings or the appellate record show that the subpoena meets the requirements for enforcement.

### B. The record permits only enforcement.

Even if RIH's procedural objection were colorable, this Court's own precedent makes enforcement the only lawful result on this record. This Court should affirm the district court's determination that "the subpoena was issued within the Department['s] . . . statutory authority, the subpoena seeks documents reasonably relevant to the investigation, and the subpoena's demands are reasonable." ROA.70.

**1.** To start, RIH badly errs by arguing that its "response would not have been futile." Br. 37. RIH says that it "would have" made several "meritorious arguments" against the subpoena's enforcement, including:

- The subpoena was issued for an improper purpose (at Br. 37);
- The subpoena is overly overbroad and unduly burdensome (at Br. 37);
- Venue is improper in the Northern District (at Br. 38-39);
- Anonymization "could have" been litigated (at Br. 38).

RIH's suggestion—that it "would have" or "could have" raised these arguments below had the district court acted differently—ignores

that RIH in fact made these exact arguments to the district court and this Court in seeking a stay. RIH argued that:

- The subpoena lacks "a congressionally authorized and legitimate investigatory purpose" (ROA.103; ROA.104-05)—*i.e.*, that it was issued for an "improper purpose" (ROA.106);
- The subpoena "overly broad and burdensome" (ROA.106-07);
- Venue is improper and lies only in the "command center" or "hub" of the investigation (ROA.101-02).

As to anonymization, RIH expressly argued that compliance would be costly and burdensome in part because "[a]ny production" would involve "anonymizing . . . documents for privilege and confidentiality." ROA.107-08. RIH again distorts the record by suggesting that the Northern District was unaware of the Department's position on anonymized patient records. *See* Br. 37-38. It is true that, during the hearing in Rhode Island, the government reiterated that it would accept anonymized patient records in the first instance. ROA.448. What RIH omits is that by the time of that hearing, RIH's own declarant had already told Chief Judge O'Connor the same thing—that the Department "has agreed to accept anonymized patient records in other

litigation involving similar subpoenas," ROA.120—an assertion that the Department never disputed in its response, *see* ROA.136-52.

**2.** The record speaks for itself. All of the arguments that RIH only gestures at in this Court were already aired before the district court below. The court simply determined they were meritless. RIH, of course, could have raised those arguments in greater detail here—as it said it would in its stay motion—but has chosen not to do so. That is basis enough to affirm. In any event, none of RIH's arguments have merit, and this Court should make that clear.

*First*, venue was proper in the Northern District. HIPAA authorizes enforcement in "any court of the United States within the jurisdiction of which the investigation *is carried on*." 18 U.S.C. § 3486(c) (emphasis added). That standard is met here. As the government explained in an ex parte declaration from the Acting Director of the Department's Enforcement and Affirmative Litigation Branch that the district court credited, "there is substantial operational and decision-making control of the investigation being exercised at the U.S. Attorney's Office in the Northern District of Texas, along with several subjects and potential targets of the investigation located

therein." ROA.159 (citing Sealed Hsiao Decl. (ex parte), ECF No. 10-1). RIH suggests here (as it argued in seeking a stay) that for nationwide investigations, venue only lies in the district where the investigation's "hub" is located (which RIH says is the District of Columbia). Br. 38-39. But that is not the statute Congress drafted. HIPAA provides for venue (*inter alia*) in "*any* court of the United States within the jurisdiction of which the investigation is carried on," 18 U.S.C. § 3486(c) (emphasis added)—not just in the co-called "hub" (or "command center," ROA.102) of the investigation. RIH's cases (at Br. 39 and ROA.102) are still not to the contrary: they also recognize that when an agency is investigating multiple potential targets based on a nationwide practice, venue may lie where any of the subjects are located or "wherever suspect practices are investigated to any substantial degree." *FTC v. Jim Walter Co.*, 651 F.2d 251, 254 (5th Cir. 1981); *see N.L.R.B. v. Cooper Tire & Rubber Co.*, 438 F.3d 1198, 1204 (D.C. Cir. 2006) (subpoena could not be enforced in Washington, D.C. to investigative conduct in Mississippi "in the absence of [a] nationwide investigation").

