**No. 26-10431**

In the

# United States Court of Appeals For the Fifth Circuit

IN RE ADMINISTRATIVE SUBPOENA NO. 25-1431-032

UNITED STATES OF AMERICA,

*Petitioner-Appellee,*

*v.*

RHODE ISLAND HOSPITAL,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the Northern District of Texas, Fort Worth
Honorable Reed O'Connor, Chief District Judge
Case No. 4:26-mc-00006-O

## REPLY BRIEF OF APPELLANT RHODE ISLAND HOSPITAL

Matthew A. Fitzgerald
Kathryn M. Barber
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251
mfitzgerald@mcguirewoods.com
kbarber@mcguirewoods.com

Eric G. Olshan
MCGUIREWOODS LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

*(additional counsel listed on inside cover)*

Erin L. Brown
McGuireWoods LLP
Bank of America Tower
50 North Laura Street,
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

James R. Hornsby
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Washington, D.C. 20006
T: (202) 857-2440
F: (202) 828-2960
jhornsby@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

October 27, 2026

# TABLE OF CONTENTS


**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT .......................... 1

ARGUMENT .......................... 3

I. This Court should vacate the enforcement order entered without due process. .......................... 3

A. The District Court ordered enforcement without adversarial testing in violation of due process. .......................... 4

B. RIH's motion for a stay pending appeal did not cure the due process violation. .......................... 8

C. Precedent requires at least vacatur as the remedy for the due process violation .......................... 12

II. Alternatively, if this Court finds no due process error, it should reverse the enforcement order. .......................... 16

A. RIH has not abandoned its arguments against the validity of the subpoena. .......................... 17

B. The subpoena is unlawful. .......................... 18

III. The District Court's injunction on court filings should be reversed .......................... 26

A. The first-filed rule does not justify the injunction .......................... 26

B. The injunction is impermissibly broad and vague. .......................... 29

C. The injunction was entered without the constitutionally required notice and hearing. .......................... 31

CONCLUSION .......................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Manzo*,
380 U.S. 545 (1965) .......... 8, 9, 11, 12, 15

*Ass'n of Am. Physicians & Surgeons v. FDA*,
13 F.4th 531 (6th Cir. 2021) .......... 20

*Baum v. Blue Moon Ventures, LLC*,
513 F.3d 181 (5th Cir. 2008) .......... 29, 32

*Burlington N. R.R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*,
983 F.2d 631 (5th Cir. 1993) .......... 5, 19, 20, 21

*Cadle Co. v. Whataburger of Alice, Inc.*,
174 F.3d 599 (5th Cir. 1999) .......... 26, 28

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
854 F.3d 683 (D.C. Cir. 2017) .......... 19

*Donaldson v. United States*,
400 U.S. 517 (1971) .......... 4, 5

*EEOC v. United Air Lines, Inc.*,
287 F.3d 643 (7th Cir. 2002) .......... 19

*In re Admin. Subpoena 25-1431-032*,
836 F. Supp. 3d 459 (D.R.I. 2026) .......... 2, 3, 28

*In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*,
No. 26-mc-7, 2026 WL 1329792 (D.R.I. May 13, 2026) .......... 27, 28

*In re Bartle*,
560 F.3d 724 (7th Cir. 2009) .......... 10

*In re Mot. to Quash Admin. Subpoena to R.I. Hosp.*,
No. 26-1568 (1st Cir. argued Oct. 7, 2026) .......... 3

*Klayman v. Porter*,
104 F.4th 298 (D.C. Cir. 2024) ........................................................ 31

*Lion Elastomers, L.L.C. v. NLRB*,
108 F.4th 252 (5th Cir. 2024) ............................................. 11, 12, 15

*Luig v. N. Bay Enters., Inc.*,
817 F.3d 901 (5th Cir. 2016) ................................................... 10, 11

*Maness v. Meyers*,
419 U.S. 449 (1975) ..................................................................... 7

*Mann Mfg., Inc. v. Hortex, Inc.*,
439 F.2d 403 (5th Cir. 1971) ........................................................ 28

*McLane Co. v. EEOC*,
581 U.S. 72 (2017) ....................................................................... 15

*Nken v. Holder*,
556 U.S. 418 (2009) ..................................................................... 10

*Okla. Press Publ'g Co. v. Walling*,
327 U.S. 186 (1946) .................................................................. 4, 7

*Peralta v. Heights Med. Ctr.*,
485 U.S. 80 (1988) .................................................................. 12, 15

*QueerDoc, PLLC v. U.S. Dep't of Just.*,
187 F.4th 1112 (9th Cir. 2026) ................................................. 3, 23

*Qureshi v. United States*,
600 F.3d 523 (5th Cir. 2010) ........................................................ 32

*Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*,
878 F.2d 875 (5th Cir. 1989) ........................................... 1, 11, 13, 14

*Save Power Ltd. v. Syntek Fin. Corp.*,
121 F.3d 947 (5th Cir. 1997) ........................................................ 27

*Schauss v. Metals Depository Corp.*,
757 F.2d 649 (5th Cir. 1985) .................................................. 27, 30

*Scott v. Schedler*,
826 F.3d 207 (5th Cir. 2016) (per curiam) .................................... 30, 31

*Shepherd v. Int'l Paper Co.*,
372 F.3d 326 (5th Cir. 2004)............................................................ 9, 10

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
694 F.3d 548 (5th Cir. 2012) (per curiam) .......................... 1, 12-14, 17