*Second*, it is even less surprising that RIH does not renew its "improper purpose" argument in this Court. *Cf.* Br. 37. Again, that

argument has already been squarely rejected by a panel of the Ninth Circuit in a challenge to a materially identical subpoena issued as part of this same investigation. *QueerDoc*, 2026 WL 2359440. The argument is also baseless on its own terms, as this Court should make clear. "[T]here is nothing improper about a President having policy preferences and directing the Executive Branch to enforce federal law in a manner consistent with those preferences." *Id.* at *12. Indeed, the improper purpose theory RIH advanced before the district court and in its stay papers here would have remarkable consequences, suggesting that an administration's policy views—such as a desire to ban sports gambling—could effectively immunize affected industries or practices from federal investigation for compliance with existing federal law. That sort of policy disagreement is not the "specific evidence of improper intent" that is required to overcome the "presumption of regularity" that applies to Department investigations. *Id.* at 13, 14. And RIH's references to the decisions of certain other district courts—decisions the district court considered in rejecting this argument (at ROA.157)—only underscore the point, as those decisions accepted the flawed logic that *QueerDoc* rejects.

In seeking a stay, RIH relatedly argued that the government's investigative theory "is contrary to" the FDCA. Dkt.15-1 at 18. That is, RIH contends that its conduct could not possibly be subject to FDCA liability, and so the subpoena is invalid. This implausible argument fails several times over. To start, courts have long recognized that subpoena proceedings are not to be used to pre-litigate potential statutory theories of liability; a subpoena is enforceable so long as the agency's assertion of investigative "authority is not obviously apocryphal." *United States v. Sturm, Ruger & Co.*, 84 F.3d 1, 4 (1st Cir. 1996); *see also, e.g.*, *F.T.C. v. Swanson*, 560 F.2d 1, 2 (1st Cir. 1977) (enforceable even if the agency's "regulatory jurisdiction" is "clouded"). The subpoena here easily satisfies that standard. In any event, the Department's investigatory theory is neither novel nor suspect. The Department has explained that it is investigating potential misbranding by drug manufacturers and distributors. No one disputes that such entities can violate the FDCA by engaging in such conduct, nor is there any serious dispute that RIH—as the recipient of communications from manufacturers and distributors—may be a witness to such misconduct. *See QueerDoc*, 2026 WL 2359440, at *9

(provider "may possess information relevant to DOJ's broader investigation of manufacturers and distributors"). The Department has also explained that the information returned by the subpoena could demonstrate misconduct by RIH or its employees under the FDCA. *See QueerDoc*, 2026 WL 2359440, at *9 (provider "may itself be misbranding drugs in violation of the FDCA"). To take one example, RIH or its providers may have conspired with drug manufacturers or distributors to misbrand drugs in violation of the FDCA—a theory the Department has previously charged. *See, e.g.*, Indictment, *United States v. Gleason*, No. 1:06-cr-229 (E.D.N.Y. Apr. 5, 2006), Dkt.8. This Court should therefore join the Ninth Circuit and hold that the subpoena seeks information relevant to an investigation within the Department's statutory authority.

*Last*, RIH fares no better by suggesting the subpoena is overbroad and unduly burdensome. Because the Department's "inquiry" is a "broad one," the "permissible scope of materials that [can] reasonably be sought [is] necessarily equally broad." *McPhaul v. United States*, 364 U.S. 372, 382 (1960). And the Department's requests are not atypical in this area. *See, e.g.*, *In re Subpoena Duces Tecum*, 228 F.3d 341, 350 (4th

Cir. 2000) ("[I]f Bailey had treated 15,000 patients over a period of seven years and all of them were reimbursed on claims he submitted, a suspicion of fraud on these claims would justify a review of Bailey's documentation of services to these patients, of the claims submitted on their behalf, and of the reimbursements collected."); *cf. Zadeh*, 820 F.3d at 758 ("the subpoena was not unduly broad or burdensome" despite "implicating privacy interests of patients"). The subpoena is also not unduly burdensome. Given that RIH has chosen not to appeal the district court's in camera production order, it is difficult to see how compliance could possibly "threaten[] to unduly disrupt or seriously hinder normal operations of [RIH's] business." *Jim Walter Co.*, 651 F.2d at 258; *see also, e.g.*, *QueerDoc*, 2026 WL 2359440 (collecting cases and explaining that an agency may permissibly require "production of a large volume of documents or a high proportion of the recipient's records").