*Theriot v. Par. of Jefferson*,
185 F.3d 477 (5th Cir. 1999)................................................................ 16

*United States v. Clarke*,
573 U.S. 248 (2014)......................................................................... 4, 5

*United States v. Evers*,
643 F.2d 1043 (5th Cir. Apr. 1981)..................................................... 20

*United States v. Powell*,
379 U.S. 48 (1964)................................................................ 20, 21, 23

*United States v. Rodriguez*,
602 F.3d 346 (5th Cir. 2010)................................................................ 18

*United States v. Skrmetti*,
605 U.S. 495 (2025)............................................................................. 20

*Utah v. Su*,
109 F.4th 313 (5th Cir. 2024) ............................................................. 17

*Venn v. United States*,
400 F.2d 207 (5th Cir. 1968)................................................................ 19

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*,
751 F.2d 721 (5th Cir. 1985)................................................................ 28

**Statutes**

18 U.S.C. § 24 ........................................................................................ 19

18 U.S.C. § 3486(a) ............................................................................. 6, 19

21 U.S.C. § 321(m) .......... 19

21 U.S.C. § 331(b) .......... 19

21 U.S.C. § 352 .......... 19

**Regulations**

21 C.F.R. § 201.128 .......... 19

21 C.F.R. § 202.1(l)(2) .......... 19

**Rules**

Fed. R. Civ. P. 56(f)(1) .......... 10

Fed. R. Civ. P. 59(e) .......... 11

Fed. R. Civ. P. 65(d)(1) .......... 31

**Court Documents**

Reply Br., *In re Mot. to Quash Admin. Subpoena to R.I. Hosp.*, No. 26-1568 (1st Cir. Aug. 3, 2026) .......... 24

**Other Authorities**

Press Release, Dep't of Just., *DOJ Secures Agreements with NYU and UPMC to End Pediatric "Gender-Affirming Care*" (Sept. 18, 2026), https://perma.cc/UQ4C-JVPK .......... 21

Press Release, Dep't of Just., *Justice Department Secures Agreement with Mount Sinai to End Pediatric "Gender-Affirming Care"* (Sept. 4, 2026), https://perma.cc/4Q2Y-LGKF .......... 21

Press Release, Dep't of Just., *Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic* (May 15, 2026), https://perma.cc/ER2T-J4Z7 .......... 22

18 MOORE'S FEDERAL PRACTICE § 130.04 (3d ed. 1997) .......... 30

## INTRODUCTION AND SUMMARY OF ARGUMENT

All agree that the District Court ordered enforcement of a sweeping administrative subpoena before providing Rhode Island Hospital any opportunity to be heard. Under this Court's precedent, that fact is the end of the matter. *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548 (5th Cir. 2012) (per curiam), and *Sandsend Financial Consultants, Ltd. v. Federal Home Loan Bank Board*, 878 F.2d 875 (5th Cir. 1989), hold that denying an opportunity to respond in a subpoena proceeding violates procedural due process. The Department of Justice fails to engage with *Texas Keystone* and contorts *Sandsend*.

*Texas Keystone* establishes that denying an opportunity to be heard in a subpoena proceeding warrants, at minimum, vacatur and remand. 694 F.3d at 555-56. *Sandsend* shows that the deprived party may even obtain outright reversal. 878 F.2d at 881-82. No precedent supports affirming a subpoena enforcement order entered without due process.

The Department's contrary argument fails. The Department does not defend the process behind the District Court's same-day, *ex parte* enforcement order. Instead, the Department argues that RIH's post-judgment emergency motion for a stay pending appeal somehow solved

the problem. But the Department identifies no case holding that a stay motion can cure a final judgment entered without due process. The argument fails as a matter of precedent and logic.

The Department next races to defend the subpoena on the merits. It proposes that this Court can affirm on the alternative ground that the subpoena was proper regardless of what happened before the District Court. But those merits are not properly before this Court, because RIH did not receive a full and fair opportunity to litigate them below, and no adequate factual record exists for this Court to assess the subpoena in the first instance.

But even if this Court disagrees with RIH and concludes that no reversible due process error occurred, the subpoena should not be enforced. Identical subpoenas have been fiercely litigated and struck down across the country almost unanimously. Indeed, the U.S. District Court for the District of Rhode Island quashed *this exact* subpoena in a thorough opinion, finding that it lacks a proper purpose and was issued in bad faith to attack gender-affirming care, not to further a legitimate criminal investigation. *See In re Admin. Subpoena 25-1431-032*, 836 F. Supp. 3d 459, 472 (D.R.I. 2026) (citing seven other federal courts

agreeing), *appeal pending*, *In re Mot. to Quash Admin. Subpoena to R.I. Hosp.*, No. 26-1568 (1st Cir. argued Oct. 7, 2026). Meanwhile, the Department's lead citation, *QueerDoc*, was a split panel decision in the Ninth Circuit and is now pending potential rehearing en banc. *See QueerDoc, PLLC v. U.S. Dep't of Just.*, 187 F.4th 1112 (9th Cir. 2026). In short, this Court should not reach the merits of the subpoena—but if it does, it should reverse the enforcement order.

The District Court's injunction against court filings fares no better than its enforcement order. Both were entered without the notice and opportunity to be heard that due process requires, and both are unjustified and overbroad.

This Court should vacate the enforcement order and reverse the injunction.