***

Having chosen to raise only a procedural objection to the enforcement order in this appeal, RIH cannot obtain reversal by making passing references to other substantive arguments that it wrongly

claims to have lacked an opportunity to present below. That is doubly true given that those substantive arguments—which RIH has apparently attempted to reserve for the parallel First Circuit appeal—fail on their merits. In these circumstances, this Court should make clear that RIH's objections to compliance lack merit, as the Ninth Circuit recently did in rejecting many of the same arguments. *See QueerDoc*, 2026 WL 2359440. Affirmance would therefore be required even if RIH did not already receive all of the process it was due and more. *Sandsend*, 878 F.2d at 879; *Rand*, 924 F.3d at 145.

## II. The District Court Properly Protected Its Jurisdiction.

RIH spends many pages attacking an injunction that the district court did not enter. Br. 42-57. The court did not "sanction" RIH for "vexatious or harassing conduct." Br. 41, 44. The district court merely enjoined RIH from seeking (further) relief from the enforcement order outside the Northern District, this Court, or the Supreme Court. ROA.338. That injunction amounts to an ordinary application of the first-filed rule to RIH's extraordinary attempt to evade the jurisdiction of both this Court and the court below. The resulting order was well within the district court's discretion.

**1.** The first-filed rule disposes of most of RIH's arguments. When related actions proceed in coordinate federal courts, "the court with 'prior jurisdiction over the common subject matter' should resolve all issues presented in related actions." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir. 1985) (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)). That rule reflects principles of comity and sound judicial administration. It prevents "the waste of duplication," competing rulings that "trench upon the authority of sister courts," and "piecemeal resolution of issues that call for a uniform result." *Id.* at 729.

The first-filed rule gives the first-filed court authority to decide whether a later action involving substantially overlapping issues should proceed. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 605-06 (5th Cir. 1999). The upshot is that the first-filed court "may, in its discretion, enjoin the filing of related lawsuits in other federal courts." *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 185 (1952)). Such an injunction may also apply to "non-parties." *Id.* (citing *United States v. Hall*, 472 F.2d 261 (5th Cir. 1972)). This Court, for

example, has "approv[ed] [a] desegregation order prohibiting 'all persons' from taking certain actions and providing for criminal contempt sanctions against 'anyone having notice of this order.'" *Id.* (quoting *Hall*, 472 F.2d at 264).

The May 18 order followed from a straightforward application of the first-filed rule. The Department filed its enforcement petition in the Northern District on April 30, the district court ordered enforcement, and the Rhode Island Child Advocate did not file the competing action until May 4. RIH then intervened in the second-filed action and, on May 11, asked the Rhode Island court to quash the very subpoena already reduced to judgment in Texas. After this Court declined RIH's stay request, RIH then urged the Rhode Island court to enjoin the government from seeking or obtaining any responsive records. In other words, RIH "sought to circumvent the authority of [the Northern District] and the Fifth Circuit and attempted to collaterally attack the Enforcement Order." ROA.336-37.

RIH succeeded. After the first-filed district court required RIH to produce subpoenaed records, the second court purported to quash that

same subpoena and enjoined the government from seeking or receiving any records responsive to it.

The first-filed rule is designed for this very situation. And it gives the first-filed court the authority "to prevent" the "abuse[]" that occurs when one district court "act[s] as a super appellate court" over another. *Cadle Co.*, 174 F.3d at 606. Indeed, this Court has "long advocated" for district courts to "exercise their discretion to avoid duplication of proceedings." *Schauss*, 757 F.2d at 654. That is exactly what the Northern District did here. The notion that the Northern District lacked "an adequate factual basis" for its injunction blinks reality. Br. 44.