## ARGUMENT

### I. This Court should vacate the enforcement order entered without due process.

The Department does not defend the one-sided process that produced the District Court's same-day, *ex parte* enforcement order. Instead, it offers three reasons to overlook that deficient process. It first claims that RIH's property interests were not affected until the 14-day

compliance deadline, so no due process violation occurred. Ans. Br. 32-33. It next contends that proceedings on RIH's motion for a stay pending appeal cured any due process violation. *Id.* at 33-35. Finally, it asks this Court to affirm on the merits anyway. *Id.* at 35-48. Each argument fails.

### A. The District Court ordered enforcement without adversarial testing in violation of due process.

The District Court ordered enforcement without any adversarial testing—on the same day the Department filed its petition and before RIH had any opportunity to respond. Ans. Br. 17, 30. That unchallenged fact is dispositive. In the subpoena context, an adversarial proceeding is a precondition for enforcement. The enforcement order therefore issued in violation of due process.

Supreme Court precedent is clear: subpoena enforcement is "only by federal court authority in an adversary proceeding affording the opportunity for challenge." *Donaldson v. United States*, 400 U.S. 517, 525 (1971). The "requisite judicial proceeding is not *ex parte* but adversarial," *United States v. Clarke*, 573 U.S. 248, 253 (2014), and the recipient of a subpoena must receive an "adequate opportunity to present objections" in an enforcement proceeding. *Okla. Press Publ'g Co. v. Walling*, 327 U.S. 186, 195 (1946).

The Department says that enforcement proceedings are "summary in nature." Ans. Br. 31. But "summary" does not mean *ex parte* or without due process. *See Donaldson*, 400 U.S. at 529 (recognizing the validity of "a summary enforcement proceeding so long as the rights of the party summoned are protected and an adversary hearing, if requested, is made available"); *Clarke*, 573 U.S. at 253-54 (explaining that enforcement proceedings are both "adversarial" and "summary").

The Department describes this Court's "minimal" three-pronged test for enforcement—which considers statutory authority, relevance, and overbreadth or undue burden. Ans. Br. 31-32. But courts must also refuse to enforce a subpoena "issued for an improper purpose, such as harassment." *Burlington N. R.R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*, 983 F.2d 631, 638 (5th Cir. 1993). Thus, a challenger in an enforcement proceeding must have an opportunity to disprove the elements of enforcement and to raise any improper-purpose defense. *See Clarke*, 573 U.S. at 253-54 ("The summoned party must receive notice, and may present argument and evidence on all matters bearing on a summons's validity.").

The Department seems to blame RIH for "delay" in responding to the subpoena, and questions whether RIH preserved its right to object. Ans. Br. 18 n.4, 38. To be clear, the Department initially agreed to accept documents after the return date, ROA.38, and after months of good-faith negotiations on RIH's part, the Department failed to respond when RIH proposed more than sixty search terms. ROA.123; DOJ.Add.1-4. The Department's silence lasted nearly three months, until it requested a routine status conference and then suddenly filed the enforcement petition in Texas. ROA.6, 122-23. The Department's own records show that RIH conveyed long ago that it "expressly reserves, and does not waive . . . its right to seek a protective order or any other judicial relief in any litigation arising in connection with the subpoena." DOJ.Add.4. And there is no support for the Department's implication that RIH, by not immediately seeking quashal under 18 U.S.C. § 3486(a)(5), somehow gave up its right to ever object or respond in an enforcement proceeding.

The Department also attempts to muddy the timeline, arguing that "RIH received an opportunity to present all of its arguments and evidence against enforcement before it had any obligation to produce responsive documents." Ans. Br. 27. That is wrong. RIH became obligated to

produce responsive documents on April 30, when the District Court entered the enforcement order (a final judgment against RIH). ROA.72-73 (ordering RIH to "provide all records responsive to each request in the subpoena within 14 days of the entry of this order" under threat of "sanctions up to and including . . . contempt").

The Department conflates the date the obligation arose (April 30) with the date compliance was due (14 days later). *See* Ans. Br. 32-33, 38. A deadline to *finish* complying with an enforcement order does not postpone the order's force and effect. *See Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes the order is incorrect, the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

The "opportunity" the Department cites came only after enforcement, through an emergency stay motion filed under the shadow of the compliance deadline and threatened contempt. Ans. Br. 33; *see* ROA.72-73. An emergency post-judgment stay motion is not an "adequate opportunity to present objections." *Okla. Press*, 327 U.S. at 195.

### B. RIH's motion for a stay pending appeal did not cure the due process violation.

Precedent just as clearly defeats the Department's next argument—that litigation on the stay motion cured any due process violation. Ans. Br. 34. *Armstrong v. Manzo*, 380 U.S. 545 (1965), makes clear that a post-judgment filing that shifts the burden onto the deprived party, as RIH's stay motion did, cannot cure the denial of an opportunity to be heard.

In *Armstrong*, a state court entered an adoption decree without providing the child's biological father any notice or opportunity to be heard, in "clear" violation of "the most rudimentary demands of due process of law." 380 U.S. at 550. The father then filed a motion to set aside the adoption decree and lost on that motion after a hearing. *Id.* at 548-49. The *Armstrong* Court held that the "constitutional infirmity" had not been "cured by the hearing subsequently afforded to him upon his motion to set aside the decree." *Id.* at 551.