**2.** RIH contends that its collateral attack was "permissible" because it believes the enforcement order is "void." Br. 47. As explained, RIH is wrong about that; it received all the process it was due. *See supra* at 28-39. And regardless, a federal district court's orders "are to be respected" until "reversed for error by orderly review, either by itself or by a higher court." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995). As this case vividly illustrates, any other

approach would "seriously undercut[] the orderly process of the law." *Id.*

More fundamentally, even if RIH's due process argument were colorable, it would not divest the first-filed court of its authority to enjoin further duplicative litigation. For purposes of the first-filed rule, the inquiry is "limited" to "the potential overlap between the two cases." *Cadle Co.*, 174 F.3d at 606. Indeed, even where there is a "jurisdictional dispute in the first-filed court," application of the first-filed rule "is reserved only for the first-filed court." *Id.* at 605-06. The Northern District is indisputably the first-filed court, and so it had authority to prohibit RIH from seeking relief related to its proceedings through further improper collateral attacks. A federal court has "inherent power . . . to protect its ability to render a binding judgment," *Hall*, 472 F.2d at 267, and the propriety of the district court's injunction here is confirmed by the All Writs Act, which empowers district courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a).

**3.** RIH's remaining objections to the injunction fail. RIH devotes much attention (Br. 42-50) to cases involving pre-filing

sanctions, typically orders that preclude a vexatious litigant from filing any action in any forum, regardless of subject matter. *E.g.*, *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 187 (5th Cir. 2008) ("A district court has jurisdiction to impose a pre-filing injunction to deter vexatious, abusive, and harassing litigation."). But those cases have no relevance here: as discussed, the order at issue follows from the district court's authority to preserve its ability to render and effectuate a judgment in a specific first-filed case pending before it. *See Schauss*, 757 F.2d at 654 (a district court "may, in its discretion, enjoin the filing of related lawsuits in other federal courts"). RIH's overbreadth argument repeats the error, relying exclusively on cases involving pre-filing sanctions. Br. 50-52. Neither logic nor law suggests that the equitable considerations for a pre-filing sanction apply to injunctions issued to vindicate the first-filed rule. The latter is not justified by the litigant's general history or subjective bad faith, but the need to prevent duplicative proceedings, conflicting rulings, and interference with the first court's jurisdiction. *West Gulf Mar. Ass'n*, 751 F.2d at 728-29. Indeed, RIH's continued insistence that it may properly collaterally attack the same judgment that it now asks this Court to review and

that this Court declined to stay explains precisely why the district court's injunction properly "extends to nearly every court nationwide." Br. 50. If RIH wants "permission" to engage in further collateral litigation in contravention of the first-filed rule, it must seek to dissolve or modify the injunction. Br. 50.

Nor is the injunction "impermissibly vague." Br. 52. "An injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981). The injunction here restricts only efforts to obtain relief "related to these proceedings" in other courts, and it makes clear that RIH may "seek reconsideration or file any other motion" in the appropriate district or appellate court (that is, this Court, the Supreme Court, or the Northern District of Texas). ROA.338. The "proceedings" were the first-filed subpoena-enforcement matter. The "relief" that triggered the order was RIH's request that another district court quash the subpoena and nullify the enforcement order. An "ordinary person" would thus understand the paragraph to prohibit RIH from initiating or materially assisting a proceeding—outside the Northern District, this Court, or the Supreme Court—that

asks a court to invalidate the enforcement order or otherwise grant relief whose operative effect is to nullify that order. *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) (per curiam). The accompanying explanation removes any doubt: the order states that it is entered to prevent further duplication, conflicting rulings, and piecemeal adjudication. The injunction is therefore unlike the injunction vacated in *Scott*, Br. 53, which ordered an official to maintain unspecified "policies, procedures, and directives." *Id.* at 212-13.

The phrases "encouraging," "cooperat[ing]," and "aiding and abetting" are also sufficiently pellucid. *Cf.* Br. 54. They close an obvious loophole: RIH may not do through a proxy what it may not do itself. Indeed, Rule 65 operates similarly and through similar language: an injunction binds a party as well as its agents and persons who act in "concert" or "participation" with it. Fed. R. Civ. P. 65(d)(2). RIH's related suggestion that it has had to litigate its collateral First Circuit appeal under uncertainty and pain of contempt is difficult to take seriously. If RIH truly had "doubts as to the applicability of the injunction," it would have "petition[ed] the court granting it for a modification or construction of the order." *Regal Knitwear Co. v.*

*N.L.R.B.*, 324 U.S. 9, 15 (1945). The procedure is not foreign to RIH: recall that it hurried to file an emergency motion clarifying that the Rhode Island court's injunction means "DOJ is without authority to enforce the now-invalid subpoena in any respect." *In re: RIH*, Dkt.41 at 2.