That straightforward answer followed from the heightened burden that the father faced on his motion to set aside, compared to the standards that would have applied had he "been given the timely notice which the Constitution requires." *Id.* The Court explained that the trial

court "could have fully accorded" the father the "opportunity to be heard" that due process requires "only by granting his motion to set aside the decree and consider[ing] the case anew." *Id.* at 552. "Only that would have wiped the slate clean" and "restored" the father "to the position he would have occupied had due process of law been accorded to him in the first place." *Id.*

*Armstrong* forecloses the Department's argument that the stay proceedings cured the due process defect. As in *Armstrong*, the stay posture shifted the burden away from the Department and onto RIH, and also increased the weight of that burden. In the Department's and the District Court's own words, RIH bore a "heavy burden" to earn the "extraordinary relief" of a stay pending appeal. ROA.137, 155. In no way did the stay litigation "wipe[] the slate clean." *Armstrong*, 380 U.S. at 552.

Further, even worse than the motion to set aside in *Armstrong*, a motion for a stay pending appeal *cannot* undo an adverse judgment. The stay motion here came after final judgment and after a notice of appeal. Thus, the District Court lacked jurisdiction to change its judgment based on the stay motion, even if it had wanted to do so. *See Shepherd v. Int'l*

*Paper Co.*, 372 F.3d 326, 329 (5th Cir. 2004). In any event, even when granted, a stay pending appeal does not undo a judgment. It only "temporarily suspend[s]" the judgment's operation. *Nken v. Holder*, 556 U.S. 418, 428-29 (2009). Thus, no matter what the District Court said in ruling on RIH's stay motion, the enforcement order would remain in place. None of the Department's cases holds what it needs: that a post-judgment stay motion supplies the opportunity to respond that due process requires. *See* Ans. Br. 33-35.

The Department relies on *Luig v. North Bay Enterprises, Inc.*, 817 F.3d 901, 905 (5th Cir. 2016). Ans. Br. 34. But *Luig* is not even a due process case. Neither party nor this Court ever mentioned a due process violation in *Luig*. Instead, *Luig* addressed a procedural violation of Rule 56(f)(1)—a premature grant of summary judgment. 817 F.3d at 905. That this Court would entertain harmless-error review in that different context, *id.*, says nothing about this case. After all, the Department does not even *ask* for harmless-error review here, likely because harmless error requires only that RIH "ha[ve] a response to the government's motion that *might have altered* the court's decision." *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009) (emphasis added); Ans. Br. 35. RIH can

clear that low bar simply by noting that seven other federal courts had struck down identical subpoenas before the District Court ordered this one enforced.

The Department argues that a Rule 59(e) motion for reconsideration can sometimes cure a due process violation. Ans. Br. 34. But not always. In *Sandsend*, the subpoena issuer filed "a motion for reconsideration, which the district court denied." 878 F.2d at 878. That unsuccessful motion for reconsideration had no role in the Court's due process analysis. *See id.* at 881 & n.5; *see also Luig*, 817 F.3d at 906 (holding that a Rule 59(e) motion in which the court held the movant to the "extraordinary remedy" standard did not solve the procedural error of premature summary judgment, reversing and remanding). Similarly, *Armstrong* recognized that a trial court may accord due process post-judgment "only by granting [a] motion to set aside" the judgment and "consider[ing] the case anew." 380 U.S. at 552.

In any event, no Rule 59(e) motion was filed here, and certainly the *absence* of a Rule 59(e) motion cannot solve the problem. "Due process ensures parties a right to be heard *before* a decision is made, not after." *Lion Elastomers, L.L.C. v. NLRB*, 108 F.4th 252, 261 (5th Cir. 2024)

(holding that the fact that a party denied "a pre-decision opportunity to be heard . . . could have complained after the fact via a motion for reconsideration is of no consequence").

Nothing "wiped the slate clean" here. *Armstrong*, 380 U.S. at 552; *see Peralta v. Heights Med. Ctr.*, 485 U.S. 80, 87 (1988). The stay motion was not a vehicle for the District Court to "set aside the decree and consider the case anew," as remedying the due process violation would require. *Armstrong*, 380 U.S. at 552.

### C. Precedent requires at least vacatur as the remedy for the due process violation.

The Department urges that even if the due process violation was not cured, this Court should nevertheless affirm the enforcement order on the merits. *See* Ans. Br. 35-48. This Court's precedent makes clear that the appropriate appellate remedy for a defective order entered in denial of due process is *at least* vacatur.

The controlling precedent is *Texas Keystone*. There, this Court vacated an order quashing a subpoena and remanded because the district court "failed to provide . . . an opportunity to respond to [the] motion to quash." *Tex. Keystone*, 694 F.3d at 555-56. The appellant that was denied the opportunity to respond sought "reversal of the district court's

order" rather than vacatur, but this Court declined to "decide the merits," in line with the well-worn principle that the merits are best addressed by the district court in the first instance on remand. *Id.* at 552, 556. Under *Texas Keystone*, RIH requests that the Court vacate and remand for the District Court to evaluate the merits (including any potential preclusive effect of the Rhode Island proceedings).

The Department also misinterprets *Sandsend*. In arguing that *Sandsend* justifies affirming here, the Department gets the case backwards. *See* Ans. Br. 38-39. In *Sandsend*, the district court quashed a subpoena before its issuer could respond to the motion to quash. *Sandsend*, 878 F.2d at 877-78. This Court held that the district court had "robb[ed]" the issuer "of its right to be heard," *id.* at 881, and ultimately directed the district court "to ENFORCE the subpoena"—the relief the *appellant* (the deprived party) sought, *id.* at 882. The Department overlooks the judgment: reversal, not affirmance. *Id.* at 876, 882.