RIH's halfhearted First Amendment objection is also unpersuasive in these circumstances. An ordinary English speaker would understand the order to merely regulate where RIH may seek judicial relief concerning this case. And it does not bar RIH from defending the existing First Circuit appeal or "communicat[ing] with the Child Advocate about that appeal." Br. 55. The government—not RIH—appealed the Rhode Island judgment to the First Circuit; RIH's defense of an already-entered judgment is not a new attempt to "seek[] relief" from a different court in violation of the Northern District's injunction. And again, RIH's failure to seek modification or clarification of the injunction is irreconcilable with its simultaneous assertion that "encouraging" or "cooperating" might be read to reach protected speech or ordinary participation in the First Cicuit appeal.

Finally, RIH's procedural objection to the injunction is baseless. Again citing only cases addressing the requirements of a pre-filing sanction, RIH contends that the injunction is improper because the district court entered the directive without advance notice of its exact terms. Br. 56-57. Not so. Leaving aside that RIH had an opportunity at the status conference to address how the case should proceed in light of the inter-court conflict it created, RIH cites no case holding that a court must provide advance notice that it intends to enjoin a party that has already sought to undermine its jurisdiction. And for good reason: courts must be able to issue orders "directed to protecting the court's judgment" that are "tailored to the exigencies of the situation." *Hall*, 472 F.2d at 266-68 (court had "inherent power to protect its ability to render a binding judgment between the original parties . . . by issuing an interim ex parte order against an undefinable class of persons"). And RIH's failure here to identify anything that would have changed the district court's righteous application of the first-filed rule, along with its failure to seek reconsideration or clarification, would make any procedural error harmless in these circumstances.

## CONCLUSION

The Court should affirm the enforcement order and the May 18 injunction.

Respectfully submitted,

RYAN RAYBOULD
United States Attorney

ETHAN WOMBLE
*Assistant United States Attorney*
*U.S. Attorney's Office*
*801 Cherry Street, Suite 1700*
*Fort Worth, Texas 76102*

BRETT A. SHUMATE
Assistant Attorney General

BRAD HINSHELWOOD
SARAH WELCH
BRANTLEY MAYERS
/s/ *John Bailey*
JOHN BAILEY
*Attorneys, Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
(202) 514-3180

September 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*s/ John Bailey*
John Bailey

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7) because it contains 11,007 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. Rule 32.2. This brief also complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font.

*/s/ John Bailey*
John Bailey

# ADDENDUM

McGuireWoods

McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
Phone: 412.667.6000
Fax: 412.667.6500
www.mcguirewoods.com

Eric G. Olshan
Direct: 412.667.7941
eolshan@mcguirewoods.com

February 4, 2026

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

**By Email (david.gunn@usdoj.gov)**

David Gunn
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 Fifth Street NW
Washington, DC 20001

Re: HIPAA Subpoena Issued to Rhode Island Hospital, No. 25-1431-032

Dear Mr. Gunn:

On behalf of our client, Lifespan Corp. d/b/a Brown University Health ("Brown Health"), we write to provide you with the following list of search terms Brown Health has used in its efforts to identify records that are responsive to document requests 7-10 and 14 of the subpoena (No. 25-1431-032) issued to Rhode Island Hospital, a subsidiary of Brown Health, pursuant to the Health Insurance Portability & Accountability Act ("HIPAA") of 1996, 18 U.S.C. § 3486:

- "off label"
- "on label"
- (F64 OR Z87 OR E34)
- Unapproved AND drug
- "Not approved" AND drug
- (FDA OR "Food and Drug Administration") AND approved OR evaluated
- (Promotion OR ad*) AND (drug OR medication)
- "Ask your doctor"
- "Reminder ad"
- "Reminder piece"
- "Results may vary"
- "Scientific exchange"
- "First and only"
- "First in class"
- "Mechanism of action"