The Department's lead authority for affirmance, then, is a case in which the party *denied* an opportunity to respond (here, RIH) *won* the entire case on appeal. Affirming based on *Sandsend*, as the Department

requests, would flip that case on its head and perpetuate the due process violation.

The Department tries to distinguish *Texas Keystone* and *Sandsend* on the ground that "the district court never issued an order considering the nonmoving party's arguments and explaining why they fail." Ans. Br. 38. But again, what the District Court issued here was a denial of a stay pending appeal. The District Court held RIH to the "heavy burden" of justifying "extraordinary relief." ROA.155; *see* ROA.161 (referring to the "strong showing required for such extraordinary relief"). The District Court specifically noted that it was *not* conducting a "reconsideration" of its *ex parte* order. ROA.158-59.

The District Court's statement that it had read "arguments in opposition that have been made to other district courts"—meaning, arguments of other parties, filed in other cases—is not a substitute for due process for RIH. ROA.157. On top of that, the District Court spent roughly five pages addressing "likelihood of success on the merits" for RIH's pending appeal. Most of those pages were spent on the due process issue itself, not the substance of the subpoena. ROA.156-61. And again, the jurisdictional posture of the stay motion did not provide the District

Court an opportunity to revisit its final judgment even if it *had* wanted to.

The Department also argues that "the district court's express determination that RIH's arguments would not have altered the outcome below forecloses RIH's procedural objection." Ans. Br. 35, 37. As this Court has explained: "that's not how due process works." *Lion Elastomers*, 108 F.4th at 261. "A due-process violation is not remedied by observing that the outcome would perhaps or even likely have been the same absent the violation." *Id.* (quotation omitted); *see Peralta*, 485 U.S. at 86. "Rather it is the opportunity to present argument . . . that must be supplied." *Lion Elastomers*, 108 F.4th at 261. The remedy is to "wipe[] the slate clean." *Armstrong*, 380 U.S. at 552; *see Peralta*, 485 U.S. at 87.

Another reason to reject the Department's invitation to pivot to the merits of the subpoena despite the due process violation is the underdeveloped record. A subpoena's validity is a fact- and record-intensive issue. "Whether to enforce a subpoena" involves "the kind of fact-intensive, close calls better suited to resolution by the district court than the court of appeals." *McLane Co. v. EEOC*, 581 U.S. 72, 81 (2017).

Here, because RIH had no meaningful opportunity to object before the District Court entered final judgment, RIH also had no meaningful opportunity to make the record necessary to support its objections based on improper purpose and the undue burden of the subpoena, among others. Nor is the venue issue proper to address based on a sealed, *ex parte* declaration filed after the judgment on appeal here. *See Theriot v. Par. of Jefferson*, 185 F.3d 477, 491 n.26 (5th Cir. 1999) ("An appellate court . . . may not consider facts which were not before the district court at the time of the challenged ruling."). *Contra* Ans. Br. 42-43.

## II. Alternatively, if this Court finds no due process error, it should reverse the enforcement order.

If this Court finds no due process grounds to vacate the enforcement order, it should still reverse. RIH did not abandon its objections to the subpoena, as the Department suggests. And regardless, because the Department's appellee brief asks this Court to decide the subpoena's validity now, RIH is permitted in reply to more thoroughly explain why the subpoena is unlawful.

### A. RIH has not abandoned its arguments against the validity of the subpoena.

The Department's assertion that "RIH's opening brief attempts to abandon all of its substantive arguments about the lawfulness of the subpoena" is incorrect. Ans. Br. 29-30.

First, the crux of this appeal is that RIH was not permitted an opportunity to raise its merits arguments to the District Court before it ordered enforcement. As the appellant, RIH is entitled to attack the error the District Court actually made, and need not anticipate the error it might someday make once it properly considers the case anew. Appellate courts are "court[s] of *re*view, not first view." *Utah v. Su*, 109 F.4th 313, 318, 320 (5th Cir. 2024).

This is not an appeal of the District Court's order rejecting a stay or its comments in that order on the "likelihood of success on the merits." ROA.156-61. This is an appeal of the enforcement order entered without due process, and RIH can properly seek the correction of that error and the proper redress, which is vacatur and remand. *See Tex. Keystone*, 694 F.3d at 552, 556 n.6 (declining to address a motion to supplement the

record, remanding instead for "the district court to adjudicate these issues in the first instance").

Second, RIH expressly contended in its opening brief that a fresh consideration of the merits of the subpoena would not be futile. *See* Op. Br. 37-40. That is, RIH contended that its objections to the subpoena have merit and should—at the proper time and in the proper court—be considered anew. That is far from abandoning those objections.

**B. The subpoena is unlawful.**

The Department invites this Court to squarely address the merits of the subpoena anyway. Ans. Br. 42-48; *id.* at 48 ("[T]his Court should make clear that RIH's objections to compliance lack merit, as the Ninth Circuit recently did"). Thus, regardless of the opening brief, it is proper for RIH to respond here. *See United States v. Rodriguez*, 602 F.3d 346, 360-61 (5th Cir. 2010) (considering arguments made in response to an appellee brief). The subpoena has at least three deficiencies.[1]

*Irrelevance to a congressionally authorized purpose.* The Department's "authority to issue subpoenas is created solely by statute."

[1] If the Court intends to address the merits of the subpoena in the first instance, RIH respectfully asks this Court to grant a round of supplemental briefing and the opportunity for it to submit evidence.