- “Randomized controlled trial”
- “Clinical trial”
- “Safety profile”
- “Risk profile”
- “Benefit profile”
- “Well tolerated”
- “Response rate”
- “Response duration”
- (shown OR proven) AND (safe OR effective OR “help” OR “treat” OR “reduce”)
- (solicited OR unsolicited) w/10 request
- “Fair balance”
- gender w/3 (care OR dysphoria OR incongruence OR disorder OR clinic)
- LGBTQ OR LGBTQIA
- nonbinary
- “assigned male at birth” OR AMAB
- “assigned female at birth” OR AFAB
- “puberty blocker*”
- “GnRH agonist*” OR “gonadotropin-releasing hormone”
- leuprolide OR “Lupron”
- triptorelin
- histrelin
- testosterone
- estrogen
- hormon* w/5 (therapy OR sex OR care OR gender)
- GAHT
- “off label” w/15 (“puberty blocker*” OR hormone*)
- (“ICD code*” OR “diagnosis code*” OR “billing code*”) AND (f64 OR Z87 OR E34)
- (insurance OR claim OR bill*) AND (f64 OR Z87 OR E34)
- (bill* OR insurance OR claim) AND endocrin* AND ((gender* w/5 (treatment OR care OR hormon*)) OR puberty)
- (bill* OR insurance OR claim) AND ((gender w/5 (treatment OR care OR hormon*)) OR puberty)
- endocrine w/15 ((gender w/5 (treatment OR care OR hormon*)) OR puberty)
- (“alt* diagnosis” OR “alt* ICD code*”) AND (f64 OR Z87 OR E34)
- (protocol* OR guidance OR train* OR cod*) AND ((gender w/5 (treatment OR care OR hormon*)) OR puberty)
- presentation* AND (gender OR hormone OR puberty)
- (pharmac* OR medical) w/5 liaison
- (informed W/5 consent) AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- (patient W/5 intake) AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- (parent OR guardian) AND authoriz* AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- (minor W/5 patient*) AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)

- (adverse OR side OR unfavorable) w/3 (effect OR event OR consequence OR complication)
- (“off label” w/5 disclosure) AND ((gender w/5 (treatment OR care OR hormon*)) OR puberty)
- (FDA OR “food and drug administration” OR agency) AND (puberty OR hormone OR gender)
- (contract* OR agreement*) AND pharmac* AND ((gender W/5 (treatment OR care OR hormon*) OR puberty)
- (sponsor* OR consult*) AND agreement AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- grant* AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- (“off label” OR unapproved OR “FDA approved” OR directions) AND (gender W/5 (treatment OR care OR hormon* OR drug OR puberty))
- (financial OR promo* OR speak*) AND (arrang* OR engage*) AND ((gender W/5 (treatment OR care OR hormon*)) OR puberty)
- (“abbvie” OR “accord” OR “acerus” OR “actavis” OR “agile” OR “alembic” OR “alkem” OR “allergan” OR “alvogen” OR “alza” OR “amarin” OR “american regent” OR “amneal” OR “amphastar” OR “ani” OR “annora” OR “antares” OR “apotex” OR “ascend” OR “ascot” OR “aspen global” OR “aurobindo” OR “auxilium” OR “avion” OR “azurity” OR “barr” OR “barr” OR “bausch health” OR “bayer” OR “bel mar” OR “besins” OR “blue water biotech” OR “breckenridge” OR “bristol myers squibb” OR “cadence health” OR “chartwell” OR “chemo research” OR “cipla” OR “cmp development” OR “dr reddys” OR “duramed” OR “eli lilly and” OR “elkins” OR “encube ethicals” OR “endo” OR “epic pharma” OR “esi pharmacal” OR “eugia” OR “exeltis” OR “fosun pharma” OR “foundation consumer healthcare” OR “gd searle” OR “ge healthcare” OR “gedeon richter” OR “genzyme corporation” OR “glenmark” OR “graviti” OR “healthcare pharmaceuticals” OR “heather drug” OR “heritage pharma” OR “hetero labs” OR “hikma” OR “hong kong king friend industrial” OR “impax” OR “invagen” OR “inwood” OR “ivax” OR “janssen” OR “jubilant” OR “kv pharmaceutical” OR “l perrigo” OR “lannett” OR “lederle” OR “lotus pharmaceutical” OR “lpi holdings” OR “lupin” OR “marius” OR “mayne pharma” OR “medicines360” OR “meitheal” OR “millicent” OR “mutual pharmaceutical” OR “mylan” OR “naari pte” OR “natco pharma” OR “nexus” OR “novartis” OR “novast” OR “novel” OR “noven” OR “novitium pharma” OR “novo nordisk” OR “organon” OR “janssen” OR “ortho mcneil” OR “oxford” OR “padagis” OR “parke davis” OR “perrigo” OR “pfizer” OR “ph health” OR “pharmacia and upjohn” OR “pharmobedient” OR “population council” OR “prasco” OR “private formulations” OR “purepac” OR “quagen” OR “rising pharma” OR “rk pharma” OR “rubicon research” OR “sandoz” OR “savage laboratories” OR “schering” OR “shire development” OR “solaris pharma” OR “solvay” OR “strides pharma” OR “sumitomo pharma” OR “sun pharma” OR “superpharm” OR “tablicaps” OR “teva” OR “tolmar” OR “twi” OR “ubi pharma” OR “upsher smith” OR “usl pharma” OR “valeant” OR “vanguard” OR “verity” OR “vertical” OR “viatris specialty” OR “warner chilcott” OR “watson” OR “west ward pharma” OR “wilshire” OR “women first healthcare” OR “wyeth” OR “xiromed” OR “zydus”)AND (“desogestrel” OR “dienogest estradiol valerate” OR “drospirenone” OR “elagolix sodium” OR “estradiol” OR “norethindrone acetate” OR “medroxyprogesterone acetate” OR “testosterone cypionate” OR “testosterone enanthate” OR “levonorgestrel” OR