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (quotation omitted); *see Burlington*, 983 F.2d at 641 (noting "investigatory and subpoena powers are not . . . without limits"). Here, the Department invokes its authority to investigate misbranding, a "[f]ederal health care offense" under the Food, Drug, and Cosmetic Act. 18 U.S.C. §§ 24, 3486(a)(1)(A)(i)(I); *see* 21 U.S.C. § 331(b). Misbranding, as relevant, targets a drug's "labeling" in the stream of commerce, for which manufacturers and distributors—not doctors—are responsible. *See* 21 U.S.C. §§ 321(m), 352(a), (f); 21 C.F.R. §§ 201.128, 202.1(l)(2).

The Department posits that drug manufacturers and distributors could theoretically commit a misbranding offense with respect to the labeling of prescription drugs used in gender-affirming care, and that RIH and other hospitals could be witnesses or even somehow co-conspirators. Ans. Br. 45-46. But under the Fourth Amendment's reasonableness requirement, the Department must have at least "an indication of a realistic expectation rather than an idle hope that something may be discovered." *E.g.*, *Venn v. United States*, 400 F.2d 207, 212 (5th Cir. 1968); *EEOC v. United Air Lines, Inc.*, 287 F.3d 643, 652-53 (7th Cir. 2002). And the subpoena overwhelmingly pursues evidence

reflecting RIH's off-label prescribing of those drugs and associated billing and insurance practices. That evidence would be irrelevant to a misbranding investigation, because it says nothing about manufacturers' or distributors' drug labeling in the distribution chain.

The Department's investigation actually targets what federal law does not reach: off-label prescribing, a lawful and routine practice throughout medicine. *See United States v. Evers*, 643 F.2d 1043, 1048-49 (5th Cir. Apr. 1981). The FDCA "leaves the regulation of doctors to the states." *Ass'n of Am. Physicians & Surgeons v. FDA*, 13 F.4th 531, 534 (6th Cir. 2021); *see United States v. Skrmetti*, 605 U.S. 495, 524 (2025). Because the FDCA does not regulate, much less criminalize, the off-label prescribing at the center of this investigation, the Department lacks statutory authority to pursue it.

*Improper purpose.* The Department also may not issue subpoenas "for an improper purpose, such as to harass" the recipient "or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." *United States v. Powell*, 379 U.S. 48, 58 (1964); *see Burlington*, 983 F.2d at 640 (affirming decision denying enforcement where the "justifications

proffered . . . were not credible" (quotation omitted)). The Department issued this subpoena to RIH—and identical subpoenas to many other hospitals across the country that provide gender-affirming care—with the goal of pressuring hospitals into ceasing their gender-affirming care programs, not to investigate criminal misbranding. Suppressing lawful provision of medical care is a collateral goal that Congress did not authorize in the FDCA; thus, issuing a subpoena to further that end is an improper abuse of process. *See Powell*, 379 U.S. at 57-58.

The results of the Department's investigation confirm its improper purpose. The Department celebrates each settlement agreement it has reached with target hospitals as a victory in its effort to end gender-affirming care.[2] Ans. Br. 14 n.2. Each settlement has involved *cessation* of gender-affirming care. An investigation of drug labeling has no reason to stop lawful practice of medicine. Hospitals ceasing gender-affirming care is the obvious goal of the supposed "misbranding investigation."

---

[2] *See, e.g.*, Press Release, Dep't of Just., *Justice Department Secures Agreement with Mount Sinai to End Pediatric "Gender-Affirming Care"* (Sept. 4, 2026), https://perma.cc/4Q2Y-LGKF; Press Release, Dep't of Just., *DOJ Secures Agreements with NYU and UPMC to End Pediatric "Gender-Affirming Care*" (Sept. 18, 2026), https://perma.cc/UQ4C-JVPK.

The Department's tactic is plain. Faced with extremely burdensome subpoenas, hospitals confront a choice: (1) submit to the inquiry at tremendous expense; (2) resist and litigate at tremendous expense; or (3) agree to stop providing gender-affirming care. For their part, Department officials have vowed to "use every weapon at [their] disposal to end" gender-affirming care. Press Release, Dep't of Just., *Justice Department Secures Landmark Resolution to End Pediatric "Gender-Affirming Care" and Create Detransition Clinic* (May 15, 2026), https://perma.cc/ER2T-J4Z7. These subpoenas are tools to achieve that collateral end.

On the Department's account, any provider that prescribes a drug off-label may be a "witness" to hypothetical misbranding by manufacturers or distributors, and may be served with a sweeping subpoena for patient records, billing data, personnel files, and the like. On that rationale, a future president hostile to certain firearms or certain sources of energy production could bury law-abiding companies in subpoenas about hypothetical crimes, then agree to forgo further investigation through settlements in which each company agrees to stop doing the disfavored part of its lawful business. That is not a reasonable

and genuine criminal investigation. *Powell* forbids exactly that use of investigative power. 379 U.S. at 58.

*Overbreadth and undue burden.* Even setting baseline questions of authority and purpose aside, the subpoena demands far more than any legitimate misbranding inquiry could justify. Indeed, even the Ninth Circuit's split decision in *QueerDoc* remanded on the overbreadth and undue burden questions "for the district court to consider [them] in the first instance." 187 F.4th at 1147. The Ninth Circuit specifically instructed that the subpoenaed clinic "provide objective and specific evidence, such as the number of files involved, the number of estimated work hours required to effect compliance, or the estimated costs of compliance." *Id.* (marks omitted). That is exactly the fact-intensive material that the District Court did not have before it ordered enforcement in this case, and that the record still does not contain here.