> “relugolix” OR “estrogens” OR (“ethynodiol diacetate” “ferrous fumarate”) OR “norethindrone” OR “norelgestromin” OR “norgestimate” OR “norgestrel” OR “segesterone acetate” OR “finasteride” OR “tadalafil” OR “fluoroestradiol” OR “histrelin acetate” OR “hydrochlorothiazide spironolactone” OR “leuprolide acetate” OR “mestranol” OR “methyltestosterone” OR “polyestradiol phosphate” OR “spironolactone” OR “testosterone”)

Brown Health reserves the right to modify the foregoing terms.

As we have noted previously, Brown Health’s agreement to produce information and records responsive to the subpoena does not constitute a waiver of any objection that Brown Health may have to the subpoena or to any of its requests, and Brown Health expressly reserves, and does not waive, (1) its right to object to certain of the government’s requests as unduly burdensome, irrelevant, or otherwise requiring the production of material or information protected from disclosure under federal or state law; or (2) its right to seek a protective order or any other judicial relief in any litigation arising in connection with the subpoena.

This letter and any material contained in the accompanying production are not intended to, and do not, waive any applicable privilege. To the extent this letter or any material contained in the production discloses otherwise privileged matters, such disclosure is unintentional.

We request that all materials and information provided by Brown Health to the U.S. Department of Justice (DOJ), including this letter and the accompanying exhibits, receive confidential treatment. Because the enclosed materials constitute investigatory records obtained by the government in connection with a potential law enforcement proceeding, they are subject, at least at present, to the exemption from mandatory disclosure under Exemption 7(A) of the Freedom of Information Act (“FOIA”), 5 U.S.C. § 552(b)(7). In addition, we believe that FOIA Exemptions 4, 6 and 7(C), id. § 552(b)(4), (b)(6), (b)(7)(C), are also applicable to materials contained in the production, and that the protections available under the Privacy Act of 1974, 5 U.S.C. § 552a, also apply. In the event that DOJ intends to disclose this letter or any materials produced by Brown Health in response to the above-referenced subpoena to non-governmental third-parties, we request ten business days’ notice of such intended disclosure.

Please do not hesitate to contact us if you have any questions regarding these search terms.

Sincerely,

Eric G. Olshan
Clint Narver
McGuireWoods LLP