Even without that specific evidence, the subpoena is overbroad and unduly burdensome in various respects. The Department conceded in the First Circuit that Request 1, which seeks "[c]omplete personnel files" of all executives, prescribing providers, and billing staff, ROA.46, was "clearly intended" to be limited to "personnel involved in gender-

affirming care"—but was not. Reply Br. 21, *In re Mot. to Quash Admin. Subpoena to R.I. Hosp.*, No. 26-1568 (1st Cir. Aug. 3, 2026). The Department has also conceded that it "would accept anonymized patient data" from RIH, ROA.448-49, even though it explicitly sought patient identities through its enforcement petition, hoping to use minor patients and their families as "essential investigative leads." ROA.37. The District Court's enforcement order was not limited to anonymized patient records and should be limited to at least that extent.

The subpoena is otherwise overbroad and unduly burdensome apart from the Department's own concessions. The subpoena's requests for billing, coding, and insurance claims documents extend to the general topic of "the treatment of gender dysphoria" and "gender-related care" generally, not drug labeling. ROA.46-47. The requests for communications with others in the distribution chain likewise extend far beyond discussions relevant to labeling. ROA.47. And even anonymized patient records impose a much greater burden on RIH and its patients than any investigative benefit. It is undisputed that RIH engages in gender-affirming care through off-label prescriptions, and amassing patient records with highly sensitive personal and medical information

to confirm that fact is unnecessary. The subpoena's dragnet over patient records provides a negligible investigative benefit, if any, while imposing an unjustifiable burden on RIH and its patient-provider relationships.

The Department argues that because RIH has not appealed the District Court's *in camera* production order, compliance with the subpoena cannot be unduly disruptive. *See* Ans. Br. 47. Not true. RIH accepted *in camera* production while the appeals remain pending and with patient information anonymized—not as a concession that the subpoena is appropriately tailored. RIH cannot be blamed for obeying a direct court order and acting in good faith to produce documents *in camera*, particularly when RIH's efforts to obtain a stay of the underlying enforcement order had already failed. *See* ROA.339-40.

If anything, the *in camera* production confirms that the subpoena is unduly burdensome by requesting huge swaths of records. It has already taken months—and hundreds of thousands of dollars—to undertake the ongoing process of collecting, reviewing, and producing the records to the District Court.

If the Court reaches the validity of the subpoena at all, it should ultimately reverse the enforcement order.

## III. The District Court's injunction on court filings should be reversed.

The Department's defense of the unprecedented pre-filing injunction fares no better. The Department concedes that RIH did not engage in vexatious conduct in this litigation that could justify the injunction. *See* Ans. Br. 48, 52-53. An unjustified injunction ordinarily warrants reversal, but the Department seeks affirmance. It does so by supplying a justification that the District Court did not offer: the first-filed rule. *Id.* at 48-51. Even under that attempted justification, the injunction cannot stand. And the injunction's infirmities stretch well beyond its lack of justification. Even if the injunction had any sound basis, it would remain impermissibly vague and overbroad, and it was entered without the constitutionally required notice and hearing.

### A. The first-filed rule does not justify the injunction.

The Department's invocation of the first-filed rule as justification for the District Court's injunction does not hold water. Under the first-filed rule, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). The first-filed rule applies

when related cases are pending final decision before two "federal district courts—courts of coordinate jurisdiction and equal rank." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

Had the Department sought an injunction against related litigation while the enforcement proceeding remained pending before the District Court, the first-filed rule could support the kind of tailored anti-suit injunction the Department makes this one out to be. *See Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir. 1985). But that is not what happened. The District Court entered the injunction after *both* the enforcement proceeding in the Northern District of Texas *and* the collateral proceeding in the District of Rhode Island had already ended.

The District Court entered its enforcement order, a final judgment, on April 30, the same day the Department filed its petition. ROA.72-73. RIH noticed its appeal from that judgment on May 6. ROA.88. On May 13, the Rhode Island district court granted RIH's and the Rhode Island Child Advocate's motions to quash and enjoined the Department from obtaining patient-identifying information. *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, No. 26-mc-7, 2026 WL 1329792, at *10 (D.R.I.

May 13, 2026), *amended and superseded*, 836 F. Supp. 3d 459 (D.R.I. May 14, 2026).

Only after all of that, on May 18, did the District Court enter what the Department called a "postjudgment injunction." ROA.338; Ans. Br. 3. By then, there was nothing left for the first-filed rule to sort out. No two pending cases were competing for resolution of the same issues. There were two final orders, each pending direct appellate review.

That timing is fatal to the Department's theory. The first-filed rule is "essentially a forward-looking doctrine." *Cadle*, 174 F.3d at 604. This Court has contrasted it with "backward-looking" doctrines such as issue preclusion, which courts apply "to avoid relitigation of, and inconsistency with, issues already decided by other courts." *Id.* at 603. The ordinary tools for implementing the first-filed rule match its forward-looking purpose. The second-filed court can dismiss, transfer, or stay—as the Department asked the Rhode Island district court to do. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 & n.1 (5th Cir. 1985). Or the first-filed court can decide whether both suits "should be allowed to proceed." *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Those tools assume two live cases, pending in federal district

courts, with a decision still to be made about which court will hear the overlapping issues. When the District Court acted here, that decision had already been made, once in each forum, through final orders. The Department identifies no prospective work for the first-filed rule.

The posture of the case also limited what the District Court could do. RIH's appeal from the enforcement order was already pending when the injunction issued. This Court has explained that while a judgment's validity is on appeal, the district court's power is generally limited to "maintaining the status quo." *Baum v. Blue Moon Ventures, LLC*, 513 F.3d 181, 190 n.2 (5th Cir. 2008) (quotation omitted). The District Court did address document-preservation through its *in camera* production order. *See* Op. Br. 48. The separate ban on seeking relief elsewhere did not preserve the status quo. It created a new restriction, and the first-filed rule cannot justify it. A nationwide bar on filing in all but three courts, restricting protected speech and petitioning, was an unnecessary addition to *in camera* production.

### B. The injunction is impermissibly broad and vague.

The Department offers only a single sentence in defense of the injunction's expansive reach, asserting that RIH's litigating position

"explains precisely why" the injunction "properly extends to nearly every court nationwide." Ans. Br. 53-54 (quotation omitted). Apart from its flawed view that RIH received an adequate opportunity to be heard in the District Court, however, the Department does not explain why RIH's collateral challenge of the enforcement order in the District of Rhode Island was improper. *See* Op. Br. 47; 18 MOORE'S FEDERAL PRACTICE § 130.04 (3d ed. 1997) ("Void judgments are subject to both direct and collateral attack."). And the Department's own authority covers only federal courts, making the injunction's application to state courts overbroad. *See Schauss*, 757 F.2d at 654; Ans. Br. 49.

To rectify the injunction's vagueness, the Department now offers a clarifying (and narrowing) construction: the injunction reaches only proceedings that ask a court "to invalidate the enforcement order or otherwise grant relief whose operative effect is to nullify that order." Ans. Br. 54-55. The need for that gloss shows that the injunction's text itself fails the requirement that "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir.

2016) (per curiam) (quotation omitted); *see* Fed. R. Civ. P. 65(d)(1). Rule 65(d) requires clarity on the face of the order, not in an appellee's brief.

The Department also attempts to assure the Court that the injunction does not apply to RIH's pending litigation in the First Circuit. *See* Ans. Br. 55. But the Department does not suggest that the injunction would have no effect in any proceedings on remand in the District of Rhode Island, and indeed confirms that the injunction "regulate[s] where RIH may seek judicial relief concerning this case." *Id.* at 56. Any restriction on RIH's ability to pursue a valid collateral challenge of a void order in another court is an unacceptable infringement of First Amendment rights. *See* Op. Br. 54-55; *Klayman v. Porter*, 104 F.4th 298, 309 (D.C. Cir. 2024).

### C. The injunction was entered without the constitutionally required notice and hearing.

The Department erroneously deems RIH's "procedural objection"—that the District Court entered the injunction without notice and an opportunity to respond—"baseless." Ans. Br. 57. The foundation of this objection (like the bulk of this appeal) is the constitutional right to procedural due process. The Department insists that the injunction lacks the ordinary justification of vexatious conduct, *see* Ans. Br. 48, 57, but

lacking a substantive justification cannot somehow lessen "constitutionally derived" *procedural* protections. *Qureshi v. United States*, 600 F.3d 523, 526 (5th Cir. 2010).

RIH had no advance notice of the District Court's *sua sponte* injunction and no chance to object. The Department's only response is that RIH could have discussed "how the case should proceed" at the status conference that preceded the injunction, where no injunction was ever mentioned. Ans. Br. 57; *see* ROA.567-606. RIH could not object to an injunction that no one had proposed. RIH received no notice of the injunction and no hearing on it. That shortcoming alone requires vacatur. *See Baum*, 513 F.3d at 189; *Qureshi*, 600 F.3d at 524-26.

**CONCLUSION**

For these reasons, this Court should vacate the enforcement order and reverse the pre-filing injunction.

Dated: October 27, 2026

Respectfully submitted,

*/s/ Eric G. Olshan*
Eric G. Olshan
PA Bar No. 336966
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue
Suite 1800
Pittsburgh, PA 15222
T: (412) 667-7941
F: (412) 667-7991
eolshan@mcguirewoods.com

Matthew A. Fitzgerald
VA Bar No. 76725
Kathryn M. Barber
VA Bar No. 88992
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219
T: (804) 775-4716
F: (804) 698-2251
mfitzgerald@mcguirewoods.com
kbarber@mcguirewoods.com

Erin L. Brown
FL Bar No. 1073695
McGuireWoods LLP
Bank of America Tower
50 North Laura Street,
Suite 3300
Jacksonville, FL 32202
T: (904) 798-2622
F: (904) 360-6322
ebrown@mcguirewoods.com

James R. Hornsby
D.C. Bar No. 90028358
McGuireWoods LLP
888 16th Street N.W.
Suite 500
Washington, D.C. 20006
T: (202) 857-2440
F: (202) 828-2960
jhornsby@mcguirewoods.com

*Counsel for Appellant Rhode Island Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2026, the foregoing was filed with the Clerk of the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, which will automatically serve all counsel of record electronically.

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*

## CERTIFICATE OF COMPLIANCE

This brief complies with Fed. R. App. P. 32(a)(7) because it contains 6,287 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 5th Cir. Rule 32.2.

This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Century Schoolbook font.

*/s/ Eric G. Olshan*
Eric G. Olshan

*Counsel for Appellant Rhode Island Hospital*